UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MUENCH PHOTOGRAPHY, INC., | Case No. 12-cv-01927-WHO |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO RETAIN CONFIDENTIALITY** |
| PEARSON EDUCATION, INC., | Re: Dkt. No. 38 |
| Defendant. | |

## INTRODUCTION

Plaintiff Muench Photography, Inc. ("Muench") challenges defendant Pearson Education, Inc.'s ("Pearson") confidentiality designations of certain materials that Pearson produced to Muench. Under the Protective Order in this case, a party may designate certain documents produced during discovery as confidential and thus protect them from public disclosure, but the other party may challenge such a designation. Pearson moves that the Court allow it to retain the confidentiality designations that Muench challenges and prevent the disclosure of the materials.

Neither party has submitted the challenged materials for the Court to review, so the Court decides Pearson's motion based on the briefs, exhibits, declarations and argument of counsel. Based upon those submissions, Pearson has shown good cause to maintain the confidentiality of the challenged materials. Accordingly, the Court GRANTS Pearson's Motion to Retain Confidentiality.

## PROCEDURAL BACKGROUND

On April 18, 2012, Muench Photography, Inc., sued Pearson for copyright infringement. Muench, a stock photography company, alleges that Pearson, a textbook publisher, unlawfully reproduced Muench's photographs and exceeded the limited licenses Muench granted Pearson.

Br. at 1; Compl. ¶¶ 11, 13. On February 12, 2013, the Court approved the parties' Stipulated Protective Order (Dkt. No. 34), which allows the parties to designate certain materials as confidential and prevent their disclosure, though a party may also challenge such a designation made by the other party, as Muench has here. Protective Order ¶ 6.3.

On April 2, 2013, Pearson produced its Global Rights Distribution Warehouse ("GRDW") Reports and Geography Reports to Muench and designated them as "Confidential." On May 13, 2013, Muench challenged the confidentiality designations of the Reports. Dudash Decl. Ex. 1. Pursuant to Paragraph 6.2 of the Protective Order, the parties met and conferred about the dispute but were unable to resolve it.[1] Dudash Decl. ¶ 2. Pearson now moves that the Court allow it to retain its confidentiality designations for the GRDW and Geography Reports and to keep the materials from being publicly disclosed. Br. at 3.

## FACTUAL BACKGROUND

Muench challenges Pearson's confidentiality designations for two categories of information: the GRDW Reports and the Geography Reports.

### I. GRDW Reports

The GRDW Reports "identify the components of Pearson's educational programs and reflect session-by-session print quantity and date information for each component." Br. at 1. Elaine Soares-Ferreira, Director of Image Resources at Pearson, submitted a declaration in support of Pearson's Motion to Retain Confidentiality. She claims that information in the GRDW Reports is "non-public, confidential, and commercially sensitive." Soares-Ferreira Decl. ¶ 4. The GRDW Reports "reflect detailed nonpublic and proprietary information," and contain "copyright updates," "print quantities and dates, [and] sales and distribution volumes." Soares-Ferreira Decl. ¶ 7; Br. at 6.

According to Pearson, the GRDW Reports "constitute valuable compilations of business information that permit Pearson to obtain an advantage over its competitors" and reflects where Pearson is "interest[ed] in growing market share." Br. at 6. Pearson argues that exposing the

---

[1] Pearson's Motion Brief states that the meet-and-confer occurred on May 21, 2013, despite citing to Dudash Decl. ¶ 2, which states that the meet-and-confer occurred on May 13, 2013.

GRDW Reports in their completed form "unfairly provides Pearson's competitors with knowledge of how Pearson tracks its internal data." Br. at 6. In addition, the underlying data "would be valuable to competitors because it would . . . provid[e] competitors with Pearson's strengths and weaknesses in selling and distributing . . . [and] allow Pearson's competitors to gain valuable insight into Pearson's internal business strategies, sales performance, and competitive vulnerabilities." Br. at 6. Competitors who have this information could "improperly reap the benefits of Pearson's substantial investment in product development" and "compete more effectively against Pearson" by "adjust[ing] their production and sales strategies" for competing publications. Br. at 6-7.

Access to this information, Soares-Ferreira alleges, "is limited to personnel who have a business need for the information." Soares-Ferreira Decl. ¶ 8. "In order to maintain the confidentiality of such information, Pearson has obtained confidentiality agreements with third-parties, and preferred vendor agreements "often contain non-disclosure provisions." Soares-Ferreira Decl. ¶ 9.

Muench asserts that Pearson cannot show good cause for not disclosing the GRDW Reports because "it does not keep that information confidential in the ordinary course of business." Opp'n at 4. Muench points to examples in the past in which Pearson employees "voluntarily disclosed print run quantities *without* requiring or even requesting this information be kept confidential," whether through a confidentiality agreement or by simple request. Opp'n at 6-7 (original emphasis). Muench also says that other textbook publishers treat print quantities as public information. Opp'n at 7.

