UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MUENCH PHOTOGRAPHY, INC.,

Plaintiff,

v.

PEARSON EDUCATION, INC.,

Defendant.

Case No.  12-cv-01927-WHO

**ORDER GRANTING PEARSON EDUCATION, INC.'S MOTION FOR SUMMARY JUDGMENT**

Re:  Dkt. No. 62

**INTRODUCTION**

Plaintiff Muench Photography, Inc. ("MPI"), brings suit against Pearson Education, Inc. ("Pearson"), asserting 485 copyright infringement claims concerning photographs taken by David and Marc Muench and licensed by Corbis Corporation ("Corbis"), a third-party stock photography agency, to Pearson over a ten-year period.  Pearson moves for summary judgment, arguing that (1) MPI does not have standing to assert copyright infringement claims; (2) MPI's claims are based on invalid copyright registrations; and (3) Pearson has a general or implied license from Corbis to use the images.

For the reasons below, the Motion for Summary Judgment is GRANTED.

**FACTUAL BACKGROUND**

Pearson is a publisher of school textbooks and other educational materials.  Soares Decl. (Dkt. No. 62 Ex. A) ¶ 1.  David and Marc Muench are photographers who created the photographs at issue; both have agency agreements with Corbis authorizing it to license their photographs. Dudash Decl. (Dkt. No. 62) Exs. 1-4; Compl. (Dkt. No. 1) ¶¶ 2, 9.  Pearson and Corbis have a long-standing and ongoing business relationship dating back to at least 1997.  Soares Decl. ¶ 4. Throughout this relationship, Pearson and Corbis entered into a number of master licensing

agreements ("MLAs") through which Pearson obtained the nonexclusive right to use images licensed by Corbis in Pearson's publications.  Soares Decl. ¶ 4.

Beginning in the late 1990s, Pearson implemented a "preferred vendor" program in which Pearson and certain photograph vendors executed preferred vendor agreements ("PVAs") that provided pricing and other license terms applicable to Pearson's use of any photographs from that vendor.  Soares Decl. ¶ 5.  The MLAs with Corbis were similar to these PVAs, but contained additional contract terms.  Soares Decl. ¶ 5.

Corbis and Pearson entered into three MLAs in 2001, 2004, and 2007, which governed almost every usage of the photographs at issue in this case.[1]  Br. 3.  "The MLAs governed Pearson's use of the Muenchs' photographs that Pearson obtained from Corbis."  Br. 3.  Pearson argues that these MLAs provided Pearson with a "nonexclusive, general license" to use images obtained from Corbis in Pearson's publications:  Pearson would notify Corbis of its usage, and Corbis would bill Pearson for Pearson's projected distribution against the MLA's pricing schedules.  Br. 3.

## I.    The Parties

Muench Photography, Inc., is a family business owned in part by David Muench and Marc Muench.  Marc Muench Decl. (Dkt. No. 66) ¶ 2.  MPI is a stock photography agency that licenses photographic images taken by both David Muench and Marc Muench.  Marc Muench Decl. ¶ 1; David Muench Decl. (Dkt. No. 66) ¶ 1.  Both Muenchs state that they took the photographs at issue in this case "within the scope of [their] employment."  Marc Muench Decl. ¶ 3; David Muench Decl. ¶ 3.

Corbis Corporation is a stock photography agency that, with MPI's permission, allegedly licensed the photographs at issue to Pearson.  Marc Muench Decl. ¶ 5.  On July 27, 2010, Corbis notified MPI that Corbis did not intend to take any action regarding "unauthorized uses" of the photographs at issue by Pearson, and "Corbis assigned its claims" to MPI.  Marc Muench Decl. ¶ 7, Ex. 4.

[1] Pearson's 2001 MLA with Corbis, which only applies to one claim, is not the subject of Pearson's Motion for Summary Judgment.  Br. 3 n.2.

United States District Court
Northern District of California

Marc and David Muench entered into representation agreements with Corbis.  Dudash Decl. Exs. 1-4.  The agreements provided that if the Muenchs chose to participate in Corbis's copyright registration program, Corbis would register the copyrights in the Muenchs' images on the Muenchs' behalf.  Dudash Decl. Ex. 1 at 001491; Dudash Decl. Ex. 4 at 001502.  "Corbis registered copyrights for some of the Photographs with the United States Copyright Office."  Opp'n 3 (citing Marc Muench Decl. ¶¶ 4-6, Exs. 1-3; Seidman Decl. ¶¶ 2-3; Byrne Decl. ¶¶ 2-4, Exs. 1-2).  At MPI's request, Corbis provided it with two lists identifying the images sent to the Copyright Office with the associated copyright registrations relating to the photographs at issue. Opp'n 3 (citing Marc Muench Decl. ¶ 6, Exs. 2-3; Seidman Decl. ¶¶ 2-3; Byrne Decl. ¶¶ 2-4, Exs. 1-2).  In addition, David Muench personally registered the "David Muench Collection No. 1," under certificate VAu 354-914.  David Muench Decl. ¶ 4.

From 2001 to 2009, Corbis sold Pearson "limited licenses authorizing Pearson to reproduce the Photographs [at issue] in certain educational publications."  Opp'n 3.

## II.  The 2001 MLA

The 2001 MLA, which took effect September 1, 2001, gave the terms under which Pearson could use Corbis's images and established a price schedule of incremental fees Pearson would pay based on its use of the images.[2]  Br. 3 (citing Dudash Decl. Ex. 5).  In particular, the MLA set forth the "TERMS OF LICENSE," including the image pricing schedule, provisions about usage and minimum commitment, and requirements related to "excluded" and "premium" images," as well as "Invoicing/Usage Notification."  Dudash Decl. Ex. 5 at D-MU00045823-26.

The "Invoicing/Usage Notification" section stated, "Pearson Education agrees to notify Corbis of the image numbers ('The Images') of the images used on a product/title, quarterly.  (100 images per quarter for 4 quarters of the term)  Invoices will be sent to Pearson Education. Overdue statements will be sent to Pearson Education after 30 days.  Pearson Education is responsible for all payments due."  Dudash Decl. Ex. 5 at D-MU00045826.

The "Minimum Commitment" section required Pearson to spend a defined amount of

---

[2] This agreement was effective until September 1, 2004, and was extended while the parties negotiated the terms of the 2004 MLA.  Soares Decl. ¶ 7.

