1 Christopher Seidman (SBN 98884)
Harmon & Seidman LLC
2 101 South Third Street, Suite 265
Grand Junction, Colorado 81501
3 Tel: (970) 245-9075
Fax: (970) 245-8086
4 E-mail: chris@harmonseidman.com

5 Robert W. Crockett (SBN 79918)
Harmon & Seidman LLC
6 33 Spindrift Passage
Corte Madera, California 94925
7 Tel: (415) 945-1830
E-mail: robert@harmonseidman.com

8 *Attorneys for Plaintiff Muench Photography, Inc.*

9

10

11

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

12 MUENCH PHOTOGRAPHY, INC.,         )
                                     )   Case No. 12-cv-01927-WHO
13            Plaintiff,             )
                                     )
14 v.                                )
                                     )
15 PEARSON EDUCATION, INC., and      )   Date:        February 19, 2014
   JOHN DOE PRINTERS 1-10,           )   Time:        2:00 p.m.
16                                   )   Courtroom:   2, 17th Floor
              Defendants.            )
17 _____ )

18

19      PLAINTIFF MUENCH PHOTOGRAPHY, INC.'S MEMORANDUM OF POINTS AND

20      AUTHORITIES IN OPPOSITION TO DEFENDANT PEARSON EDUCATION, INC.'S

21              MOTION FOR ATTORNEYS' FEES, EXPERT FEES, AND COSTS

22

         [OPPOSITION DECLARATIONS OF DAVID MUENCH, MARC MUENCH,

23              MAURICE HARMON, AND ALEX RICE KERR,

24      AND MPI'S REQUEST FOR JUDICIAL NOTICE, FILED CONCURRENTLY]

25

26

27

28

                                    i

**<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED .................................................... 2

III. BACKGROUND ..................................................................................................... 2

IV.  ARGUMENT ........................................................................................................... 3

    A.   Pearson is not a "prevailing party." ........................................................... 3

        1.   If MPI has no standing, as this Court has found, this Court has no subject matter jurisdiction and no power to award fees; relatedly, a dismissal for lack of jurisdiction does not create a prevailing party. ........................................... 3

        2.   Under *Righthaven,* this Court had no power to grant summary judgment to Pearson on the alternative ground that the Corbis registrations were not valid, but a ruling on this kind of "technical defense" does not create a "prevailing party" in any event.... 5

    B.   Even if Pearson were a "prevailing party," the pertinent factors weigh against awarding Pearson attorney fees. ........................................................................................ 7

        1.   An award of fees to Pearson would not advance and instead would defeat the purposes of the Copyright Act. ................................................................... 8

        2.   Muench's factual and legal arguments were objectively reasonable. ......................... 9

        3.   None of MPI's claims or arguments was "frivolous," and MPI did not engage in improper litigation tactics, as Pearson contends. ..................................................... 17

        4.   MPI was motivated only by a desire to remedy Pearson's infringements; Pearson's arguments about improper motivation are meritless. .............................................. 22

        5.   There is no need in this case to compensate Pearson or deter MPI or similarly situated plaintiffs from any "misconduct." ............................................................. 22

    C.   Pearson has not shown that its requested attorney fees are reasonable. .............................. 22

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON                    CASE NO. 12-CV-01927-WHO
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

1.     Pearson has not carried its burden of proof; it has not allocated fees as between standing and registration issues, or with respect to any supposedly "improper tactics." ............................................................................................. 23

2.     Pearson seeks fees for unreasonable and unnecessary time spent and double billing. ............................................................................................................ 23

3.     Block billing and redactions. ......................................................................... 25

V.   CONCLUSION ............................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Actuate Corp. v. Aon Corp.*,
  2012 WL 3627595 (N.D. Cal. 2012) .................................................................. 5

*Alaska Stock, LLC v. Pearson Educ. Inc.*,
  Case No. 11-cv-00162 (D. Alaska June 11, 2012), Doc. 72 ........................... 19

*Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc.*,
  60 F.Supp.2d 544 (E.D. Va. 1999) ................................................................... 9

*B & H Mfg. Co., Inc. v. Lyn E. Bright*,
  2006 WL 547975 (E.D. Cal. 2006) ................................................................. 23

*Baisden v. I'm Ready Productions, Inc.*,
  804 F.Supp.2d 549 (S.D. Tex. 2011) .............................................................. 18

*Bean v. Pearson Education, Inc.*,
  __ F.Supp.2d __, 108 U.S.P.Q.2d 1531, 2013 WL 2564106 (D. Ariz. 2013) ............ 16

*Berry v. Hawaii Exp. Service, Inc.*,
  2007 WL 689474 (D. Hawaii 2007) ................................................................ 24

*Blanch v. Koons*,
  485 F.Supp.2d 516 (S.D.N.Y. 2007) ............................................................... 17

*Blue Fish Clothing, Inc. v. Kat Prints*,
  1991 WL 71113 (E.D. Pa 1991) ...................................................................... 10

*Bourne Co. v. Walt Disney Co.*,
  1994 WL 263482 (S.D.N.Y. 1994) .................................................................. 15

*Bourne Co. v. Walt Disney Company*,
  1992 WL 489766 (S.D.N.Y. 1992) .................................................................. 13

*Branson v. Nott*,
  62 F.3d 287 (9th Cir. 1995) .............................................................................. 5

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*,
  532 U.S. 598 (2001) .......................................................................................... 6

*Cabell v. Sony Pictures Entertainment, Inc.*,
  2011 WL 92765  (S.D.N.Y. 2011) .................................................................... 8

*Cadkin v. Loose*,
  569 F.3d 1142 (9th Cir. 2009) ...................................................................... 3, 6

*Campbell v. Wireback*,
  269 F. 372 (4th Cir. 1920) ............................................................................... 13

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) ......................................................................... 23

*Checkpoint Systems, Inc. v. Hangzhou Century Co., Ltd.*,
 2012 WL 2159257 (N.D. Ohio 2012 ) ............................................................................ 21

*Christiansburg Garment Co. v. Equal Employment Opportunity Commission*,
 434 U.S. 412 (1978) ............................................................................................................ 11

*Christopher & Banks Corp. v. Dillard's, Inc.*,
 805 F.Supp.2d 693 (S.D. Iowa 2011) .............................................................................. 14

*Christopher Phelps & Associates, LLC v. Galloway*,
 492 F.3d 532, 538-39 (4th Cir. 2007) ............................................................................ 10

*CJ Products LLC v. BTC Enterprises LLC*,
 2012 WL 1999829 (S.D.N.Y. 2012) ................................................................................ 13

*Clifton v. Pearson Educ., Inc.*,
 2012 WL 1669362 (N.D. Cal. May 11, 2012) ................................................................ 20

*Contractual Obligation Productions, LLC v. AMC Networks, Inc.*,
 546 F.Supp.2d 120 (S.D.N.Y. 2008) ................................................................................. 5

*DC Comics v. Pacific Pictures Corp.*,
 2013 WL 1389960 * 4 (C.D. Cal. 2013) ................................................................... 15, 17

*Dealer Advertising Development, Inc. v. Barbara Allan Financial Advertising, Inc.*,
 1979 WL 1079 (W.D. Mich. 1979) .................................................................................. 13

*DeliverMed Holdings, LLC v. Schaltenbrand*,
 734 F.3d 616 (7th Cir. 2013) .............................................................................................. 7

*Edwards v. First American Corp.*,
 610 F.3d 514 (9th Cir. 2010), *cert. dismissed*, 132 S.Ct. 2536 (2012) .......................... 4

*Elwood v. Drescher*,
 456 F.3d 943 (9th Cir. 2006) ............................................................................................... 5

*Ets-Hokin v. Skyy Spirits Inc.*,
 323 F.3d 763 (9th Cir. 2003) ............................................................................................... 8

*Ex parte McCardle*,
 74 U.S. 506 (1868) ................................................................................................................. 5

*Fantasy, Inc. v. Fogerty*,
 94 F.3d 553, 560 (9th Cir. 1996) ......................................................................................... 6

*Fogerty v. Fantasy, Inc.*,
 510 U.S. 517, 534 (1994) ...................................................................................................... 7

*Frerck v. Pearson Education, Inc.*, N.D. Ill. Case No. 1:11-cv-05319) .......................... 21

*Gauchat-Hargis v. Forest River, Inc.*,
 2013 WL 4828594 (E.D. Cal. 2013) ................................................................................ 25

*Gelb v. Royal Globe Ins. Co.*,

iv

PLAINTIFF'S MEMO. P&As IN OPPOSITION TO PEARSON
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

CASE NO. 12-CV-01927-WHO

798 F.2d 38 (2d Cir. 1986) .................................................................................. 15

*Giddings v. Vision House Production*,
2009 Copr. L. Dec. P 29,778, 2009 WL 1674420  (D. Ariz. 2009) ............................. 5

*Hamil America, Inc. v. GFI*,
193 F.3d 92 (2d Cir. 1999) .................................................................................. 13

*Harris Custom Builders, Inc. v. Hoffmeyer*,
140 F.3d 728 (7th Cir. 1998) ............................................................................... 11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................................. 22

*Insurance Corp. of Ireland, Ltd. v. Companie des Bauxites de Guinee*,
456 U.S. 694 (1982) ............................................................................................... 4

*International Korwin Corp. v. Kowalczyk*,
855 F.2d 375 (7ᵗʰ Cir. 1988) .............................................................................. 18

*Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*,
281 F.R.D. 234 (E.D. Pa. 2012) .......................................................................... 20

*Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, No. 2:11-cv-5122-AB (E.D. Pa.) ........... 19

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
820 F.Supp.2d 569 (S.D.N.Y. 2011) ................................................................... 14

*Kesey, LLC v. Francis*,
2010 WL 4235857 (D. Or. 2010) ..................................................................... 8, 11

*King Records, Inc. v. Bennett*,
438 F.Supp.2d 812 (M.D. Tenn. 2006) ............................................................... 13

*L.A. Printex Industries, Inc. v. Aeropostale, Inc.*,
676 F.3d 841 (9th Cir. 2012) ............................................................................... 10

*Lang v. Morris*,
2011 WL 6055513 (N.D. Cal. 2011) ...................................................................... 5

*Langham Fabrics v. Samsung America*,
997 F.Supp. 479 (S.D.N.Y. 1998) ....................................................................... 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................................... 4

*Lummus Co. v. Commonwealth Oil Refining Co.*,
297 F.2d 80 (2d Cir. 1961) .................................................................................. 16