Pearson responds that the mere fact that a few Pearson employees disclosed print run information in response to questions from auditors or photographers that work for Pearson does not mean that Pearson does not try to keep print run information confidential in the ordinary course of business. Reply at 3. In addition, Pearson contends that the "vast majority of courts . . . have held that print run information is confidential." Reply at 5; *see, e.g.*, Br. Ex. E.

## II. Geography Reports

The Geography Reports "contain proprietary information concerning the sale and distribution of Pearson's publications outside the United States." Reply at 1. Geography Reports "reveal Pearson's sales and marketing strategies." Owen Decl. ¶ 6. This information shows where Pearson sells and ships particular publications and in what quantities, and Pearson argues that disclosing the Geography Reports would allow competitors "to generate their own international marketing and distribution plans thereby prejudicing Pearson who has invested considerable resources into developing a world-wide distribution plan for its products." Reply at 5. This information "reveals Pearson's expectations and sales strategies, including its interests in growing market share for a particular textbook, course, or segment of the marketplace." Br. at 6. Competitors who had this information could "tailor[] their own marketing efforts [and] distribution to counter that of Pearson." Br. at 7. In addition, competitors could use this proprietary information "to have starting values for their own distribution strategy" and "compete more effectively" against Pearson. Br. at 7.

Muench argues that this information is already publicly available since textbook sales are public transactions. Opp'n at 8. For example, the quantity of books sold to a school district may be obtained through a public records request. Opp'n at 8. Similarly, one can "take a stroll through a college bookstore to see which textbooks have been assigned . . . and for what price." Opp'n at 8-9. Muench also asserts that Pearson does not attempt to keep sales and distribution information confidential since it "routinely discloses" such information to licensors without any confidentiality agreement. Opp'n at 9.

Pearson responds that the theoretically public nature of its sale and distribution information does not mean that, in reality, someone is reasonably able to collect such information location by location. Reply at 9. Rather, it is the *compilation* of this information that is a proprietary trade secret. Reply at 9. In addition, Pearson argues that it "actively takes steps to maintain and protect the confidentiality of such information," requiring recipients to sign non-disclosure agreements. Br. at 7-8.

4

## LEGAL STANDARD

"Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). Under Rule 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. PRO. 26(c)(1). Information the court may protect includes "trade secret[s] or other confidential research, development, or commercial information." FED. R. CIV. PRO. 26(c)(1)(G). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result" if a protective order is lifted. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

When the confidentiality of information under a protective order is challenged, the court must conduct a two-step analysis. "First, it must determine whether particularized harm will result from disclosure of information to the public." *In re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 424 (9th Cir. 2011) (quotation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted). Instead, the party seeking to maintain confidentiality must "allege specific prejudice or harm." *Id.* "Second, if the court concludes that such harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether maintaining a protective order is necessary." *In re Roman Catholic Archbishop*, 661 F.3d at 424. In doing this balancing, the court must consider the following list of non-exhaustive factors:

(1) whether disclosure will violate any privacy interests;

(2) whether the information is being sought for a legitimate purpose or for an improper purpose;

(3) whether disclosure of the information will cause a party embarrassment;

(4) whether confidentiality is being sought over information important to public health and safety;

(5) whether the sharing of information among litigants will promote fairness and efficiency;

(6) whether a party benefitting from the order of confidentiality is a public entity or official; and

(7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

## DISCUSSION

Pearson has shown good cause for maintaining the confidentiality of the challenged materials because particularized harm may result from disclosure of the challenged materials to the public. In addition, the public interest in disclosure of the challenged materials does not overcome Pearson's private interest in maintaining their confidentiality. The Court addresses these findings in turn.

### I.   Pearson Will Suffer Particularized Harm From Disclosure.

The Court finds that Pearson has shown a "particularized harm [that] will result from disclosure of information to the public." *In re Roman Catholic Archbishop*, 661 F.3d at 424. Pearson submitted declarations from its officers, including a group CFO, attesting to the commercially sensitive nature of the facts and data in both the GRDW and Geography Reports. Owen Decl. ¶ 4; Soares-Ferreira Decl. ¶ 4. The challenged materials include information that Pearson tracks, such as its print production, sales figures, profit margins, and locations for distribution. Owen Decl. ¶¶ 3-4. As Pearson explains, such information can reveal how Pearson is targeting the market with specific publications in particular locations. Owen Decl. ¶ 6. They would also "reveal trends in Pearson's publication cycles and market share," as well as its manufacturing capabilities. Tedeman Decl. ¶ 4. If disclosed, Pearson alleges, the information at issue could reveal Pearson's product development efforts and business strategies to competitors, and competitors could use these strategies themselves—strategies that Pearson spent significant resources to create. Owen Decl. ¶ 5; Tedeman Decl. ¶ 5. Pearson claims that it will be harmed if these "confidential trade secrets" are revealed to its competitors. Reply at 1-2. Based on the foregoing, Pearson has made a sufficiently particularized showing through "articulated reasoning"

6

of how disclosure of the information at issue would lead to harm. *Beckman Indus.*, 966 F.2d at 476; *cf. Clifton v. Pearson Educ., Inc.*, No. 11-cv-03640-EJD, Dkt. No. 54 (N.D. Cal. July 25, 2011) (holding that non-movant failed to make particularized showing of how disclosure of print run information would cause harm).