United States District Court
Northern District of California

money during the three-year term of the MLA. Dudash Decl. Ex. 5 at D-MU00045824. The MLA incorporated Corbis's "Terms & Conditions," though the letter Agreement governed if they conflicted. Dudash Decl. Ex. 5 at D-MU00045824. The MLA excluded certain image collections, which required "pre-approval" for use, Dudash Decl. Ex. 5 at D-MU00045825, but none of the images at issue were excluded or required pre-approval, Soares Decl. ¶ 4.

Under the pricing schedule, Pearson paid a base rate per image to use the image in a print publication. Dudash Decl. Ex. 5 at D-MU00045823. This base rate applied to any size image used inside an English-language, North American publication with a print run up to 40,000 copies; only 10 percent of distribution could be international and five percent could be through electronic books at no additional charge. Dudash Decl. Ex. 5 at D-MU00045824. Use of images in "any + all" print and electronic form was available at a higher rate. Dudash Decl. Ex. 5 at D-MU00045823. Pearson could pay additional incremental fees for "Additional Usage" at a certain percentage increase for both "print runs exceeding 40,000" and worldwide English distribution. Dudash Decl. Ex. 5 at D-MU00045824. Reuse in subsequent distributions cost half the price Pearson normally paid. Dudash Decl. Ex. 5 at D-MU00045824.

The Terms and Conditions incorporated into the agreement stated that "Corbis grants [Pearson] the limited rights set forth in the written 'Invoice And License Agreement'. . . . Any use of the Images not set forth in this Agreement shall require the prior written agreement of Corbis." Dudash Decl. Ex. 5 at D-MU00045828 § 4. Further, "unauthorized use of these Images constitutes copyright infringement and shall entitle Corbis to exercise all rights and remedies under applicable copyright law . . . ." Dudash Decl. Ex. 5 at D-MU00045828 § 10.

## III. The 2004 MLA

The 2004 MLA, which took effect October 1, 2004, also gave the terms under which Pearson could use images obtained from Corbis in Pearson publications.[3] Dudash Decl. Ex. 6. Like the 2001 MLA, the 2004 MLA contained a pricing schedule and minimum spending commitment; it also contained an "Invoicing/Usage Notification" section, which said, "Pearson

---

[3] This agreement was effective until September 30, 2007, and was extended while the parties negotiated the terms of the 2007 MLA. Soares Decl. ¶ 7.

4

Education agrees to notify Corbis of the Images used on a per usage basis.  Pearson Education must include image IDs within each notice.  Corbis will invoice Pearson Education according to this schedule.  Overdue statements will be sent to Pearson Education after 30 days.  Pearson Education is responsible for all payments due."  Dudash Decl. Ex. 6 at D-MU00045843.  The MLA specified a "base rate" for a "one time use."  Dudash Decl. Ex. 6 at D-MU00045840.

The 2004 MLA stated that Pearson would "be advised if at any time an image requested or delivered by CORBIS would NOT be covered under the terms of this agreement."  Dudash Decl. Ex. 6 at D-MU00045840.  The MLA excluded certain image collections, which required pre-approval before use, Dudash Decl. Ex. 6 at D-MU00045842, but none of the images at issue were excluded or required pre-approval, Soares Decl. ¶ 4.

The MLA incorporated Corbis's "Terms & Conditions," though the letter Agreement governed if they conflicted.  Dudash Decl. Ex. 6 at D-MU00045841.  The 2004 MLA also included an "Audit Rights section" that gave Corbis "the right to audit reported usage vs. actual usage," and the right to bill Pearson for any discrepancy.  Dudash Decl. Ex. 6 at D-MU00045842.  The 2004 MLA had a pricing structure similar to the 2001 MLA, except it also had a specific rate for print runs between 40,000 and 100,000, and print runs over 100,000.  Dudash Decl. Ex. 6 at D-MU00045840.  The Terms and Conditions stated under a section titled the "License granted by Corbis," "your reproduction of Images is limited to . . . the specific use described in your invoice, which together with these terms shall constitute the full license granted."  Dudash Decl. Ex. 6 at D-MU00045844.  The "Use of Images" was "strictly limited to the use . . . and any other restrictions indicated in the invoice."  Dudash Decl. Ex. 6 at D-MU00045844.

**IV.    The 2007 MLA**

The 2007 MLA contained terms nearly identical to the 2004 MLA, with slight variations in terms and fees.  Br. 6.  "Although the 2007 MLA was unsigned, there is no dispute between Corbis and Pearson that it was executed and in effect beginning in 2007 . . . ."  Br. 6 (citing Dudash Decl. Ex. 7 at D-MU00049820).  It contained similar provisions governing advisement, audit rights, exclusions, and pre-approvals; Pearson also had to meet a "Target Goal," which required Pearson, "to the best of its ability and in good faith," to spend at least a certain amount

5

per year on Corbis images.  Dudash Decl. Ex. 7 at D-MU00049821-23.

The "Invoicing/Usage Notification" section stated, "Pearson Education agrees to notify Corbis of the Images used on a per usage basis.  Pearson Education agrees to provide Corbis with the following information for all project and licensing notices:  book title, author, edition, ISBN, release date, project code (if any), correct billing party from Pearson, and correct image id's.  Failure to provide proper information may result in invoicing errors and delays for which Pearson Education will be responsible for based on the Corbis Terms and Conditions.  Corbis will invoice Pearson Education according to this schedule.  Overdue statements will be sent to Pearson Education after 30 days.  **Pearson Education is responsible for all payments due.**"  Dudash Decl. Ex. 7 at D-MU00049824 (original emphasis).

The billing structure was substantially similar to the 2004 MLA, except that the print run categories started with a category for up to 100,000 copies of an English-language publication for distribution in North America, which also allowed up to a 10 percent worldwide distribution and five percent electronic book distribution.  Dudash Decl. Ex. 7 at D-MU00049821.  There were additional categories for print runs between 100,000 and 500,000, and over 500,000 copies, as well as worldwide distribution.  Dudash Decl. Ex. 7 at D-MU00049821.  Like the 2004 MLA's Terms and Conditions, the attached "Corbis Content License Agreement" similarly explained that Corbis was only granting "limited" licenses that were limited by the Agreement itself and any invoices.  Dudash Decl. Ex. 7 at D-MU00049826.