*Maljack Prod., Inc. v. GoodTimes Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996) ................................................................................... 5

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) ............................................................................................... 8

v

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

CASE NO. 12-CV-01927-WHO

*Mattel, Inc. v. Walking Mountain Productions,*
  353 F.3d 792 (9th Cir. 2003) ............................................................................. 8

*Matthew Bender & Co., Inc. v. West Pub. Co.,*
  240 F.3d 116 (2d Cir. 2001) ....................................................................... 11, 17

*Maxwood Music Limited v. Malakian,*
  722 F.Supp.2d 437 (S.D.N.Y. 2010) .............................................................. 14

*McCormick v. Amir Const. Inc.,*
  2008 WL 4534266  (C.D. Cal. 2008) ................................................................ 5

*MedImmune, LLC .v PDL Biopharma, Inc.,*
  2010 WL 1266770  (N.D. Cal. 2010) ............................................................... 22

*Modular Arts, Inc. v. Interlam Corp.,*
  2009 WL 151336(W.D. Wash. 2009) ................................................................ 7

*Morelli v. Tiffany & Co.,*
  186 F.Supp.2d 563 (E.D. Pa. 2002) ............................................................... 13

*New York v. Microsoft Corp.,*
  209 F.Supp.2d 132 (D.D.C. 2002) ................................................................... 4

*O'Boyle v. Jensen,*
  150 F.R.D. 519 (N.D. Ind. 2001) ................................................................... 22

*Pantone, Inc. v. A.I. Freeman, Inc.,*
  294 F.Supp. 545 (S.D.N.Y. 1968) .................................................................. 13

*Park B. Smith, Inc. v. CHF Industries Inc.,*
  811 F.Supp.2d 766 (S.D.N.Y. 2011) .............................................................. 14

*Perfect 10, Inc. v. Visa Intern. Service Ass'n,*
  2005 WL 2007932 (N.D. Cal. 2005) .............................................................. 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
  695 F.3d 946 (9th Cir. 2012), *cert. granted*, 134 S.Ct. 50 (2013). ................. 6

*Reed Elsevier, Inc. v. Muchnick,*
  559 U.S. 154 (2010) ................................................................................... 7, 16

*Righthaven LLC v. Hoehn,*
  716 F.3d 1166 (9th Cir. 2013) ...................................................................... 4, 5

*Sealy, Inc. v. Easy Living, Inc.,*
  743 F.2d 1378 (9th Cir. 1984) ....................................................................... 23

*Sebring Pottery Co. v. Steubenville Pottery Co.,*
  9 F.Supp. 383 (N.D. Ohio 1932) .................................................................... 13

*Seltzer v. Green Day, Inc.,*
  725 F.3d 1170 (9th Cir. 2013) ................................................................... 7, 11

*Silvers v. Sony Pictures Entertainment, Inc.,*
  402 F.3d 881 (9th Cir. 2005), *cert. denied*, 546 U.S. 827 (2005).................... 4

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) ................................................................................................. 4

*Thomas Wilson & Co. v. Irving J. Dorfman Co.,*
    433 F.2d 409 (2d Cir. 1970) ................................................................................ 13

*Tirona v. State Farm Mut. Auto. Ins. Co.,*
    821 F.Supp. 632 (D. Hawaii 1993) ..................................................................... 24

*Torres-Negrón v. J & N Records, LLC,*
    504 F.3d 151 (1st Cir. 2007) ........................................................................ 5, 6, 7

*U.S. v. Backer,*
    134 F.2d 533 (2d Cir. 1943) ................................................................................ 13

*Urantia Foundation v. Maaherra,*
    114 F.3d 955 (9th Cir. 1997). ............................................................................. 10

*Viesti Assocs., Inc. v. Pearson Educ., Inc.,*
    No. 11-cv-01687-PAB-DW (D.Colo. Dec. 2, 2013) (Doc. 192) .......................... 20

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) .......................................................................... 4, 5

*Williamson v. Pearson Educ., Inc.,*
    2001 WL 1262964 (S.D.N.Y. 2001) ...................................................................... 7

*World Triathalon Corp. v. Dunbar,*
    539 F.Supp.2d 1270 (D. Hawaii 2008) ............................................................... 25

*Wu v. Pearson Educ., Inc.,*
    2012 WL 6681701 (S.D.N.Y. 2012) .................................................................... 17

*Wu v. Pearson Educ., Inc.,*
    277 F.R.D. 255 (S.D.N.Y. 2011) ......................................................................... 17

*ZilYen, Inc. v. Rubber Mfrs. Ass'n,*
    __ F.Supp.2d __, 2013 Copr.L.Dec. P 30,467, 2013 WL 3964091 (D.D.C. 2013)...................... 8

**Constitutional Provisions**

United States Constitution, Article III § 2, cl. 1 ................................................... 4

**Statutes**

17 U.S.C. § 102(a) ................................................................................................ 10

17 U.S.C. § 408(b) .................................................................................................. 7

17 U.S.C. § 411(a) .................................................................................................. 7

17 U.S.C. § 501(b) .................................................................................................. 4

17 U.S.C. § 504(b) ..........................................................................................21

17 U.S.C. § 505 ..........................................................................................passim

**Rules**

Fed. R. Civ. Proc. 15(a) (2) ......................................................................21

Ninth Circuit Rule 36-3(b)..........................................................................5

**Treatises**

2 Nimmer on Copyright § 7.01[A] ...........................................................11

2 Nimmer on Copyright § 7.16[A][1]........................................................10

2 Nimmer on Copyright § 7.20 [B][1] .......................................................13

**Other Authorities**

Brief of *Amici Curiae* the Association of American Publishers & the Recording Industry Association of American in Support of Neither Party, 9th Cir. Case No. 11-16751 (Doc. 9-2)....4

Brief of *Amicus Curiae* Ralph Oman, Former Register of Copyright of the United States in Support of Petitioner, *Petrella v. Metro-Goldwyn-Mayer*, Supreme Court Case No. 12-1315 ..................9

Brief of the United States of America as *Amicus Curiae* in Support of Reversal, *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 9th Cir. Case No. 10-36010 [Doc. 10] ........................15

Brief of the United States of America as *Amicus Curiae* in Support of Reversal, *Bean v. Houghton Mifflin Harcourt Pub. Co.*, 9th Cir. Case No. 10-16771 [Doc. 14] .............................................15

Declaration of Marybeth Peters, Former Register of Copyrights, In Opposition to Defendants' Motion for Summary Judgment in Lieu of Answer, *Masterfile Corp. v. Chaga Int'l*, Central District of California Case No. 2:12-cv-00850-R-E, Doc. 18 ....................................................15

Plaintiff's Memo. P&As in Opposition to Pearson Education, Inc.'s Motion for Attorney fees, etc.

Case No. 12-cv-01927-WHO

1

# I.    INTRODUCTION

2        Pearson Education, Inc.'s ("Pearson") motion for attorney's fees, expert fees, and costs

3  should be denied for the following reasons.

4        First, the Court has found that Muench Photography, Inc. ("MPI") lacks standing to pursue

5  its copyright infringement claims.  MPI respectfully disagrees.  But if MPI lacks standing, this

6  Court has (1) no subject matter jurisdiction, and (2) no power to rule on Pearson's motion.

7        Second, Pearson is not a "prevailing party" in any event.  Rulings about standing and pre-

8  lawsuit copyright registration requirements do not create a prevailing party.

9        Third, even if Pearson were a prevailing party, in the Ninth Circuit the primary inquiry is

10  whether an award of fees would serve the Copyright Act's purposes.  It is not a purpose of the Act

11  to penalize a plaintiff for not predicting with certainty how a court might rule on novel or complex

12  ownership or registration issues. MPI had good reason to believe (as current and former

13  representatives of the Copyright Office believe) that the Corbis registrations support this

14  infringement action, and others like it.  MPI also had sound reason to believe that it is the owner of

15  copyright in the images in dispute.  But assuming that MPI is not the owner, that David and Marc

16  Muench are, and that summary judgment in favor or Pearson was required because of this

17  distinction, it was not objectively unreasonable for MPI to submit the Muenches' declarations with

18  the expectation that their knowledge of the facts would demonstrate the existence of triable issues.

19  Nor are the Act's purposes served by punishing a party in MPI's position with a ruinous award of

20  attorney fees, to be paid to Pearson, a company for which litigation expense and exposure are

21  insignificant costs of how it does business.

22        Fourth, Pearson did not take any depositions or conduct any ESI discovery in this case.   It

23  did not make any targeted inquiries about MPI's claim of ownership.  Instead, it pursued a strategy

24  of purported ignorance, and then first squarely raised the standing issue in its summary judgment

25  motion.  MPI was surprised when Pearson first made standing an issue so late in the case.

26        Section 505 of the Copyright Act is not intended as a prize for litigants who deploy such

27  litigation strategies.  Congress and the courts historically have been solicitous of the interests of

28

---

1

copyright owners, particularly owners of "small" claims,[1] who do not have a sophisticated in-house legal department and vast resources, like Pearson.  There is a long tradition of leniency toward copyright owners who in good faith may not have been aware of, or precise about, all the myriad technicalities of copyright law.  The purposes of the Act are best served by recognizing copyright, protecting the rights and remedies of its owner(s), and achieving a result that, at least, does not reward infringement.  It is not the purpose of the Act to make an infringement case into a procedural contest between litigants, with an award of fees at the end that destroys the loser.  MPI has suffered greatly from the dismissal of this case.  Further punishment is not warranted.

## II.   STATEMENT OF ISSUES TO BE DECIDED

A.   Does this Court's ruling that MPI lacks standing mean that the Court is without subject matter jurisdiction, and thus without power to rule on the present motion?

B.   Is Pearson a "prevailing party" under 17 U.S.C. § 505?

C.   Would an award of attorney fees be equitable or serve the purposes of the Act?

D.   Do the other pertinent factors weigh against an award of attorney fees to Pearson?

E.   Are Pearson's requested fees and costs reasonable?

## III.   BACKGROUND

MPI is a small company with four owners, all family members.  The images that David and Marc Muench created through decades of creative effort – including the images that are at issue in this action – are MPI's only significant assets.  An attorney fee award to Pearson – especially the $497,874.07 award that Pearson seeks – would destroy MPI, and force it into bankruptcy.[2]  Taken to its logical conclusion, Pearson's requested award of fees would allow Pearson (by making a creditor's claim in MPI's bankruptcy) to become the owner of the very images that are the subject of this lawsuit, and all other MPI images too.