Muench's argument that the challenged materials are not truly confidential because Pearson employees have occasionally disclosed to third parties some information underlying the materials is weak. As Pearson states, the disclosures by employees in the past were in response to requests by auditors or by photographers who had photographs in Pearson's publications. Reply at 3. Such disclosures were in the context of business transactions and would not be the same as disclosing the same information in aggregated form to "direct competitors." Reply at 3. The limited disclosures do not demonstrate that Pearson does not keep such information confidential in the ordinary course of business. Muench's argument does not undermine Pearson's showing that large-scale disclosure of the information at issue would harm Pearson. Similarly, Muench's argument that the Reports should be disclosed because information in the Reports is old and therefore "of no use to a competitor" ignores the commercial reality that such information may still reveal Pearson's thought processes and strategies even if the data are historical. Br. at 11.

Based on the information before the Court, Pearson has shown a particularized harm—namely, that competitors would be able to see Pearson's strengths and weaknesses, and use its business strategies to their own benefit or to Pearson's detriment—that can result from disclosure of the challenged materials to the public.

## II. The Public Interest In Disclosure Is Outweighed By Pearson's Private Interest in Confidentiality.

The Court finds that the public interest in disclosure is outweighed by Pearson's private interest in confidentiality. As the Ninth Circuit instructed, the Court must look to the seven factors listed in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995), to conduct its balancing. *In re Roman Catholic Archbishop*, 661 F.3d at 424. Having already discussed the first factor (privacy) in the preceding section, the Court will address the other potentially applicable *Glenmede Trust* factors.

Factor 2 requires consideration of "whether the information is being sought for a legitimate purpose or for an improper purpose." 56 F.3d at 483. While Muench's brief argues extensively about whether Pearson has good cause to maintain confidentiality, nowhere has Muench identified a legitimate purpose for disclosing the challenged materials other than the public's right to know. Muench argues that Pearson is attempting to limit access to this information to protect itself against future liability. Opp'n at 12-13. Indeed, the Ninth Circuit has said that "a litigant is not entitled to the court's protection" from "additional liability and litigation" due to the disclosure of confidential information. *Foltz*, 331 F.3d at 1137. But Pearson has met its burden to show that its materials should remain confidential. The Court is unaware of any legitimate purpose for disclosing to the public the "confidential research, development, [and] commercial information" of a company before that information becomes material to this case. *See* FED. R. CIV. PRO. 26(c)(1)(G). Regardless of whether or not Pearson is attempting to shield itself from legal liability, the relevant question under this factor is whether there is a legitimate purpose for disclosing the information now. Muench did not answer that question. Until the challenged materials are proffered on an issue relevant to Pearson's liability or some other relevant issue in this litigation, Muench's desire for disclosure is, at best, premature.

The Court also finds that Factor 5—whether the sharing of information among litigants will promote fairness and efficiency—does not weigh in favor of disclosure since Muench already has access to the information.

Factor 7 requires consideration of "whether the case involves issues important to the public." 56 F.3d at 483. This case involves two private parties in a commercial dispute over whether one has infringed the intellectual property rights of the other. This is not a high profile case about which the public is clamoring for information. It does not involve matters related to public health and safety or of governmental functions or public administration. *See, e.g.*, *In re Roman Catholic Archbishop*, 661 F.3d at 428 (applying the *Glenmede Trust* factors and holding that "[t]he public [has] a weighty interest in public safety" and protecting children from sexual abuse). Muench's conclusory argument that regarding "public benefit in allowing Pearson's illegal conduct to come into the open" is belied by the fact that no illegal conduct has been

8

1 established in this case. Muench has not even alleged that the challenged Reports are material to its case. Opp'n at 13. If there was a relevant public interest in the challenged materials, "the mere allegation of misconduct in the discovery documents . . . without more, does not create a public interest sufficiently large enough to outweigh [] private interests in confidentiality." *In re Roman Catholic Archbishop*, 661 F.3d at 427 (noting that there has been "no judicial determination" regarding the challenged materials).

Based on the information before the Court, the Court finds that the public interest in disclosure does not outweigh Pearson's private interest in maintaining the confidentiality of the challenged materials.

## CONCLUSION

Pearson has shown good cause for maintaining the confidentiality of the challenged materials because particularized harm may result from disclosure of information to the public, and the public interest in disclosure of the challenged materials does not overcome Pearson's private interest in maintaining their confidentiality. Accordingly, the Motion to Retain Confidentiality is GRANTED.

**IT IS SO ORDERED.**

Dated: August 15, 2013

WILLIAM H. ORRICK
United States District Judge