**V.    Course of Dealing**

Because of the MLAs, Corbis was one of the largest single sources of photographs in Pearson's publications from 2001 to 2009.  Soares Decl. ¶ 6.  According to Pearson, "[g]enerally," if it did not already have an image from Corbis that it wanted to use, Pearson would download the image from Corbis's website.  Soares Decl. ¶ 8.  "Pearson did not need additional approval from Corbis to use images obtained from Corbis in its publications."  Soares Decl. ¶ 8.  "After final production of the publication – and sometimes after a publication had been printed – Pearson would send a billing request to Corbis notifying Corbis of its projected distribution of the selected image in a Pearson publication."  Soares Decl. ¶ 8.  The billing request "[o]ften" occurred months

United States District Court
Northern District of California

after selecting and including a Corbis image in a Pearson publication.  Soares Decl. ¶ 8.  Corbis

would then "send Pearson its standard invoice seeking payment for Pearson's anticipated use of

the image based on the prices set forth in [the] relevant MLA."  Soares Decl. ¶ 8.  "The timing

with respect to when Corbis would send Pearson an invoice varied from within a few days or

weeks after Pearson sent a billing request to months or, on numerous occasions, even years after

Pearson sent the initial billing request."  Soares Decl. ¶ 8; Br. 7 (citing Dudash Decl. Exs. 8-19).

Pearson cites 12 such instances from 2002 to 2009.  Br. 19 (citing Dudash Decl. Exs. 8-19).

On occasions when Pearson became aware that it underestimated its usage in an initial

billing request sent to Corbis, Pearson sent Corbis subsequent billing requests notifying Corbis of

additional print runs or other extended distribution.  Soares Decl. ¶ 9.  Corbis would then send

Pearson new invoices charging for the balance.  Soares Decl. ¶ 9.  For example, on February 10,

2004, Pearson sent a billing request for an additional 40,000 print run.  Dudash Decl. Ex. 19 at D-

MU00028574.  On May 18, 2004, Corbis sent the corresponding invoice, charging the additional

usage fee for print runs exceeding 40,000 under the 2001 MLA.  Dudash Decl. Ex. 19 at D-

MU00028572.  In another example, in response to a Pearson notice of additional print run, Corbis

sent an invoice in May 2009 charging for 100,000 additional printings at the additional charge for

print runs between 100,000 and 500,000 under the 2007 MLA.  Dudash Decl. Ex. 20 at 001011,

001014; Dudash Ex. 7 at D-MU00049821.  Pearson admits that in both these examples, it printed

more copies than it had "projected" on billing requests sent to Corbis; however, because the

number of copies fell within the relevant ranges under the MLAs, Pearson would not have been

charged any more.  Br. 8 n.8.  These are the only two instances cited by Pearson in which Corbis

billed Pearson after "Pearson became aware that it exceeded its projected print quantity and

notified Corbis."  Br. 19 (citing Dudash Decl. Exs. 19 & 20).

### PROCEDURAL BACKGROUND

MPI filed this action on April 18, 2012.  Dkt. No. 1.  On May 14, 2013, MPI moved for

leave to file an amended complaint to add contributory infringement claims and to allow further

discovery.  Dkt. No. 36.  The Court denied the motion because it came over six months after the

deadline for amending pleadings and 17 days before the deadline for fact discovery.  Dkt. No. 50.

United States District Court
Northern District of California

1   MPI then filed another action raising the contributory infringement claims that this Court denied

2   adding here.  The Court ordered that that case be related to this one, and a motion to dismiss that

3   case is pending.  *Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 13-cv-3937 (N.D. Cal.

4   Aug. 23, 2013).

5       Pearson moved for summary judgment on September 12, 2013, Dkt. No. 62, and MPI filed

6   an opposition on September 20, 2013, Dkt. No. 66.  Pearson filed a reply on October 4, 2013.

7   Dkt. No. 68.

8       The Court held a hearing on this Motion on November 7, 2013.  Dkt. No. 74.  The next

9   day, MPI filed a "notice pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure,"

10  stating that "in the event the Court concludes that Plaintiff is not the real party in interest to

11  prosecute this action, Marc Muench and David Muench request to ratify, join or be substituted into

12  this action."  Dkt. No. 75.

### LEGAL STANDARD

14      Summary judgment is proper "if the movant shows that there is no genuine dispute as to

15  any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

16  The moving party bears the initial burden of demonstrating the absence of a genuine issue of

17  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however,

18  has no burden to disprove matters on which the non-moving party will have the burden of proof at

19  trial.  The moving party need only demonstrate to the court "that there is an absence of evidence to

20  support the non[-]moving party's case."  *Id.* at 325.

21      Once the moving party has met its burden, the burden shifts to the non-moving party to

22  "designate specific facts showing a genuine issue for trial."  *Id.* at 324 (quotation marks omitted).

23  To carry this burden, the non-moving party must "do more than simply show that there is some

24  metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

25  475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient;

26  there must be evidence on which the jury could reasonably find for the [non-moving party]."

27  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

28      In deciding a summary judgment motion, the court must view the evidence in the light

United States District Court
Northern District of California

8

most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "uncorroborated and self-serving" testimony that "flatly contradicts [ ] prior sworn statements" cannot create a genuine issue of fact. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

A district court need not consider evidence in the record "unless it is brought to the district court's attention" because the court is "not required to comb the record to find some reason" to grant or deny summary judgment; rather, "if a party wishes the court to consider [evidence for a particular issue], the party should bring that desire to the attention of the court." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation, quotation marks, and brackets omitted).

## DISCUSSION

## I.      MPI LACKS STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIMS.

The Court finds that MPI lacks standing to sue Pearson. "To be entitled to sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an exclusive right under a copyright." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (citation and quotation marks omitted); 17 U.S.C. § 501(b). Ownership of a copyright "vests initially in the author or authors of the work." 17 U.S.C § 201(a). "[W]hen a copyright interest is transferred it must be recorded to protect the copyright holder's right to bring an infringement suit." *Silvers*, 402 F.3d at 885 (citing 17 U.S.C. 205(d)).