Pearson is a wholly-owned subsidiary of Pearson plc, a London-based holding company;

---

[1] *See, e.g.,* www.copyright.gov/docs/smallslaims/ ("Congress has asked the Copyright Office to study the challenges of the current system for resolving small copyright claim disputes….")

[2] Declaration of David Muench ¶ 19; Declaration of Marc Muench ¶¶ 13-14, Ex. C and D (filed concurrently).

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

CASE NO. 12-CV-01927-WHO

Pearson plc operates its "North American Education" segment through Pearson.[3]  Pearson plc's 2012 Annual Report disclosed that North American Education had sales in 2012 of £2.658 billion (over **$4.2 billion**), and a total operating profit of £463 (about **$736 million**), and accounted for 90% of Pearson plc's profits.[4]  Pearson plc and its subsidiaries are unaffected by the costs of litigation (despite a recent $75 million settlement payment by Pearson's sister company, Penguin).[5]  Pearson plc's 2012 Annual Report states:

> "We and our subsidiaries are from time to time the subject of legal proceedings incidental to the nature of our and their operations.  These may include private litigation or arbitrations, governmental proceedings and investigations by regulatory bodies.  *We do not currently expect that the outcome of pending proceedings, investigation, either individually or in aggregate, will have a significant effect on our financial position or profitability nor have any such proceedings had such effect in the recent past.*"[6]

## IV.   ARGUMENT

### A.   Pearson is not a "prevailing party."

Only a "prevailing party" may seek an award of attorney fees under the Copyright Act.[7]

> **1.   If MPI has no standing, as this Court has found, this Court has no subject matter jurisdiction and no power to award fees; relatedly, a dismissal for lack of jurisdiction does not create a prevailing party.**

This Court determined that MPI does not own the copyrights at issue and thus lacks standing.  MPI respectfully disagrees, and has filed a notice of appeal.[8]  At this juncture, however, the Court's finding that MPI does not have standing means that the Court does not have subject matter jurisdiction.  The Court accordingly lacks the power to grant Pearson's motion.

Section 501(b) of the Copyright Act expressly states that only legal and beneficial owners

---

[3] *See* Pearson plc's 2012 Annual Report (Ex. 1 to Declaration of Alex Rice Kerr), p. 20; *see also* MPI's concurrently-filed Request for Judicial Notice.

[4] *Id.*, p. 30.  Pearson plc itself had £5.059 billion (over $8 billion) in sales, and £329 million (over $523 million) in profit.  *Id.*, Financial Statements, F-3.

[5] *See* May 22, 2013 Press Release (SEC Form 6-K) (Kerr Decl., Ex. 2.)

[6] Pearson plc's 2012 Annual Report, pp. 19-20 (emphasis added).

[7] 17 U.S.C. § 505; *Cadkin v. Loose*, 569 F.3d 1142, 1147 (9th Cir. 2009) ("District courts have discretion to award attorney's fees to prevailing parties under the Copyright Act, but that discretion is triggered only if the party in fact prevailed on the copyright claim.").

[8] Doc. 89.

of exclusive rights in works can sue for infringement thereof.[9] Thus, statutory standing in a copyright case is based upon copyright ownership.[10]

The statutory standing limitation of § 501(b) is consistent with the "case or controversy" requirements of Article III § 2, cl. 1, of the U.S. Constitution. The Ninth Circuit has explained:

> "There are three requirements for Article III standing – injury, causation, and redressability." "The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[11]

A person with no copyright ownership has no Article III standing to bring an infringement action because a non-owner cannot prove any "injury in fact."[12] In *Righthaven LLC v. Hoehn*,[13] the Ninth Circuit recently reiterated that when a copyright infringement plaintiff has no standing – because it is not an owner of copyright – the district court has no subject matter jurisdiction.[14] Notably, *Righthaven* so held in agreement with *amicus curiae* the Association of American Publishers – of which Pearson is a leading member.[15]

When subject matter jurisdiction is lacking, federal courts cannot adjudicate claims.[16]

---

[9] *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for … infringement").

[10] *See Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) ("a party that has no ownership interest has no standing to sue"), *cert. denied*, 546 U.S. 827 (2005).

[11] *Edwards v. First American Corp.*, 610 F.3d 514, 516-17 (9th Cir. 2010), *cert. dismissed*, 132 S.Ct. 2536 (2012) (citations omitted).

[12] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also New York v. Microsoft Corp.*, 209 F.Supp.2d 132, 149 (D.D.C. 2002) ("if either Article III standing or statutory standing is absent, the Court is without subject matter jurisdiction"), *citing Insurance Corp. of Ireland, Ltd. v. Companie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject matter jurisdiction … is an Article III as well as a statutory requirement….").

[13] 716 F.3d 1166 (9th Cir. 2013).

[14] *Id.* at 1172; *see also, Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) ("if Warren lacks standing to assert his federal copyright claims, the district court did not have subject matter jurisdiction").

[15] *Id.*; Brief of *Amici Curiae* the Association of American Publishers & the Recording Industry Association of American in Support of Neither Party, 9th Cir. Case No. 11-16751 (Doc. 9-2) (copy attached as Ex. 3 to Kerr Decl.); www.publishers.org/members/#P (listing "Pearson Education"); www.publishers.org/board (Pearson executive sits on board of directors).

[16] *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction

---

4

1    Specifically, a court without subject matter jurisdiction has no power to make an award of attorney

2    fees.[17]   Relatedly, "in the Ninth Circuit, dismissals for lack of subject matter jurisdiction *do not*

3    create prevailing parties."[18]   These principles alone defeat Pearson's motion.

4         The cases cited by Pearson do not support any different conclusion.[19]   Some courts in the

5    Ninth Circuit have awarded fees in a copyright case after finding that the plaintiff lacks standing.

6    But those cases did not consider the question of subject matter jurisdiction, much less hold that it

7    exists despite a plaintiff's lack of standing.[20]   On this question, *Righthaven* is controlling.

8         **2.    Under *Righthaven*, this Court had no power to grant summary**
          **judgment to Pearson on the alternative ground that the Corbis**
9         **registrations were not valid, but a ruling on this kind of "technical**
          **defense" does not create a "prevailing party" in any event.**
10

11   the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it
     ceases to exist, the only function remaining to the court is that of announcing the fact and
12   dismissing the cause."), *quoting Ex parte McCardle,* 74 U.S. 506 (1868).

13   [17] *See Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995) (a fee-shifting provision itself does not
     confer subject matter jurisdiction); *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 164-65
14   (1st Cir. 2007) (where judgment is based upon lack of subject matter jurisdiction over copyright
     claim, the defendant "has not prevailed on the merits … and is not entitled to a fee award");
15   *Giddings v. Vision House Production*, 2009 Copr. L. Dec. P 29,778, 2009 WL 1674420 * 1 (D.
     Ariz. 2009) ("because the underlying copyright infringement claim was dismissed for lack of
16   subject matter jurisdiction, this Court cannot rule on the merits of the attorneys' fees claim"),
     *citing McCormick v. Amir Const. Inc.*, 2008 WL 4534266 * 1 (C.D. Cal. 2008) ("The Court
17   dismissed the complaint based on lack of subject matter jurisdiction … [T]he Court also lacks
     the power to determine that [defendant] is the 'prevailing party' for purposes of section 505.").
18

19   [18] *Lang v. Morris*, 2011 WL 6055513 * 2 (N.D. Cal. 2011) (emphasis added), *citing Elwood v.*
     *Drescher*, 456 F.3d 943, 948 (9th Cir. 2006) ("Where a claim is dismissed for lack of subject
20   matter jurisdiction, the defendant is not a prevailing party…."); *McCormick*, 2008 WL 4534266 *
     1 ("when an action is dismissed for lack of subject matter jurisdiction, there is no 'prevailing
21   party' for purposes of section 505.")

22   [19] *Actuate Corp. v. Aon Corp.*, 2012 WL 3627595 (N.D. Cal. 2012), the single case that Pearson
     cites as ostensible support for its supposed "prevailing party" status (*see* Op. Br., p. 7), is readily
23   distinguishable.  The defendant in *Actuate* prevailed on a license defense.  There were no issues
     of the plaintiff's copyright ownership or standing.
24
     [20] *Maljack Prod., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996) was decided
25   years before *Warren* and *Righthaven*, and gave no consideration to subject matter jurisdiction.
     *Cadkin v. Bluestone*, 290 Fed.Appx. 58 (9th Cir. 2008) is unpublished, is not precedent in this
26   case (*see* Ninth Circuit Rule 36-3(b)), and its three-paragraph opinion did not address jurisdiction.
     *Contractual Obligation Productions, LLC v. AMC Networks, Inc.*, 546 F.Supp.2d 120 (S.D.N.Y.
27   2008) likewise did not consider the question of whether it had subject matter jurisdiction after
     finding that the plaintiff lacked standing to sue under the Copyright Act.
28

*Righthaven* held that the district court in that case had no power to grant summary judgment to the defendant on grounds of its fair use defense, because the district court had found that the plaintiff lacked standing, and this meant that there was no subject matter jurisdiction.[21]  The same analysis applies here.  Once this Court determined that MPI does not have standing, this Court lacked authority to grant Pearson summary judgment on the ground that the Corbis registrations are not valid.  That alternative ruling thus cannot support Pearson's request for attorney fees.

But Pearson is not a prevailing party with respect to the registration issue in any event.  In *Buckhannon*, the Supreme Court held that "a 'prevailing party' is one who has been awarded some relief by the court," specifically, some form of relief that creates a "material alteration of the legal relationship of the parties."[22]  The Court indicated that such relief could take the form of judgment on the merits or a court-ordered consent decree.[23]  The Ninth Circuit has held that "the material alteration test the Supreme Court articulated in *Buckhannon* governs the prevailing party inquiry under § 505 of the Copyright Act."[24]

The Ninth Circuit has also recognized that "copyright defendants do not always reach the merits, prevailing instead on technical defenses."[25]  A district court may properly deny a defendant's motion for attorney fees when summary judgment is not granted "based on a lack of evidence of infringement" but solely on the ground of a "technical defense" like laches.[26]

"Technical defenses" that do not support an award of fees include "copyright registration requirements."[27]  For example, in *Torres-Negrón v. J & N Records, LLC*,[28] the First Circuit held that the defendant was not a prevailing party under *Buckhannon* because the district court entered

---

[21] 716 F.3d at 1172-73.