MPI has produced no creditable evidence demonstrating that it is the owner of the copyrights for the photographs at issue. Br. 9. Although the Complaint asserts that MPI "is the owner of the copyrights to all" of the photographs at issue, it also says that David and Marc Muench took the photographs. Br. 9 (citing Compl. ¶¶ 2, 7). Thus, there must be some evidence that the Muenchs transferred their copyright ownership to MPI (or that they were working for

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Muench, as will be discussed below), but there appears to be none.  Corbis's right to use the

2    photographs at issue stems from its agreements with David and Marc Muench as individuals, not

3    MPI.  *See* Br. Decl. Exs. 1-4.  These agreements reflect that the Muenchs signed them in their

4    individual capacity, and MPI has produced no other documentary evidence that it licensed any of

5    the photographs at issue to Corbis.  Indeed, as Pearson asserts, "MPI has not produced <u>any</u>

6    documents purporting to transfer ownership of the photographs from David or Marc Muench to

7    MPI."  Br. 9 (citing Dudash Decl. ¶ 7).

8           MPI argues that it has standing to sue because it owns the copyrights to the photographs at

9    issue, which were created by the Muenchs within the scope of their employment as MPI

10   employees.  Under 17 U.S.C. §§ 101 and 201(b), work produced by an employee within the scope

11   of his or her employment is "work made for hire," which belongs to the employer.  Opp'n 5

12   (citing *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012)).

13   Because Marc and David Muench both submitted declarations with their Opposition stating that

14   they took the photographs at issue within the scope of their employment, MPI argues that it owns

15   the copyrights of the photographs and has standing to sue.  Opp'n 6.

16          MPI cannot overcome summary judgment by offering the Muenchs' bare assertions.

17   "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine

18   issues of fact and defeat summary judgment."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978,

19   984 (9th Cir. 2007).  "Specific testimony by a single declarant can create a triable issue of fact, but

20   the district court . . . need not find a genuine issue of fact if, in its determination, [a] particular

21   declaration was 'uncorroborated and self-serving,'" especially when the proffering party "put

22   forward nothing more than a few bald, uncorroborated, and conclusory assertions rather than

23   evidence."  *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (citation omitted).  Indeed,

24   the Ninth Circuit "has refused to find a 'genuine issue' where the *only* evidence presented is

25   'uncorroborated and self-serving' testimony."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054,

26   1061 (9th Cir. 2002) (emphasis added).

27          Here, MPI puts forward nothing but "bald, uncorroborated, and conclusory assertions" to

28   support its claim that MPI "has always owned all of the rights comprised in the copyrights for the

10

Photographs in suit." Opp'n 6. The only evidence it presents to the Court are Marc Muench's declaration that "[w]hen the photographic images identified in the Complaint [ ] were created by my father and me, we were employees of [MPI], working within the scope of our employment," and David Muench's declaration that "[w]hen the photographic images identified in the Complaint [ ] were created by me and my son, we were employees of [MPI], working within the scope of our employment." Marc Muench Decl. ¶ 3; David Muench Decl. ¶ 3. Thus, MPI argues, the photographs are "works made for hire" and belong to MPI, giving it standing to bring suit. However, MPI identifies no evidence to support those uncorroborated and self-serving statements, nor do the declarations provide further substantiation. In addition, MPI makes no effort to explain away the fact that there is no evidence that MPI owns any of the photographs at issue, nor does it explain why the agency agreements are between Marc and David Muench and Corbis, but there are none between Corbis and MPI.

Pearson raises several additional arguments in its Reply to show that MPI lacks standing. Pearson points out that "the copyright registrations MPI produced in discovery expressly state that the photographs were **not** 'works made for hire.'" Reply 3 (original emphasis). And although the six Corbis compilation registrations identify certain individual photographers by name and a number of "other photographers" without names, neither MPI nor the Muenchs were specifically named as "authors," and the individuals were not identified as creating "works made for hire." Reply 3. The Corbis registrations identify Corbis as an "author" for "works made for hire," but those relate to the compilations, not individual works. Reply 3 n.2. However, the Copyright Act requires that registrations provide a statement identifying whether the works being registered are works made for hire. 17 U.S.C. § 409(4). Further, Pearson points out that the supplemental registrations produced by MPI identify the Muenchs as authors, not MPI, but they do not state that the photographs were works made for hire. Reply 3.

Finally, relying on attachments to its Reply, Pearson argues that the Muench declarations are contradicted by sworn statements submitted by David and Marc Muench in a separate case against MPI. Dudash Decl. Exs. 35 & 36. In those statements, the Muenchs stated, "I intended, and believed I made, a full, complete and total transfer of all my copyrights to all of my

photographs which were accepted by Corbis Corporation into its collection for licensing."  In so

doing, MPI told the court that "Marc and David Muench executed unequivocal affirmations of

their 1997 and 2001 conveyances to Corbis, transferring unqualifiedly, all copyrights to the

Images under Certificate Nos. VA 863-783, VA 863-785, VA 1-038-658, VA 1-115-519, VA 1-

371-165, and VA 1-378-558," the same registrations at issue in this case.  Reply (citing Dudash

Decl. Ex. 38 at 8).  And in three separate briefs in the same case, MPI represented that "Marc

Muench and David Muench, the creators and owners of the Images, transferred, in writing, their

copyrights to Corbis Corporation."  Reply 4 (citing Dudash Decl. Exs. 37 at 8, 38 at 2, 39 at 6).

Thus, MPI's argument contradicts its previous factual assertions and the Muenchs' sworn

statements.[4]

MPI does not dispute these facts.  However, at the hearing on the Motion, MPI represented

that David Muench stated in a declaration submitted in his divorce proceedings that MPI, not he,

was the owner of the photographs he took because the images were works for hire.  The Court

need not address this declaration, which is not in the record before the Court.  Needless to say, it

would not create a genuine issue of fact sufficient to overcome summary judgment.  Even if the

Court were to consider it, such a declaration, as well as the ones submitted in opposition to this

Motion, appear to contradict what the Muenchs and MPI have apparently stated in other

proceedings.  While the so-called "sham-affidavit rule"—which holds that "a party cannot create

an issue of fact by an affidavit contradicting his prior deposition testimony," *Van Asdale v. Int'l*

*Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)—generally applies to situations in which an

affidavit flatly contradicts deposition testimony from the same case, the Court finds that the same

general principle would apply here, where the Muench's declarations are inapposite from their and

MPI's statements elsewhere.  As MPI's said in another case, "There can be no question that David

Muench and March Muench intended to transfer all copyright ownership rights necessary to

_____

[4] Pearson argues that if the photographs in fact belonged to MPI as "works made for hire," then
the copyright registrations submitted by Corbis would be invalid as to MPI's photographs because
MPI never transferred ownership to Corbis.  Based on their declarations, David and Marc
Muench—the individuals who purported to transfer ownership to Corbis for purposes of
registration—never owned the photographs and could not have given Corbis authority through the
agency agreements to register them, leaving them without copyright protection.  Reply 4 n.3.

permit Corbis to complete the Registration." Dudash Decl. Ex. 38 at 3. This appears at odds with MPI's and the Muenchs' claim that the photographs are "works made for hire," which would belong only to MPI and give it standing to bring this suit.