[22] *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603 (2001).

[23] *Id.* at 600.

[24] *Cadkin v. Loose,* 569 F.3d 1142, 1149 (9th Cir. 2009).

[25] *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 560 (9th Cir. 1996).

[26] *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 957 (9th Cir. 2012), *cert. granted on other grounds*, 134 S.Ct. 50 (2013).

[27] *Fantasy,* 94 F.3d at 556.

[28] 504 F.3d 151 (1st Cir. 2007).

judgment "solely on the basis of Torres' failure to comply with a statutory formality" – *i.e.*, his failure to comply with the deposit copy requirement in 17 U.S.C. § 408(b) in support of his application for registration under 17 U.S.C. § 411(a).[29]   A ruling on this kind of "statutory formality" is not a ruling on "claims of infringement," and a defendant who successfully challenges a plaintiff's compliance with a registration formality thus "has not prevailed on the merits of the copyright infringement allegations and is not entitled to a fee award under the statute."[30]

After *Torres* was decided, the Supreme Court held in *Reed Elsevier, Inc. v. Muchnick* that the Copyright Act's registration requirement is a precondition to filing a copyright infringement claim that does not restrict a federal court's subject-matter jurisdiction.[31]   *Torres* is even more convincing after *Reed*: a ruling about a "precondition" to filing suit is not a dispositive ruling on the merits of a copyright infringement claim.   Thus, this Court's decision about the registrations did not materially alter the relationship between MPI and Pearson, and did not make Pearson a "prevailing party" under Section 505 of the Copyright Act.

**B.     Even if Pearson were a "prevailing party," the pertinent factors weigh against awarding Pearson attorney fees.**

Even when there is "prevailing party" for purposes of Section 505, an award of fees is never automatic.[32]   Instead, "attorney's fees are to be awarded to prevailing parties *only* as a matter of the court's discretion."[33]   Nor is it the law in the Ninth Circuit that prevailing defendants are entitled to any presumption in favor of awarding attorney fees, as Pearson suggests.[34]   Section 505

---

[29] *Id.* at 156, 164-65.

[30] *Id.* at 165 (affirming the district court's denial of attorney fees).

[31] 559 U.S. 154, 166 (2010).

[32] *See, e.g.*, *Williamson v. Pearson Educ., Inc.*, 2001 WL 1262964 * 11 (S.D.N.Y. 2001) (exercising discretion to deny Pearson's request for attorney fees despite summary judgment in its favor because the plaintiff's claims were "neither frivolous nor objectively unreasonable").

[33] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (emphasis added).

[34] *See* Op. Br., pp. 15-16, *citing DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625-26 (7th Cir. 2013).   In *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) the Ninth Circuit recently stated: "It is important to recall that the Supreme Court rejected the so-called British Rule where the loser pays; rather, attorneys fees are left up to the discretion of the district court." *Id.* at 1180, *citing Fogerty*, 510 U.S. at 522; *see also, Modular Arts, Inc. v. Interlam Corp.*, 2009 WL 151336 * 1(W.D. Wash. 2009) (declining to adopt the Seventh Circuit's presumption, and

---

7

1    explicitly leaves the matter of fees to the court's discretion, using the word "may" rather than

2    "shall" and not establishing any "presumption."[35]

3         In ruling on a motion for attorney fees under Section 505, the "pivotal criterion" is

4    "[f]aithfulness to the purposes of the Copyright Act."[36]  In addition, "courts deciding whether to

5    award attorneys fees can look to five non-exclusive factors: (1) the degree of success obtained; (2)

6    frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and

7    legal arguments; and (5) the need, in particular circumstances, to advance considerations of

8    compensation and deterrence."[37]  The Ninth Circuit also considers "whether the chilling effect of

9    attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff."[38]

10                    1.    **An award of fees to Pearson would not advance and instead would
                               defeat the purposes of the Copyright Act.**

11

12        "At its core, the Act seeks to promote the progress of science and art by protecting artistic

13   and scientific works while encouraging the development and evolution of new works."[39]  When

14   making a determination of whether an award of attorney fee would advance the purposes of the

15   Copyright Act, courts in the Ninth Circuit consider the parties' respective resources and the effect a

16   sizeable award would have on the losing party.[40]

17        As discussed above, MPI is a small company that would be forced into bankruptcy by an

18   award of fees to Pearson.  Pearson, by contrast, is a large company with vast resources and profits.

19
     denying fees to prevailing defendant)); *ZilYen, Inc. v. Rubber Mfrs. Ass'n*, __ F.Supp.2d __, 2013
20   Copr.L.Dec. P 30,467, 2013 WL 3964091 * 2 (D.D.C. 2013) (same).

21   [35] 17 U.S.C. § 505 ("the court may … award a reasonable attorney's fee"); *Fogerty*, 510 U.S. at
     533 ("The word 'may' clearly connotes discretion.  The automatic award of attorney fees to the
22   prevailing party would pretermit the exercise of that discretion."); *see also Martin v. Franklin
     Capital Corp.*, 546 U.S. 132, 137 (2005) (finding no "presumption in favor of awarding fees" in
23   fee-shifting statute in absence of "explicit statutory language"), *citing Fogerty*, 510 U.S. at 534.

24   [36] *Fantasy*, 94 F.3d at 558.

     [37] *Seltzer*, 725 F.3d at 1180-81.
25
     [38] *Ets-Hokin v. Skyy Spirits Inc.*, 323 F.3d 763, 766 (9th Cir. 2003), *citing Fantasy*, 94 F.3d 559-60.
26
     [39] *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 799 (9th Cir. 2003).

27   [40] *See Ets-Hokin*, 323 F.3d at 766; *Kesey, LLC v. Francis*, 2010 WL 4235857 * 11-12 (D. Or.
     2010); *see also Cabell v. Sony Pictures Entertainment, Inc.*, 2011 WL 92765 * 1-2 (S.D.N.Y.
28   2011) (considering relative wealth of parties in ruling on defendants' request for fees).

1   This huge disparity of resources between photographers and Pearson is not unique to this case.

2       "Photographers tend to be small business owners; most are sole proprietors earning $50,000
3       dollars or less each year…. Purloining of [graphic] works … has become routine.
        Infringers include, at times, large corporations with substantial resources, including legal
4       counsel well versed in the ins and out of civil litigation, as well as the substance of
        copyright law. On the other hand, the creators of such works tend to be sole proprietors
5       with limited financial resources and even less sophistication."[41]

6   "The copyright system was designed by Congress to ensure that copyright protection is

7   afforded to all rightsholders in an equal manner, regardless of size or economic power."[42]   An

8   award of attorney fees that is financially ruinous for MPI, in favor of an enormously profitable

9   entity like Pearson, for whom litigation is merely an "incidental" and "insignificant" cost of doing

10  business,[43] would be inconsistent with the level playing field that Congress intended to create.

11      Making an award to Pearson in this case would also deter other photographers –with valid

12  claims but limited resources – from bringing similar claims.  Such photographers already face

13  tremendous obstacles to obtaining relief for infringement.  Awarding attorney fees here would send

14  a message that any photographer who seeks relief against a large infringing publisher literally risks

15  financial ruin.

16              2.      **Muench's factual and legal arguments were objectively reasonable.**

17                  a.      **Relevant copyright law principles, and the tradition of leniency,
                            do not support an award of attorney fees against MPI.**

18      A determination about the objective reasonableness of MPI's claims in this case should be

19  informed by all pertinent copyright law principles.  The terms "copyright" and "copyright

20  registration" are too often used interchangeably and imprecisely.  In reality, a "copyright" is

21
    ────────────────────────
22  [41] *Proposal for Small Copyright Infringement Claims*, submitted by David Nimmer on behalf of the
        American Photographic Artists, in response to First Notice of Inquiry by the U.S. Copyright
23      Office (Jan. 17, 2012), p. 3 (*see* http://www.copyright.gov/docs/smallclaims/comments/
        05_american_photographic_artists.pdf.)

24  [42] Brief of *Amicus Curiae* Ralph Oman, Former Register of Copyright of the United States in
25      Support of Petitioner, *Petrella v. Metro-Goldwyn-Mayer*, Supreme Court Case No. 12-1315, p. 3
        (Ex. 4 to Kerr Decl.).

26  [43] *See* Pearson's Annual Report, pp. 19-20; *Alexander v. Chesapeake, Potomac, and Tidewater
27      Books, Inc.*, 60 F.Supp.2d 544, 551 (E.D. Va. 1999) ("Defense of reasonable legal claims, under
        the so-called 'American rule,' is in most instances a cost of business."), *aff'd*, 2 Fed.Appx. 298
28      (4th Cir. 2001).

9

different from a "copyright registration" in both function and importance.   An author owns a copyright as soon as he or she fixes original expression in a tangible medium.[44]   Copyright *ownership* does *not* depend upon registration; the Act explicitly states that "registration is not a condition of copyright protection."[45]   Registration instead confers certain procedural benefits to a copyright owner.[46]   Notably, the provisions about registration appear in Chapter 4 of Title 17, regarding copyright *formalities*.[47]

Given registration's limited purposes, courts regularly excuse mistakes in an application for copyright registration.[48]   Indeed, the Ninth Circuit has said:

> "The case law is overwhelming that inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."   "[The] cases generally do not require perfection, but instead based their analysis on principles of fair and non-formalistic administration of the copyright laws."[49]

Further, the overall trend in the copyright law, particularly following the accession of the United States to the Berne Convention on March 1, 1989, has been to lift or liberalize statutory formalities:

> "Now that the Berne era has dawned, it is to be hoped that courts will construe the myriad formalities of U.S. copyright law leniently.   An approach whereby copyrights are preserved and rights to enforce remain, notwithstanding an antecedent failure to comply with the 'punctilio of an honor the most sensitive' to copyright formalities, would help harmonize U.S. copyright laws with those of the rest of the Berne Union.   Therefore, particularly in resolving issues of first impression as to the formalities required under the 1976 and 1909

---

[44] 17 U.S.C. § 102(a) ("Copyright protection subsists … in original works of authorship fixed in any tangible medium of expression…."); *see also* 2 Nimmer on Copyright § 7.16[A][1] ("copyright automatically inheres in a work the moment it is 'created'").

[45] 17 U.S.C. § 408(a).