The Court need not rely on the evidence identified by Pearson in its Reply which undermine MPI's arguments because even without them, the undisputed facts show that there is nothing more than a "mere scintilla of evidence" to support MPI's argument that it has standing to bring suit for infringement. *See Anderson.*, 477 U.S. at 252. Taking the Reply evidence into account only provides additional grounds for finding that the Muenchs' declarations—the only evidence they provide to support MPI's standing—do not create a *genuine* issue of fact. *See* Opp'n 5-6. Because MPI identifies no other evidence to show a genuine issue of fact, Pearson is entitled to judgment as a matter of law due to MPI's lack of standing.

## II.     THE COPYRIGHT INFRINGEMENT CLAIMS ARE BASED ON INVALID COPYRIGHT REGISTRATIONS.

A valid copyright registration is necessary to bring a copyright infringement action. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010). In addition to individual works, an applicant may obtain copyright protection for a "compilation or derivative work." 17 U.S.C. § 103. A compilation is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. However, the protection afforded to a compilation is independent of any protection that might be afforded to its individual components. *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 596 (4th Cir. 2013). The Copyright Act governs the method of registering both individual and compilation works. 17 U.S.C. § 409.

Pearson argues that even if MPI had standing, it cannot establish that the photographs at issue were validly registered for three reasons: (1) collateral estoppel bars MPI's re-litigation of the validity of the registrations because another federal court has already held that six of the seven

United States District Court
Northern District of California

compilation registrations at issue did not validly copyright the underlying individual works[5]; (2) the compilation registrations are invalid as to the individual works because they do not identify the author or title of the work; and (3) there is no evidence showing that the photographs at issue were actually included in the copyright registrations as alleged[6].  Br. 10.

### A.  Collateral Estoppel Bars MPI's Claims.

MPI claims that the vast majority of the photographs at issue, comprising 406 of MPI's 485 claims, are covered by Copyright Registration Nos. VA 863-783, VA 863-785, VA 1 038-658, VA 1-115-519, VA 1-371-165, and VA 1-378-558.  Br. 10-11.  However, Pearson asserts that the United States District Court for the Southern District of New York "has already held that these compilation registrations are inadequate to register individual photographs purportedly contained in the registered compilations."[7]  Br. 11 (citing *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84, 87, 95 (S.D.N.Y. 2010)).  The Honorable Loretta Preska held that while Corbis validly owned the copyrights to the compilations, the compilation registrations did not validly register the individual photographs contained in the compilations because MPI was not listed as an author of each work as required by 17 U.S.C. § 409(2).  *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84, 94-95 (S.D.N.Y. 2010) ("*Houghton I*"); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09-cv-2669, 2010 WL 3958841, at *3 (S.D.N.Y. Sept. 27, 2010) ("*Houghton II*") (reaffirming conclusion on motion for reconsideration).  Thus, Pearson argues, MPI is precluded from arguing that it holds valid copyrights for these individual photographs.

The Court finds that collateral estoppel bars MPI's claims for the 406 of 485 claims at

---

[5] MPI withdrew its claims relating to image MM001810, Dudash Decl. Ex. 33, which Pearson claims is "the only image relating to registration number VA 1-767-946," Br. 10 n.10.

[6] Because the Court concludes that Pearson is entitled to summary judgment because (1) MPI lacks standing, (2) collateral estoppel bars relitigation of whether the photographs at issue were validly copyright, and (3) the compilation registrations did not validly register the underlying works, it need not address the parties' arguments regarding whether there is evidence that the photographs at issue were covered by the compilation registrations and arguments regarding Corbis's agreements with Pearson.

[7] Pearson notes that the court upheld the validity of Copyright Registration No. VAu 354-914 because the defendant did not challenge this registration.  Thus, Pearson does not argue that collateral estoppel applies to this registration, but does argue that it is insufficient for reasons discussed below.  Br. 11 n.11.

United States District Court
Northern District of California

issue in this case covered by the six compilation copyright registrations.  "Issue preclusion prevents a party from relitigating an issue decided in a previous action if four requirements are met:  (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (citation and quotation marks omitted).  Pearson argues that all these elements are met here.  Br. 12.  Pearson also notes that Judge Preska applied collateral estoppel in other cases MPI brought against different defendants based on the same registrations.  *See, e.g.*, *Muench Photography, Inc. v. John Wiley & Sons, Inc.*, No. 12-cv-7502, 2013 WL 4010273 (S.D.N.Y. Aug. 6, 2013); *Muench Photography, Inc. v. McGraw Hill Cos.*, No. 12-cv-6595 (S.D.N.Y. Oct. 9, 2012) (Dudash Decl. Ex. 29).

In the cases before Judge Preska, the court considered "whether the registration of an automated database—here, a compilation of photographs by different photographers—by a third-party copyright claimant that has been assigned the rights to the individual works for the purposes of copyright registration registers the individual works thereby permitting the [photographs' owners] to sue for copyright infringement."  *Houghton I*, 712 F. Supp. 2d at 92.  She concluded that the "registrations at issue here cover only the database as a whole (the compilation) but do not cover Plaintiff's individual contributions.  Thus, MPI has failed to comply with the precondition to suit . . . ."  *Id.* at 95.  This was fully litigated in *Houghton I* and is the same issue before the Court.  MPI does not argue that it did not have a full and fair opportunity to do so.  Indeed, MPI moved in *Houghton II* that Judge Preska reconsider her decision in *Houghton I*, which she denied.  2010 WL 3958841.  Further, the privity element is met since MPI, the party against whom Pearson is asserting collateral estoppel, was the plaintiff in both *Houghton I* and *II*.