[46] *See Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 538-39 (4th Cir. 2007) ("once fixation of an original work has taken place, the author has a copyright in the work, and registration with the Copyright Office serves only supporting roles.  For instance, it provides evidence of a copyright … and it is required as a condition to bringing suit….").

[47] 17 U.S.C. §§ 401 *et seq.*; *see also Blue Fish Clothing, Inc. v. Kat Prints*, 1991 WL 71113, * 3 (E.D. Pa 1991) ("registration is a mere technicality"; "liberal application" of regulations "is appropriate given that copyright registration is generally considered a technical formality"); 2 Nimmer on Copyright § 7.01 n. 2 ("Both registration and notice are 'formalities.'").

[48] *See, e.g., L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 853-54 (9th Cir. 2012) (error in registration "in itself does not invalidate the registration or render the certificate of registration incapable of supporting an infringement action"; supplementary registration valid).

[49] *Urantia Foundation v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997).

10

Acts, the courts should refrain from overtechnical constructions."[50]

"Registration … used to be a significantly more onerous formality than it is today.  Prior to the Copyright Act of 1909, failure to register one's copyright with the relevant authority before publication meant a complete loss of rights.  Under the 1909 Act, however, registration was downgraded to a mere prerequisite to filing an infringement suit, largely due to … dissatisfaction … with a system that punished non-compliance with 'trifling obligations' by the loss of substantial rights.  The permissive system of registration established under the 1909 Act persists today…."[51]

### b.  Losing on summary judgment does not establish objective unreasonability.

"The mere fact that a party loses a copyright claim at the summary judgment stage does not equate to finding that the parties' claims or arguments were necessarily without merit."[52]  "As the Supreme Court has cautioned, 'it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'"[53]

### c.  MPI's positions in this case were objectively reasonable.

When a plaintiff's pursuit of its claim is objectively reasonable, an award of fees has been reversed by the Ninth Circuit as an abuse of discretion.[54]  Other courts agree that "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act."[55]

This Court granted summary judgment to Pearson "on the alternative grounds of standing and the invalidity of the copyright registrations," and denied the Muenches' request to ratify, join

---

[50] 2 Nimmer on Copyright § 7.01[A].

[51] Brief of *Amicus Curiae* Ralph Oman, *supra*, p. 19.

[52] *Kesey*, 2010 WL 4235857, * 8; *see also Seltzer*, 725 F.3d at 1181 (loss on summary judgment does not establish objective unreasonability), *citing Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 730 (7th Cir. 1998) ("How the court ruled, simply put, is not a proper concern [in determining the availability of § 505 fees].");  *Langham Fabrics v. Samsung America*, 997 F.Supp. 479, 480 (S.D.N.Y. 1998) (denying motion for attorney fees after finding on summary judgment that plaintiff did not own copyright as a work for hire).

[53] *Id.*, *quoting Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421-22 (1978).

[54] *Seltzer*, 725 F.3d at 1181.

[55] *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 121-22 (2d Cir. 2001).

---

11

1    or be substituted into this action.[56]  The Court did *not,* however, make any finding that Pearson is

2    *not* an infringer.  MPI's assertion of ownership and standing, its reliance on the Corbis copyright

3    registrations, and its well-founded belief that Pearson is a repeat infringer of copyright, were all

4    objectively reasonable for reasons discussed below.

5         **Ownership and standing:**  David and Marc Muench – the photographers who created the

6    images – are two of MPI's four shareholders.  David and Marc served consecutively as MPI's

7    President.[57]  Although Pearson has made an issue of whether the Muenches or MPI own the

8    copyrights at issue, under the circumstances of this case there is no question that (1) the Muenches

9    created the photographs, (2) protectable copyrights came into existence as soon as the photographs

10   were fixed in a tangible medium of expression, (3) copyrights in the photographs subsist even if the

11   copyright was not registered, and (4) either the Muenches or MPI own the copyrights.

12        In opposition to Pearson's summary judgment motion, the Muenches attested that they

13   created the images at issue within the scope of their employment as MPI employees.  The objective

14   reasonableness of that belief is confirmed by a June 1, 2001 written agreement between MPI and

15   David Muench, in which he confirmed that he created works prior to November 1, 2000 "as an

16   employee" of MPI.[58]  MPI's ownership of the copyrights at issue is also confirmed by David's

17   written assignment of copyright to MPI.[59]  David also entered into a Deferred Compensation

18   Agreement with MPI, which recites that he was a long-time employee of the company, and he

19   received W2 forms as an MPI employee.[60]  In addition, when the Muenches signed their

20   agreements with Corbis, they provided MPI's corporate tax ID number, not their individual social

21   security numbers.[61]  This is conduct consistent with MPI's ownership, and supports the objective

22   [56] Order Granting Pearson's Motion for Summary Judgment (Doc. 77), p. 24.

23   [57] David Muench Decl., ¶ 2.

24   [58] *See* David Muench Decl., ¶ 13, Ex. B (June 1, 2001 Assignment and License Agreement by and
          between Muench Photography, Inc. and David J. Muench), ¶ 2.1.  About 95% of the images at
25        issue in this case were created by David Muench.  David Muench Decl. ¶ 8.

26   [59] *See* David Muench Decl., ¶ 13, Ex. B (June 1, 2001 Assignment, ¶¶ 2.1 and 2.2 (assigning any
          rights owned by David Muench to MPI).

27   [60] David Muench Decl., ¶¶ 12, 16, Ex. A and C.

28   [61] David Muench Decl., ¶ 14; Marc Muench Decl., ¶ 7.

1    reasonableness of MPI's belief that it owns the copyright in the images.

2          The Court granted Pearson's motion for summary judgment in part because the Court

3    faulted MPI for not sooner producing evidence to corroborate the Muenches' declarations.  This

4    came about in part because Pearson did not squarely raise any issue about MPI's standing until it

5    filed its motion for summary judgment, and MPI as a result had little time to respond.[62]  And if the

6    Muenches – as small business owners and non-lawyers – were not punctilious or clear at times

7    about whether they or MPI owned the copyright in the images that the Muenches created, that is

8    not evidence of objective unreasonableness.  Cases are legion in which courts have excused

9    technical errors of this kind in order to avoid forfeiture and preserve valuable rights.[63]

10   [62] Kerr Decl. ¶¶ 6-9.

11   [63] *See, e.g.*, *Hamil America, Inc. v. GFI,* 193 F.3d 92, 98 (2d Cir. 1999) (rejecting challenge to
         ownership, and approving supplemental registrations that "clarified the ownership of the
12       copyright in light of relationships between the relevant companies"); *Thomas Wilson & Co. v.
         Irving J. Dorfman Co.*, 433 F.2d 409, 412 (2d Cir. 1970) (rejecting argument that applications for
13       copyright registration were deficient because the president of plaintiff corporation instead of the
         corporation was named as the author); *U.S. v. Backer*, 134 F.2d 533, 535 (2d Cir. 1943) (the Act
14       "grants valuable rights to persons who create subject matter which is copyrightable and …
         useless technicalities are not to be allowed to cut down the benefits conferred"); *Campbell v.
15       Wireback*, 269 F. 372, 374-75 (4th Cir. 1920) (rejecting objections about misstatements of
         identity of author and owner of copyright in application for registration as "extremely technical");
16       *CJ Products LLC v. BTC Enterprises LLC*, 2012 WL 1999829 * 2-3 (S.D.N.Y. 2012) (rejecting
         technical challenges to ownership where plaintiff LLC and predecessor sole proprietorship were
17       closely related); *King Records, Inc. v. Bennett*, 438 F.Supp.2d 812, 838-40 (M.D. Tenn. 2006)
         (excusing multiple mistakes in application for registration regarding identity of corporate
18       copyright claimant); *Morelli v. Tiffany & Co.*, 186 F.Supp.2d 563, 566 (E.D. Pa. 2002) (excusing
         errors in registration application where creator of works was for all practical purposes "one and
19       the same" with his wholly-owned corporation); *Bourne Co. v. Walt Disney Company*, 1992 WL
         489766 * 1-2 (S.D.N.Y. 1992) (rejecting objections to improper identification of copyright owner
20       in renewals as dissolved corporation where that corporation and successor owner were wholly
         owned by the same person); *Dealer Advertising Development, Inc. v. Barbara Allan Financial
21       Advertising, Inc.*, 1979 WL 1079 * 16 (W.D. Mich. 1979) (rejecting challenge to ownership even
         assuming that plaintiff corporation erred in identifying itself in copyright registration); *Pantone,
22       Inc. v. A.I. Freeman, Inc.*, 294 F.Supp. 545, 551 (S.D.N.Y. 1968) (error in name of "copyright
         claimant" did "not afford a basis for defeating an otherwise valid copyright"); *Sebring Pottery
23       Co. v. Steubenville Pottery Co.*, 9 F.Supp. 383, 383 (N.D. Ohio 1932) (error in naming author and
         date of publication in application for registration did not invalidate the copyright); *see also*, 2
24       Nimmer on Copyright § 7.20 [B][1] ("courts generally have been most lenient … with respect to
         any innocent error contained in an application for registration certificate"; "[t]o illustrate the
25       courts' liberal approach … cases have forgiven even serious mistakes … such as an erroneous
         statement as to the identity of the author, or of the copyright claimant …").

26

27

28

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON          CASE NO. 12-CV-01927-WHO
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

1    Given the leniency that Congress and the courts have long shown when "technical" errors

2    have been made by copyright claimants, it was objectively reasonable for MPI to believe that the

3    Court would, in ruling on Pearson's summary judgment motion, consider the Muenches' sworn

4    declarations regarding MPI's ownership or, if the Court were to find that MPI did not own the

5    copyrights, allow the Muenches to pursue the case.[64]  After all, if MPI does not own the copyrights,

6    the Muenches undeniably do, and the Muenches' support for this action is beyond dispute.[65]  There

7    also was nothing inherently improper about MPI making a "strategic move" to articulate theories of

8    ownership that might succeed, and save a case from dismissal.[66]  At no time did MPI deliberately

9    or knowingly mislead or deceive Pearson or the Court as to the standing issue.

10    **Registration issues:**  Pearson argues that MPI's reliance on the Corbis registrations in this

11    case was "improper" because in MPI's still-pending litigation against Houghton Mifflin Harcourt

12    Publishing Co. in the Southern District of New York, Judge Preska made interlocutory rulings that

13    those registrations are not valid.  MPI's reliance on the Corbis registrations in this case was

14    objectively reasonable, and Pearson's arguments to the contrary fail, for the following reasons.