MPI argues that because the case before Judge Preska is still pending, the ruling is not yet appealable, and therefore collateral estoppel is inapplicable.  Opp'n 7.  But MPI cites no authority to support that proposition. On the contrary, as Pearson rightly argues, a judgment need not be appealable to be "final" for collateral estoppel purposes.  Reply 6 (citing *Luben Indus., Inc. v.*

*United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)).  Rather, the issue is whether the adjudication was "sufficiently firm" to be accorded conclusive effect.  *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983).  In other words, "the proper query here is whether the court's decision on the *issue as to which preclusion is sought* is final."  *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (original emphasis).

Pearson argued that Judge Preska "plainly viewed [her] judgment as final because [she] reaffirmed [her] holding by denying MPI's motion for reconsideration, noting that MPI had a fair opportunity to raise all arguments."  Reply 7.  In fact, Judge Preska applied collateral estoppel on this issue in two other cases brought by MPI because they were based on the same compilation registrations by Corbis.  *Muench Photography, Inc. v. John Wiley & Sons, Inc.*, 12-cv-7502-LAP, 2013 WL 4010273, at *3 (S.D.N.Y. Aug. 6, 2013); *Muench Photography, Inc. v. McGraw-Hill Cos.*, No. 12-cv-6595 (S.D.N.Y. Oct. 9, 2012) (Dudash Decl. Ex. 29).  Given that MPI has apparently raised the same issue at least four times before the same judge and has obtained the same result, the adjudication was "sufficiently firm" to warrant conclusive effect.  MPI's claims based on the six registrations, which cover 406 of 485 claims, are barred because the four elements of collateral estoppel are met here.

**B.  The Compilation Registrations Did Not Validly Register The Underlying Works.**

Even if collateral estoppel does not bar the 406 of 485 claims, the Court agrees with Judge Preska's analysis and also concludes that compilation registrations do not automatically register the underlying works.

Section 409 of the Copyright Act requires that a registration application include the name of the claimant, the name of the author, and the title of the work.  17 U.S.C. § 409(1), (2) & (6).  As discussed above, a compilation of works may also be registered as one, in which case the registration requires "identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."  17 U.S.C. § 409(9).  As Judge Preska noted in *Houghton I*, compilation registrations present the "novel question of whether the registration of . . . a compilation of photographs by different photographers [ ] by a third-party copyright claimant that has been

16

assigned the rights to the individual works for the purposes of copyright registration registers the individual works thereby permitting the individual photographers to sue for copyright infringement." *Houghton I*, 712 F. Supp. 2d at 92.  The question remains a "novel" one because there is no controlling authority for the Court to follow.  *See Pac. Stock, Inc. v. Pearson Educ., Inc.*, No. 11-cv-423, 2012 WL 93182, at *4 (D. Haw. Jan. 11, 2012) (stating that there is "no controlling law" on this issue); *see also Metro. Reg'l Info. Sys., Inc.*, 722 F.3d at 597-98 (4th Cir. 2013) ("courts have disagreed on how to apply the Copyright Act's registration requirement to collective works and their component parts"); *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, No. 12-cv-10003, 2013 WL 4551666, at *9 (N.D. Ill. Aug. 28, 2013) ("The courts have split on whether compilation registrations are sufficient to allow the copyright holder to sue for infringement of the compilation's individual components.  At the time briefing concluded on this motion, only district courts had spoken to the issue.").

Based on a number of district court decisions, Pearson argues that the seven registrations which MPI alleges cover the photographs at issue do not validly register the underlying works because they do not comply with Section 409.  Br. 13.  All of the registrations fail to identify the titles of the photographs, and six of the seven registrations do not mention MPI or the Muenchs as authors.  Dudash Decl. Exs. 22-28.  Pearson argues that the mere fact that the registrations cover *compilations* that include MPI's photographs does not excuse compliance with Section 409 for the individual photographs.  Br. 13-14.  It points out that eight district courts decisions have held that registration of a compilation work does not register the individual photographs therein.[8]  Reply 7; *see also* Br. 14.  Pearson thus argues that it is entitled to summary judgment because the registrations MPI relies upon to support its infringement claims do not extend copyright protection

---

[8] *Alaska Stock, LLC v. Pearson Educ., Inc.*, No. 11-cv-00162, 2013 WL 5496788, at *9 n.113 (D. Alaska Sept. 11, 2013); *Masterfile Corp. v. Chaga Int'l*, No. 12-cv-850, 2012 WL 3279531, at *5 (C.D. Cal. Aug. 10, 2012); *Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. 11-cv-4649, Dkt. No. 12 at 8 (E.D. Pa. Oct. 12, 2011) (Dudash Decl. Ex. 30); *Bean v. John Wiley & Sons, Inc.*, No. 11-cv-8028, 2011 WL 3348959, at *3 (D. Ariz. Aug. 3, 2011); *Bean v. Pearson Educ., Inc.*, No. 11-cv-8030, 2011 WL 1882367, at *3 (D. Ariz. May 17, 2011) (adopting decision in *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, No. 10-cv-8034, 2010 WL 3168624, at *4 (D. Ariz. Aug. 10, 2010)); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g. Co.*, No. 09-CV-0061, 2010 WL 3785720, at *3 (D. Alaska Sept. 21, 2010); *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, No. 10-cv-8034, 2010 WL 3168624, at *4 (D. Ariz. Aug. 10, 2010).

to the underlying works.  Br. 15 (citing *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144, 1147 (9th Cir. 2003); *Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 378 F. Supp. 2d 1189, 1200 (C.D. Cal. 2005)).

MPI cites cases to support the proposition that a compilation registration can effect copyright protection for the underlying works.  In *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013), the Fourth Circuit—recognizing that courts were divided over issues similar to those here—was persuaded that compilation "registrations [are] sufficient to permit an infringement action on behalf of component works, at least so long as the registrant owns the rights to the component works as well."  722 F.3d at 598.  The court distinguished *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, No. 10-cv-8034, 2010 WL 3168624, at *4 (D. Ariz. Aug. 10, 2010), by stating that the Fourth Circuit was not addressing "the distinct issue of whether individual photographers may use a third party's collective work registration to satisfy their pre-suit registration requirement against subsequent infringers."  *Id.* at 599.  Pearson argues that the Fourth Circuit case is distinguishable because this case does present that "distinct issue."  Reply 8.