15    The validity of the compilation registrations in question presents a "novel question," as this

16    Court stated itself, agreeing with Judge Preska.[67]  "The question remains a 'novel' one because

17    there is no controlling authority for the Court to follow."[68]  Courts have denied requests for

18

---

19    [64] *See Christopher & Banks Corp. v. Dillard's, Inc.*, 805 F.Supp.2d 693, 696-98 (S.D. Iowa 2011)

20    (allowing substitution of plaintiff with standing in copyright case, and denying defendants' request for attorney fees against plaintiffs that were dismissed for lack of standing); *see also Park*

21    *B. Smith, Inc. v. CHF Industries Inc.*, 811 F.Supp.2d 766, 774 (S.D.N.Y. 2011) ("Substitution under Rule 17(a)(3) 'should be liberally allowed when the change is merely formal and in no way

22    alters the original complaint's factual allegations as to the events or the participants.'" "[A]llowing substitution 'is the wiser answer to the problem of expediting trials and avoiding

23    unnecessary delay and expense.'"  (citations omitted).

24    [65] *See* Doc. 75 (Muenches' request for leave to ratify, join or substitute into this action).

25    [66] *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F.Supp.2d 569, 574 (S.D.N.Y. 2011) (plaintiff's "varied attempts at articulating a successful theory of copyrightability" was not a basis for an award of attorney fees); *Maxwood Music Limited v. Malakian*, 722 F.Supp.2d 437, 439-40

26    (S.D.N.Y. 2010) (rejecting request for fees because of "shifting testimony" about authorship).

27    [67] Order Granting Pearson's MSJ (Doc. 77), 16-17.

28    [68] *Id.* at 17 (collecting cases that acknowledge split of authority).

---

14

1    attorney fees, like Pearson's, when a losing party "sought to explore the boundaries of a relatively

2    green area of copyright law and did so without traversing the bounds of reasonableness."[69]   A

3    party's good faith decision to litigate complex or undecided issues of law is not objectively

4    unreasonable.[70]

5          As this Court also observed, "[t]he question of whether compilation registrations must list

6    the names of individual authors for the underlying works to also be copyrighted" is currently

7    pending before the Ninth Circuit in two similar cases against Houghton Mifflin.[71]   The United

8    States, as *amicus curiae*, has taken a position in both of those appeals that strongly supports MPI.[72]

9    The former Register of Copyrights, Marybeth Peters, has also stated her view that the three

10   photographer cases against Houghton Mifflin discussed above interpreted Sections 409 and 411 of

11   the Copyright incorrectly, and the cases were thus wrongly decided.[73]   Although this Court has

12   interpreted the Act differently than the Copyright Office, it is reasonable for MPI to share the

13   views of the former Register of Copyrights, the Solicitor General of the United States in Ninth

14   Circuit *amicus* briefs, and the Copyright Office itself.

15         In addition, although this Court has concluded that Judge Preska's orders are sufficiently

16   "final" for collateral estoppel purposes, it was objectively reasonable for MPI to contend

17   otherwise.[74]   Indeed, MPI has filed motions that ask Judge Preska to certify her orders regarding

---

18   [69] *DC Comics v. Pacific Pictures Corp.*, 2013 WL 1389960 * 4 (C.D. Cal. 2013).

19   [70] *Bourne Co. v. Walt Disney Co.*, 1994 WL 263482 * 2 (S.D.N.Y. 1994); *Perfect 10, Inc. v. Visa

20   Intern. Service Ass'n*, 2005 WL 2007932 * 4 (N.D. Cal. 2005) ("Granting attorneys' fees is
     disfavored when a plaintiff pursues an action in good faith in an unsettled area of law ….").

21   [71] Order Granting Pearson's MSJ (Doc. 77), p. 19.

22   [72] Brief of the United States of America as *Amicus Curiae* in Support of Reversal, *Alaska Stock,
     LLC v. Houghton Mifflin Harcourt Pub. Co.*, 9th Cir. Case No. 10-36010 [Doc. 10] (attached to

23   Kerr Decl. as Exhibit 7), p. 29; Brief of the United States of America as *Amicus Curiae* in
     Support of Reversal, *Bean v. Houghton Mifflin Harcourt Pub. Co.*, 9th Cir. Case No. 10-16771

24   [Doc. 14] (attached to Kerr Decl. as Exhibit 8), p. 26-27.

25   [73] Declaration of Marybeth Peters, Former Register of Copyrights, In Opposition to Defendants'
     Motion for Summary Judgment in Lieu of Answer, *Masterfile Corp. v. Chaga Int'l*, Central

26   District of California Case No. 2:12-cv-00850-R-E, Doc. 18, ¶ 26 (attached as Ex. 9 to Kerr
     Decl.).

27   [74] In the Second Circuit, conclusiveness is denied to a district court order that is not appealable.

28   *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) ("inability to obtain appellate

---

15

1   registration issues for interlocutory appeal to the Second Circuit precisely because her orders are

2   not "final" and are not otherwise appealable.[75]

3          Finally, it is beyond the pale for Pearson to argue that MPI's "failure to meet the

4   jurisdictional prerequisite of registering its copyrights prior to filing suit … rendered its Copyright

5   Act claims objectively unreasonable."[76]  First, Pearson's argument is contrary to law: the Supreme

6   Court has held that copyright registration is *not* "jurisdictional."[77]  Second, Pearson's citation of an

7   unpublished 2006 Ninth Circuit case as supposed precedent violates the Ninth Circuit's Rules.[78]

8          **Pearson is a copyright infringer:**  As noted above, this Court never made any finding that

9   Pearson is not an infringer of copyright in the images at issue.  Pearson suggests that it was

10  improper for MPI to assert infringement claims against Pearson on information and belief.  The

11  argument fails for at least two reasons.  First, Pearson alone had possession of data showing the

12  extent of its uses of MPI's images.  Second, Pearson in fact infringed MPI's images.[79]  It was not

13  unreasonable for MPI to seek relief for actual infringements on the scale involved here.

14         The objective reasonableness of MPI's claims against Pearson is also supported by the

15  success that other similarly-situated photographers have had in copyright infringement lawsuits

16  against Pearson.  The plaintiff photographers in *Bean v. Pearson Education, Inc.*, for example,

17  were granted partial summary judgment "on the issue of Pearson's liability for copyright

18  infringement."[80]  Indeed, one respected jurist (Hon. Richard J. Holwell, Jr.), in a lengthy opinion,

19  certified a class action where the plaintiff alleged that Pearson engaged in copyright infringement

20

21  review … does prevent preclusion"); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d
    80, 90 (2d Cir. 1961).

22  [75] Declaration of Maurice Harmon, ¶ 18, Ex. I, J and K.

23  [76] Opening Brief, 12:20-24.

24  [77] *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

25  [78] *See* Opening Brief, p. 12, *citing Invision Media Servs., Inc. v. Glen J. Lerner*, 175 F.App'x 904
    (9th Cir. 2006); Ninth Circuit Rule 36-3 (unpublished Ninth Circuit orders "issued before January
26  1, 2007 may not be cited to the courts of this circuit" except in circumstances not present here).

27  [79] Kerr Decl. ¶¶10-13, Ex. 5.

    [80] __ F.Supp.2d __, 108 U.S.P.Q.2d 1531, 2013 WL 2564106 * 11 (D. Ariz. 2013) (also denying
28  Pearson's cross-motion for summary judgment on plaintiffs' fraud claims).

"in a widespread manner," and "potentially thousands of photographers were affected."[81]  When a defendant's way of doing business invites litigation, equity does not support an award of attorney fees to that defendant.[82]

### 3. None of MPI's claims or arguments was "frivolous," and MPI did not engage in improper litigation tactics, as Pearson contends.

Pearson makes no argument that any of MPI's claims or arguments was frivolous, and thus impliedly concedes that they were not.  Pearson instead advances a number of disingenuous arguments that MPI engaged in "improper litigation tactics."

Contrary to what Pearson suggests, "[l]itigants are given broad latitude to advocate their positions, so long as they comport with Rule 11."[83]  The Second Circuit reversed an award of fees that "essentially punish[ed] [a party] "for availing itself of a right" provided by the Federal Rules.[84]  But Pearson has failed to show that MPI engaged in any "improper tactics" in any event.

• Pearson complains that it was "bullied" into filing an Answer instead of motions to dismiss, with a purported threat of Rule 11 sanctions.  Not true.  Pearson is part of a multi-billion dollar, global conglomerate with resources that are a sun to MPI's candle.  It is represented by a Philadelphia-based law firm with 25 offices and over 1300 lawyers.  Pearson's claim of being bullied by a tiny plaintiff represented by a small law firm is farcical.  And MPI's counsel does not recall any threat that MPI would move for Rule 11 sanctions.  MPI's counsel instead pointed out that Pearson had already lost about 10 similar pleading-stage motions to dismiss in other cases, declined to extend time for another such motion here, and indicated that repeatedly filing the same losing motion based upon virtually the same pleadings at some point might violate Rule 11.[85]  In any event, Pearson was free to seek an extension of time to respond to the Complaint without MPI's agreement if it truly believed one was warranted.

---

[81] *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 261 (S.D.N.Y. 2011); *but see Wu v. Pearson Educ., Inc.*, 2012 WL 6681701 (S.D.N.Y. 2012) (Judge Forrest's order decertifying class).

[82] *See Blanch v. Koons*, 485 F.Supp.2d 516, 518 (S.D.N.Y. 2007).

[83] *DC Comics v. Pacific Pictures Corp.*, 2013 WL 1389960 * 4 (C.D. Cal. 2013)

[84] *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 126 (2d Cir. 2001).

[85] Declaration of Maurice Harmon ¶¶ 8-17, Ex. E, F, G and H.