The three other cases MPI cites are district court opinions on motions to dismiss.  The court in *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, 2013 WL 4551666, at *9, recognized the conflicting authorities at the district court level.  However, it held, "Because this case remains at the pleading stage, because allowing [plaintiff's] copyright claims . . . will not appreciably (if at all) increase the discovery burden given that those images also are subject to the common law fraud claim, because the only court of appeals to have addressed the matter has held that compilation registrations are sufficient to authorize suit in this context, and because the contrary decision in *Alaska Stock* remains on appeal in the Ninth Circuit, the more prudent course is to allow those claims to proceed, at least for now."  Similarly, in *Panoramic Stock Images, Ltd. v. McGraw Hill Cos.*, No. 12-cv-9881, 2013 WL 4047651, at *5-7 (N.D. Ill. Aug. 9, 2013), the court stated, "this court is unpersuaded by Defendant's argument that the statute's plain meaning requires that a collective work's registration must always include the author and title of each of its individual components in order for registration to extend to those components. . . . At this early

stage, and in light of the varying interpretations of Section 409 adopted by the parties and various courts, the court grants deference to the Copyright Office's reasonable interpretation of the statute" that "copyright registration of a collective work will cover the component works as well." Pearson argues that those cases are distinguishable because they were at the motion-to-dismiss stage whereas discovery is closed here. Reply 8 n.6. And in *Pacific Stock, Inc. v. Pearson Education, Inc.*, No. 11-cv-423, 2012 WL 93182, at *5 (D. Haw. Jan. 11, 2012), the court held that the defendant "does not establish that the court should dismiss [the] claims . . . [because the defendant] simply does not show what the law requires . . . ." Pearson argues that the case before the Court is distinguishable because it does explain what the law requires here. Reply 8.

The question of whether compilation registrations must list the names of individual authors for the underlying works to also be copyrighted is pending before the United States Court of Appeals for the Ninth Circuit in two cases. *See Pac. Stock, Inc.*, 2012 WL 93182. One case has been argued—*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09-cv-61, 2010 WL 3785720 (D. Alaska 2010), which held in the district court that "registrations of [] compilations of photographs d[o] not effect the registration of the copyrights in the individual photographs." *Id.* at *4. The other case reached the same conclusion. *Bean v. Houghton Mifflin Harcourt Publ'g Co.*, 2010 WL 3168624, at *3. The United States filed an amicus brief in *Alaska Stock* arguing the contrary. *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g, et al.*, No. 10-36010 (9th Cir. Nov. 3, 2010), at Dkt. No. 6 ("Amicus Br."). The United States argued that the Copyright Office's interpretation of the Copyright Act deserved deference because the Copyright Act is silent about whether registration of a compilation requires identifying the authors and titles of the underlying works or whether those underlying works can be copyrighted by virtue of the compilation's registration. Amicus Br. 13. Neither party briefed the deference issue here.

Based on the text of the Copyright Act, the Court agrees with the weight of authority and is persuaded that registration of a compilation does not extend copyright protection to the underlying works. Section 409 prescribes the elements of an application for copyright registration and states that a registration for a compilation must provide "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material

covered by the copyright claim being registered."  17 U.S.C. § 409(9).  All registrations must also include information such as the claimant's name, the title of the work, and the year of creation.  17 U.S.C. § 409(1), (6) & (7).  Any application that omits such information for a given work would be insufficient to obtain copyright registration for that work.

Other portions of the Act support this understanding.  Section 103 provides, "The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.  The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."  17 U.S.C. § 103.  Thus, while a registration of a compilation imparts copyright protection upon the *compilation*, the copyright in that compilation does not extend to the individual works comprising the compilation.  To be clear, "preexisting material" does not necessarily refer to already-registered materials—as the definition of "compilation" states, a compilation "is a work formed by the collection and assembling of preexisting materials or of data," regardless of whether the preexisting materials or data are copyrighted.  17 U.S.C. § 101.  Indeed, Section 103 references "*any* copyright protection in the preexisting material" as opposed to "*the* copyright protection," implying that there might not be any underlying copyrighted work at all.  Thus, the mere fact that an individual work is part of a copyrighted compilation does not mean that the work becomes copyrighted by virtue of the compilation's registration.[9]

The cases MPI cites in support of its argument are distinguishable.  The two Northern District of Illinois cases were at the motion-to-dismiss stage, and those courts appeared inclined to let the cases go forward more because of the lack of clear guidance on the issue than because of the merits.  While the court in *Panoramic Stock Images, Ltd. v. McGraw Hill Cos.* does say that

---

[9] The United States disagrees with this interpretation of Section 103.  It argues that Section 103 only addresses the existence of a copyright, not the registration of a copyright, which is the subject of Section 409.  Amicus Br. 21-22.  While true, that distinction still does not explain why registration of a compilation necessarily means that the underlying individual works are thereby copyrighted as well.

United States District Court
Northern District of California

Section 103 does not resolve the issue because "[t]he language of that provision appears to be aimed at the potential competing interests of the maker of a compilation and the creator of constituent parts," the Court is unclear how any such distinction undermines the plain language of the provision.  2013 WL 4047651, at *5.  *Pacific Stock, Inc. v. Pearson Education, Inc.*, does not support MPI's argument either because the court concluded that the defendant merely failed to carry its burden in showing what the applicable law is, let alone supported it, and dismissal was therefore unwarranted.  No. 11-cv-423, 2012 WL 93182, at *5 (D. Haw. Jan. 11, 2012).  Finally, *Metropolitan Regional Information Systems* is unhelpful because the court simply stated that finding "collective work registrations as sufficient to permit an infringement action on behalf of component works, at least so long as the registrant owns the rights to the component works as well," is "more consistent with the statutory and regulatory scheme," but did not provide any reason why beyond the fact that the Copyright Office takes this approach.  722 F.3d at 597-99.  In any event, the Fourth Circuit explicitly distinguished the case before it from those involving a third-party registrant that is not the party bringing the infringement action, as is the situation here.  *Id.*

Despite the fact that the parties failed to address the United States' argument in its amicus brief in *Alaska Stock v. Houghton Mifflin Harcourt Publishing,* the Court has considered it and disagrees with it.  The United States notes that in guidance documents—but not regulations—"the Copyright Office has consistently taken the position that the registration of a collective work also registers any independently copyrightable works within the collective work."  Amicus Br. 7.  It acknowledges that the Copyright Act is "silent regarding the application requirements for registering component works of a collective work."  Amicus Br. 11.  "[The Act] simply states that a registration application must include certain information" but "does not specify whether an application to register a collective work must include authors' information and titles for every component work" or "specify whether the registration of a collective work may cover independently copyrightable component works."  Amicus Br. 13.  Thus, it argues that courts should defer to the Copyright Office's "longstanding administrative interpretation" that compilation registrations also copyright the underlying works.  Amicus Br. 11.