1    • Pearson complains, improperly using emotion-laden terms, that MPI sought to "exploit" a

2    claim for statutory damages to "extort" a settlement from Pearson.[86]   Again, for reasons discussed

3    above, Pearson should stop playing victim.   Notably, no "extortionate" demand by MPI is

4    identified.   Moreover, it is not objectively unreasonable for a plaintiff to seek all available

5    remedies, including statutory damages under Section 504(c) of the Act, in an appropriate case.[87]

6    As discussed above, MPI reasonably believes that the Corbis registrations support the infringement

7    claims in this case, and thus support a claim for statutory damages because the registrations were

8    issued prior to Pearson's infringements.   As for the "leverage" that Pearson's exposure to statutory

9    damages might create for settlement, it exists independently of anything MPI did:   Congress in its

10   wisdom included statutory damages in the Act, for sound public policy reasons.   The Act is

11   designed to deter infringement even when actual damages are difficult or impossible to prove.[88]

12        • Pearson complains that MPI did not provide Corbis registrations numbers in its Complaint

13   in this case, and this "forced Pearson to precede [sic] with costly discovery."[89]   Pearson is

14   mistaken.   MPI did not withhold Corbis registration numbers and prevent Pearson from bringing a

15   Rule 12 motion, as Pearson falsely claims, and Pearson did not incur any expense in "discovering"

16   the registration numbers.   Instead, MPI voluntarily provided Pearson the registration numbers in

17   very early in the case, soon after initial disclosures.[90]   Pearson could have brought a Rule 12(c)

18   motion at that time.

19        • Pearson asserts that if MPI had "conducted an adequate pre-suit investigation, it would

20   have learned that the terms of the master licensing agreements between Corbis and Pearson granted

---

[86] Opening Brief 15:26-28.

[87] *See Baisden v. I'm Ready Productions, Inc.*, 804 F.Supp.2d 549, 555 (S.D. Tex. 2011) (rejecting argument that losing party's settlement posture supported award of attorneys fees), *aff'd*, 693 F.3d 491 (5th Cir. 2012), *cert. denied*, 133 S.Ct. 1585 (2013).

[88] *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988) ("[C]ourts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws.   Rather, defendants 'must be put on notice that it costs less to obey the copyright laws than to violate them.'"   (citation omitted)).

[89] Opening Brief, 3:12-13.

[90] Kerr Decl. ¶¶ 15-16.

1   Pearson broad permission to use images obtained from Corbis and then notify Corbis after the fact

2   so that Corbis could bill Pearson according to a set pricing schedule."[91]   This argument fails for

3   many reasons.   First, Pearson is assuming the merit of its argument, which has never been

4   adjudicated.   Second, Pearson also assumes Corbis's cooperation with MPI.   The proceedings

5   regarding MPI's third-party subpoena to Corbis (which Pearson also complains about) show

6   otherwise.   Third, there is no evidence that Corbis told MPI that Corbis had an agreement with

7   Pearson that would preclude any copyright infringement claims in this case.   To the contrary,

8   Corbis assigned to MPI the right to bring claims for "Alleged Infringement" which Corbis defined

9   as, among other things, "excess in the Distribution Quantity … License Duration and Number of

10  Uses."[92]

11      •   Pearson argues that it was inappropriate for MPI to challenge Pearson's confidentiality

12  designations for certain documents produced in discovery.[93]   Pearson cites *Alaska Stock, LLC v.*

13  *Pearson Educ. Inc*., which stated that MPI's counsel used "aggressive litigation tactics" and

14  "suggest[ed] that they may have an improper motive for seeking the information."[94]

15      First, what may have appeared to the *Alaska Stock* court to be "aggressive litigation tactics"

16  was in fact counsel's justifiable reaction to another district judge's disagreement with Pearson's

17  confidentiality assertions.   In the parallel case of *Jon Feingersh Photography, Inc. v. Pearson*

18  *Educ., Inc.*,[95] the plaintiff initially proposed a narrow stipulated protective order (because Pearson

19  refused to produce any documents without entry of a protective order).   Then, Judge Anita Brody

20  in the Eastern District of Pennsylvania expressed disagreement with Pearson's contentions

21  regarding the confidentiality of many categories of information during a settlement conference on

22  January 11, 2012.   Judge Brody also stated that she thought the case was appropriate for "open

23  discovery."   Plaintiff's counsel thereafter withdrew its proposed protective orders in that case and

24  _____

25  [91] Opening Brief, p. 13.

    [92] Marc Muench Decl. ¶ 12, Ex. B.

26  [93] Doc. 81, p. 13.

27  [94] *See* Doc. 81-6 (No. 11-cv-00162 (D. Alaska June 11, 2012), Doc. No. 72), p. 10.

    [95] No. 2:11-cv-5122-AB, E.D. Pa.

28

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON          CASE NO. 12-CV-01927-WHO
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

1    in the *Alaska Stock* case, in order to litigate whether Pearson should be permitted to keep the

2    evidence of its infringements secret.[96]

3            Second, the situation in *Alaska Stock* was quite different than here.  In *Alaska Stock,* the

4    plaintiff initially proposed, and then withdrew, a stipulated protective order.[97]   The District of

5    Alaska found Alaska Stock's counsel had been "increasingly aggressive" with regard to protective

6    orders, "initially agreeing to stipulated protective orders, then objecting to protective orders to the

7    extent they covered print quantity information," and ultimately "completely objecting to any

8    protective orders."[98]

9            Here, to the contrary, MPI stipulated to a Protective Order.[99]   After Pearson produced

10   documents in discovery labeled "Confidential," including documents found not confidential by

11   another court in this District,[100] MPI complied with the procedure in the Protective Order, and

12   challenged those designations.  This Court disagreed with MPI's challenges, but other district

13   courts declined to keep the same information secret in parallel cases against Pearson.[101]

14           Thus, MPI's challenge to the secrecy of Pearson's print quantity and distribution

15   information in this case, while unsuccessful, was not improper.  And Pearson has never adduced

16   any evidence, in this or any other case, that MPI, Harmon & Seidman, or any of its clients have

17   improperly disclosed any of Pearson's print quantity and distribution information.

18           • MPI is not to blame for Pearson's decision to produce almost 50,000 pages of documents.

19   MPI repeatedly informed Pearson that MPI did not need or want the voluminous and duplicative

20

21   [96] Harmon Decl., ¶¶ 2-4.

22   [97] *Id.*, ¶¶ 5-6.

23   [98] Doc. 81-6, p. 4.

24   [99] *See* Doc. 31.

     [100] *Clifton v. Pearson Educ., Inc.*, 2012 WL 1669362 *2 (N.D. Cal. May 11, 2012).

25   [101] *See Clifton, supra* (holding that Pearson failed to make particularized showing of how
     disclosure of print run information would cause harm); *Jon Feingersh Photography, Inc. v.
26   Pearson Educ., Inc.*, 281 F.R.D. 234, 237 (E.D. Pa. 2012) ("public interest in disclosure of
     this information outweighs Pearson's interest in keeping it confidential."); *Viesti Assocs., Inc. v.
27   Pearson Educ., Inc.,* No. 11-cv-01687-PAB-DW (D.Colo. Dec. 2, 2013) (Doc. 192) (Harmon
     Decl., ¶ 7, Ex. C), and No. 12-cv-01431-PAB-DW (D. Colo.. Dec. 2, 2013) (Doc. 144) Harmon
28   Decl., Ex. D) (denying Pearson's motions to restrict documents containing print quantity and
     distribution information).

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON          CASE NO. 12-CV-01927-WHO
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

"printer docs" that made up 20,000 pages of Pearson's production.  In addition, 14,000 pages of Pearson's production are deposition transcripts from parallel infringement cases against Pearson, re-produced because Pearson would not agree to their cross-case use.[102]

• Pearson misrepresents the circumstances when it suggests that it was an "improper tactic" for MPI to submit supplemental disclosures regarding its damages claims, and subsequently withdraw a very small fraction of its claims.   For one image (out of 274) that was not registered until after Pearson's infringement began, MPI provided calculations of actual damages pursuant to 17 U.S.C. § 504(b) before the close of fact discovery.[103]   For 99+ percent of the case (relating to 273 images), MPI was proceeding on a statutory damages theory for which it did not need damages calculations or expert testimony.   When Pearson requested a deposition regarding MPI's actual damages (to take place after the close of discovery), MPI elected to withdraw its claims regarding the one image.[104]   A reasonable decision to withdraw viable but economically unfeasible claims should not be a basis for an attorney's fee award.[105]

• It was not objectively unreasonable or an "improper tactic" for MPI to file a motion for leave to amend, when it did.  It is true that this Court denied MPI's motion, but many judges would have granted it; generally, leave to amend is liberally granted.[106]   Indeed, a very similar motion brought by the same attorneys who represent MPI in this case was recently granted in *Frerck v. Pearson Education, Inc.*[107]

• It was not objectively unreasonable for MPI to serve a third-party subpoena on Corbis, when it did.  As Pearson's own authority acknowledged, courts are split on the question of whether

---

[102] Kerr Decl. ¶¶ 23-24.

[103] Kerr Decl. ¶ 17.

[104] Kerr Decl. ¶ 18.

[105] *Checkpoint Systems, Inc. v. Hangzhou Century Co., Ltd.*, 2012 WL 2159257 * 6 (N.D. Ohio 2012 ) ("there is nothing in the history of the Copyright Act, or the supporting case law, that would suggest that the Act was meant to penalize a party for seeking to streamline its case").

[106] FED. CIV. PROC. 15(a) (2) ("The court should freely give leave when justice so requires.").

[107] Kerr Decl., Ex. 10 (Oct. 30, 2013 Order (Doc. 96), *Frerck v. Pearson Education, Inc.*, N.D. Ill. Case No. 1:11-cv-05319).

1  third-party subpoenas are subject to the cutoff for discovery between parties.[108]  Although this

2  Court quashed the Corbis subpoena, other courts have ruled differently.[109]

3         **4.**       **MPI was motivated only by a desire to remedy Pearson's infringements;
4              Pearson's arguments about improper motivation are meritless.**

5       Pearson has been sued many, many times for engaging in the kind of conduct that is the

6  subject of this action.[110]  And, as noted above, Pearson's liability has been summarily adjudicated

7  in at least one case.  MPI was motivated to bring this lawsuit by a desire to obtain the relief and

8  remedies that the Act provides for Pearson's infringement of copyright.[111]

9         **5.**       **There is no need in this case to compensate Pearson or deter MPI or
10              similarly situated plaintiffs from any "misconduct."**

11       Pearson argues that it should be awarded fees because its assertion of ownership and

12  registration defenses furthered "the basic tenants [sic] of the Copyright Act."[112]  The argument fails

13  because, as explained above, this is manifestly *not* a case in which there is a need to compensate a

14  highly profitable company for its litigation expenses.

15       Nor is this a case in which there is any need to deter "misconduct."  For reasons explained

16  above, MPI did not engage in any "misconduct," and the fee award that Pearson seeks is out of

17  proportion to anything that Pearson contends was improper.