United States District Court
Northern District of California

While the United States is correct that the Copyright Act does not explicitly address the application requirements for component works of a collective work, it does not explain why those component works should be treated any differently than individually registered works.  It provides no statutory basis for distinguishing the two.  The United States notes that Section 409(9) provides that an application for a compilation must provide "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered," but that requirement is explicitly for a compilation.  It does not speak to the requirements for registering the underlying works.

Section 409's plain requirements are better understood to apply to all works equally, whether part of a compilation or not.  Contrary to the United States' position, Amicus Br. 15, Section 409's provisions are unambiguous.  Section 409 states that "[t]he application for copyright registration . . . *shall* include" the name of the claimant, "the title of *the* work," "the year in which creation of *the* work was completed," etc.  17 U.S.C. § 409 (emphases added). While "[t]he Copyright Office does not [ ] require applicants to list the title and author's information for component works," Amicus Br. 16, that policy is contrary to the Act's clear language. Accordingly, despite the fact that the Copyright Office has "consistently interpreted § 409 to permit claimants to register component works they own by registering the collective work," that interpretation is entitled to no deference because it is contrary to the explicit requirements of the Copyright Act.  *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012 (9th Cir. 2006) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984), for the proposition that an agency's statutory interpretation is not entitled to deference if "arbitrary, capricious, or manifestly contrary to the statute").  Like Judge Preska, "the Court will not defer to the Copyright Office's interpretations of the Copyright Act . . . because the interpretations conflict with a plain reading of 17 U.S.C. § 409."  *Muench I*, 712 F. Supp. 2d at 91-92.

The Court concludes that Pearson is entitled to summary judgment on these claims because while the photographs at issue were part of registered compilations, they were not themselves

registered and therefore are not copyrighted, and MPI has provided no evidence to the contrary.[10]

## III.   THE MUENCHS' REQUEST TO JOIN THIS SUIT IS DENIED.

Federal Rule of Civil Procedure 17(a)(3) allows joinder of a real party in interest within "a reasonable time."  The day after the hearing on Pearson's motion for summary judgment—and after the Court explained its tentative ruling against MPI—Marc Muench and David Muench made a  "request to ratify, join or be substituted into this action."  Dkt. No. 75.  Their request is DENIED for both substantive and procedural reasons.

Most importantly, the Muenchs have already represented to the Court, under penalty of perjury, that the photographs at issue were created within the scope of their employment with MPI.  Similarly, MPI's counsel, undoubtedly mindful of their Rule 11 obligations, represented to the Court that the photographs at issue were "works made for hire."  The Court is therefore unaware of any basis for the Muenchs to assert that they are the real parties in interest in this case, and they have not provided the Court with any such basis.[11]

Further, the Muench's request is not timely.  MPI filed this case more than eighteen months ago.  It has brought similar cases against other defendants.  Fact discovery ended nearly six months ago.  The Court already denied a motion by MPI to amend the pleadings due to the prejudice it would cause Pearson given MPI's delay in bringing the motion.  Dkt. No. 50.  MPI and its counsel should have been aware of Pearson's standing argument as early as August 30, 2013, when Pearson filed a motion to seal portions of its summary judgment motion and

---

[10] The Court also agrees with Judge Preska's conclusion that supplemental registrations are insufficient to, effectively, retroactively register works underlying a compilation registration. *Muench Photography, Inc. v. Houghton Mifflin Publ'g Co.*, 2012 WL 1021535, at \*2-4.  As the Copyright Act states, supplemental registrations are intended to "correct an error in a copyright registration or to amplify the information given in a registration."  17 U.S.C. § 408(d).  Given that the underlying works were never validly registered, "There are therefore no individual images previously registered with the Copyright Office that Plaintiff can now supplement under the Act."  2012 WL 1021535 at \*3.  Thus, the supplemental registrations offered by MPI do not create an issue of material fact.

[11] The Court notes, without deciding, that the doctrine of judicial estoppel may apply as well.  *See generally Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) (stating that judicial estoppel "is an equitable doctrine invoked not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    simultaneously filed a redacted version of the motion. Dkt. No. 55-1. Indeed, MPI's counsel

2    explicitly acknowledged Pearson's standing argument in its administrative motion requesting

3    additional time to respond to Pearson's summary judgment motion, filed on September 9, 2013,

4    Dkt. No. 58 at 2, which the Court granted, Dkt. No. 60. Yet MPI's counsel waited until after the

5    Court indicated at the hearing that it was inclined to grant Pearson's motion for summary

6    judgment to make what appears to be a strategic move to try to save this case. The Muenchs have

7    no legitimate justification for their delay in making this request.

8       Rule 17(a) "is designed to avoid forfeiture and injustice when an understandable mistake

9    has been made in selecting the party in whose name the action should be brought." *Goodman v.*

10    *United States*, 298 F.3d 1048, 1053 (9th Cir. 2002) (citation omitted). The Muenchs have not

11    explained why any "mistake" here—if, indeed, there is a cognizable one—is "understandable."

12    To allow Pearson to be subjected to further motion practice and potentially additional discovery

13    would be unjust, incur further expense, and create undue delay in the determination of this action.

14    *See* FED. R. CIV. P. 1.

15                          **CONCLUSION**

16       For the reasons above, Pearson's Motion for Summary Judgment is GRANTED on the

17    alternative grounds of standing and the invalidity of the copyright registrations.[12] The Muenchs'

18    "request to ratify, join or be substituted into this action" is DENIED.

19       **IT IS SO ORDERED.**

20    Dated: November 19, 2013

21

22                               WILLIAM H. ORRICK
                               United States District Judge

23

24 _____

25 [12] Pearson moves for summary judgment on all claims listed in Exhibit 1 of the Complaint. Br. 9.
   Therefore, the Court understands that this Order disposes of this case entirely. To the extent that

26    any of the 485 claims in the Complaint are not disposed of based on the Court's conclusions
   above, either party may notify the Court of any outstanding claim in a letter brief, not to exceed

27    three pages excluding any list of such claims, explaining why the claim remains. The Court
   strongly prefers a joint letter. Any such letter brief shall be filed within seven days of the date of

28    this Order. The Court will not entertain any additional arguments related to the substantive issues
   discussed in this Order.