18       **C.**     **Pearson has not shown that its requested attorney fees are reasonable.**

19       Any award of attorney's fees must be "reasonable."[113]  In this regard, Pearson has the

20  burden of proof.[114]  The Supreme Court has explained:

21            "Cases may be overstaffed, and the skill and experience of lawyers vary widely.
22           Counsel for the prevailing party should make a good faith effort to exclude from a fee
         request hours that are excessive, redundant, or otherwise, just as a lawyer in private practice

---

[108] *MedImmune, LLC .v PDL Biopharma, Inc.*, 2010 WL 1266770 * 1 (N.D. Cal. 2010).

[109] *See O'Boyle v. Jensen*, 150 F.R.D. 519, 520 (N.D. Ind. 2001).

[110] *See* Kerr Decl., ¶ 14 (listing more than 30 cases).

[111] David Muench Decl. ¶ 19; Marc Muench Decl. ¶ 14.

[112] Opening Brief, 15:11.

[113] 17 U.S.C. § 505.

[114] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the fee applicant bears the burden of
establishing entitlement to an award").

ethically is obligated to exclude such hours form his fee submission…. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."[115]

A moving party must make a "showing that the time actually spent was reasonably necessary."[116]

Pearson purports to address this critical element of necessity solely with counsel's *ipse dixit*.[117]

> **1.   Pearson has not carried its burden of proof; it has not allocated fees as between standing and registration issues, or with respect to any supposedly "improper tactics."**

As explained above in Section IV.A, Pearson is not a "prevailing party" with respect to either standing or registration issues. But if the Court were to find that Pearson is a prevailing party as to one but not the other, Pearson's failure to allocate fees prevents determination of an amount of fees to award. In addition, even when bad faith conduct is shown (none has been shown here), any fees awarded "should be related to costs or expenses incurred as a *direct result*."[118] Pearson has not allocated any fees it incurred to any particular purportedly improper litigation tactic. Fairness dictates that Pearson may not attempt to correct these deficiencies in its Reply.

> **2.   Pearson seeks fees for unreasonable and unnecessary time spent and double billing.**

"The number of hours compensated should exclude hours that were not reasonably expended on the litigation, or that are 'excessive, redundant, or otherwise unnecessary.'"[119] The attorney fees that Pearson seeks include many such examples, as discussed below.[120]

• Pearson claims that "MPI requested extensive documentation" regarding its infringement claims, and "Pearson ultimately produced nearly 50,000 pages of documents."[121] This is

---

[115] *Id.* at 434 (original emphases).

[116] *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984).

[117] *See* Declaration of David W. Marston, Jr. (Doc. 93), ¶ 32; Declaration of Richard Dannay (Doc. 94), ¶ 9.

[118] *Id.* at 126 (emphasis added).

[119] *B & H Mfg. Co., Inc. v. Lyn E. Bright*, 2006 WL 547975 * 6 (E.D. Cal. 2006). The Ninth Circuit has held that it is "important for the district court to provide an adequate explanation of the reasons for its award and the manner in which that award was determined." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir. 1986).

[120] *See also* Kerr Decl. ¶ 19(a) – (f), ¶¶ 23-24.

[121] Opening Brief, p. 3.

---

1    misleading.  The truth is that the lion's share of Pearson's production was unnecessary.[122]  These

2    costs were self-imposed and avoidable and are not properly recoverable.[123]

3         • Pearson was charged nearly $60,000 in attorney's fees to litigate the confidentiality of its

4    print quantities and distributions.  But before this case, the same issue was thoroughly briefed by

5    Pearson in many other cases; Pearson's counsel merely duplicated those efforts here.[124]

6         • Similarly, Pearson recycled expert reports that were previously prepared for it in other

7    cases, for use here.[125]  Pearson may not properly recover in this case for work its experts did in

8    other cases.   Pearson's request for its expert's fees is also improper because those fees are

9    manifestly excessive, and not adequately supported by detailed time records.[126]

10        • There was obvious overstaffing, and much unnecessary duplication of effort.  Pearson

11   asks the Court to order MPI to pay for the work of *sixteen* (16) Morgan Lewis & Bockius LLP

12   ("MLB") lawyers, and an addition *eleven* (11) technology managers, analysts and paralegals.[127]

13   Pearson has not even tried to justify this obvious padding.  MLB also touts its expertise and

14   experience in copyright infringement cases,[128] but at the same time Pearson asks for a duplicative

15   award of fees to yet another law firm, in the amount of $18,495.[129]   No explanation is offered.

16        • Eight MLB attorneys charged $17,786.48 in connection with Pearson's Answer to MPI's

17   Complaint.  MPI's claims in this case are similar to those in many other lawsuits, and Pearson's

18   Answer asserted affirmative defenses that are nearly identical to those previously alleged by

19   Pearson in parallel cases.[130]

20

21   [122] *See* Kerr Decl. ¶¶ 23-24.

22   [123] *Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F.Supp. 632, 637 (D. Hawaii 1993).

23   [124] *See* Kerr Decl. ¶ 19(a).

     [125] *See* Kerr Decl. ¶ 19(f), Ex. 6.

24   [126] *See* Doc. 81-3, ¶ 9; Doc. 93-12.

25   [127] Marston Decl., Doc. 93, ¶¶ 16-17.  *See Berry v. Hawaii Exp. Service, Inc.*, 2007 WL 689474 *
          17 (D. Hawaii 2007) (deducting time for tasks that were clerical in nature).

26   [128] Opening Brief, p. 17.

27   [129] Kerr Decl., ¶ 19(e).

     [130] Kerr Decl., ¶ 19(b).

28

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON              CASE NO. 12-CV-01927-WHO
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.

1    • MPI asked Pearson to produce a single, relevant document – a business training

2   PowerPoint presentation describing the textbook market.  Six different MLB lawyers entered 30

3   different billing entries, totaling 61.2 hours, about this document, and Pearson was billed

4   $21,285.45 in fees, even though there was no motion practice about it, and Pearson produced it.[131]

5    • The overstaffing led to an excessive number of attorney conferences.[132]   It is not

6   appropriate for Pearson to use this case to train its associates, and seek to shift the cost to MPI.[133]

7            **3.    Block billing and redactions.**

8         Block billing is a legitimate ground for reducing an award of fees,[134] and there is block

9   billing on most pages of Pearson's invoices.[135]  Excessive redactions similarly make it impossible

10  to know whether the fees sought were reasonable at all.[136]

11  **V.    CONCLUSION**

12        For the reasons stated above, the purposes of the Copyright Act would not be furthered by

13  an award of attorney fees against MPI.  The Court should deny Pearson's motion.

14  DATED:  January 13, 2014

15                               Respectfully submitted,

16                               HARMON & SEIDMAN LLC
                                 CHRISTOPHER SEIDMAN
17                               ROBERT W. CROCKETT

18                               */s/ Christopher Seidman*
                                 Christopher Seidman
19                               Attorneys for Plaintiff Muench Photography, Inc.

20

21  [131] Kerr Decl. ¶ 19(c).

22  [132] For example, five lawyers, including four associates, worked on responses to MPI's written
     discovery.  Doc. 93-8, pp. 27-29 of 106.  Five lawyers billed over $6,800 regarding MPI's Rule
23   17(a)(3) request, even though no response to that request was filed.  Doc. 93-9, pp. 88-91.

     [133] *Gauchat-Hargis v. Forest River, Inc.,* 2013 WL 4828594 * 3-4 (E.D. Cal. 2013).
24
     [134] *Gauchat*, 2013 WL 4828594 * 6-7.
25
     [135] *See,* for example, Doc. 93-9, pp. 4-13, 18-27, 32-50, 55-69, 74-78, and 87-93.
26
     [136] *World Triathalon Corp. v. Dunbar*, 539 F.Supp.2d 1270, 1285 (D. Hawaii 2008).  Redactions
27   on the following pages of the invoices make it impossible to know whether what Pearson's
     lawyers were billing for was reasonable, or even related to this case: Doc. 93-8, pp. 55-58, 63-68,
28   75, 78, 79, 80-82, 87, 91, 95, 97-104; Doc. 93-9, pp. 4-5, 9, 12, 18-25, 36-50, and 68-69.

1

## CERTIFICATE OF SERVICE

2       I am a resident of the State of California, over the age of 18 years, and not a party to the
3   above-entitled action.  My business address is 33 Spindrift Passage, Corte Madera, California
    94925.

4       I hereby certify that on January 13, 2014 I caused the foregoing PLAINTIFF MUENCH
5   PHOTOGRAPHY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
    OPPOSITION TO DEFENDANT PEARSON EDUCATION, INC.'S MOTION FOR
6   ATTORNEYS' FEES, EXPERT FEES, AND COSTS to be filed via the CM/ECF system, which
    will serve a Notice of Electronic Filing to all counsel of record, including the following:

7

8   David W. Marston Jr.                           Amy M. Dudash
    Andrew C. Whitney                              Morgan, Lewis & Bockius LLP
9   Morgan, Lewis & Bockius LLP                    The Nemours Building
    1701 Market Street                             1007 N. Orange Street, Suite 501
10  Philadelphia, Pennsylvania 19103               Wilmington, Delaware 19801
    Tel:  (215) 963-5000                           Tel:  (302) 574-3000
11  Fax:  (215) 963-5001                           Fax:  (302) 574-3001
    E-mail:  dmarston@morganlewis.com              E-mail:  adudash@morganlewis.com
12          kschweitzer@morganlewis.com

13  Sharon R. Smith
14  Andrew M. Purdy
    Morgan, Lewis & Bockius LLP
15  One Market Street, Spear Street Tower
    San Francisco, California 94105-1126
16  Tel:  (415) 442-1000
    Fax:  (415) 442-1001
17  E-mail:  srsmith@morganlewis.com
18          apurdy@morganlewis.com

19
        I declare under penalty of perjury under the laws of the United States of America that I am
20  a member of the bar of this Court and that the foregoing is true and correct.

21      Executed on January 13, 2014 at Corte Madera, California.

22                              s/ Robert W. Crockett

23                              Robert W. Crockett (SBN 79918)
24                              Harmon & Seidman LLC
                                33 Spindrift Passage
25                              Corte Madera, California 94925
                                Tel:  (415) 945-1830
26                              E-mail:  robert@harmonseidman.com

27

28

PLAINTIFF'S MEMO. P&AS IN OPPOSITION TO PEARSON          CASE NO. 12-CV-01927-WHO
EDUCATION, INC.'S MOTION FOR ATTORNEY FEES, ETC.