PAGES 1 – 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

MUENCH PHOTOGRAPHY, INC.,           )
                                    )
            PLAINTIFF,              )
                                    )
  VS.                               ) NO. C 12-1927 WHO
                                    )
PEARSON EDUCATION, INC.,            )
                                    )  SAN FRANCISCO, CALIFORNIA
            DEFENDANT.              )
                                    )  NOVEMBER 6, 2013
_____)  1:57 O'CLOCK P.M.

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC**

**SOUND RECORDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          **HARMON & SEIDMAN, LLC**
                        33 SPINDRIFT PASSAGE
                        CORTE MADERA, CALIFORNIA 94**925**
                    **BY: ROBERT WILLIAM CROCKETT, ESQUIRE**

**FOR DEFENDANT:**          **MORGAN, LEWIS & BOCKIUS, LLP**
                        **1701 MARKET STREET**
                        PHILADELPHIA, PA 191903
                    **BY: DAVID W. MARSTON, JR., ESQUIRE**

TRANSCRIBED BY:  KATHERINE WYATT, OFFICIAL REPORTER USDC

                WYATTKATHY994@GMAIL.COM

                925-212-5224

NOVEMBER 6, 2013                              1:57 O'CLOCK  P.M.


                     P R O C E E D I N G S

     THE COURT:  GOOD AFTERNOON.  PLEASE BE SEATED.

     THE CLERK:  CALLING CIVIL MATTER 12-1927, MUENCH,

INCORPORATED VERSUS PEARSON, INCORPORATED.

     COUNSEL, PLEASE COME FORWARD, AND STATE YOUR APPEARANCES.

     MR. MARSTON:  GOOD AFTERNOON, YOUR HONOR.  DAVID MARSTON

OF MORGAN, LEWIS & BOCKIUS FOR THE DEFENDANT PEARSON EDUCATION,

INC.

     THE COURT:  MR. MARSTON.

     MR. DOSSAS:  GOOD AFTERNOON, YOUR HONOR.  ROBERT CROCKETT

OF HARMON AND SEIDMAN FOR THE PLAINTIFF, MUENCH PHOTOGRAPHY,

INC.

     THE COURT:  GOOD AFTERNOON, MR. CROCKETT.

     SO WE HAVE TWO MATTERS THAT ARE ON TODAY.  AND I DO WANT

TO DO THE MOTION FOR SUMMARY JUDGMENT FIRST, THEN WE'LL DO THE

MOTION TO DISMISS.

     AND WHAT I WANT TO DO IS GO THROUGH MY UNDERSTANDING OF

THE FACTS, FIRST ON STANDING, AND THEN WE'LL GO TO THE

INFRINGEMENT CLAIM.

     AND I THINK, MR. CROCKETT, I'M GOING TO PUT MY FIRST

QUESTIONS TO YOU ON THIS.

     SO WITH RESPECT TO THE STANDING ARGUMENT, MY UNDERSTANDING

OF THE FACTS THAT IS THE PHOTOS WERE TAKEN BY DAVID AND MARC

1    MUENCH.

2         DID I PRONOUNCE THAT CORRECTLY?

3         MR. CROCKETT:  NO, YOUR HONOR.  IT'S MUENCH, AS IF THERE

4    WERE A Y IN IT.

5         THE COURT:  OKAY, MUENCH.  AND THAT THEY, AND NOT MPI,

6    MADE THE AGREEMENTS WITH CORBIS; THAT THERE WAS NO WRITTEN

7    TRANSFER FROM THEM TO MPI; THAT THERE WAS NO EVIDENCE OF MPI

8    OWNERSHIP BESIDES THEIR DECLARATIONS.

9         AND THEN, WITH RESPECT TO THE WORK-FOR-HIRE CLAIM, THERE

10   WAS NO STATEMENT ON THE REGISTRATION THAT THIS WAS THE

11   WORK-FOR-HIRE SUPPLEMENTAL REGISTRATION.  SHOWED THEM SIGNING

12   AS INDIVIDUALS.

13        THE INVOICES WENT TO THE INDIVIDUALS FROM CORBIS, AND THAT

14   THERE WERE PAST DECLARATIONS IN WHICH THE MUENCHES CONTRADICT

15   WHAT THEY SAID ON THIS POINT.

16        SO THOSE ARE THE FACTS.  THAT'S WHAT I UNDERSTAND THE

17   FACTUAL SITUATION TO BE.  AND IF THAT WAS THE FACTUAL

18   SITUATION, IT WOULD SEEM LIKE THEY DIDN'T HAVE STANDING.

19        SO IF YOU COULD ADDRESS THOSE, THAT WOULD BE HELPFUL.

20        MR. MARSTON:  YES, YOUR HONOR.  THE DECLARATIONS FROM MARC

21   AND DAVID MUENCH ESTABLISH THAT WHEN THEY CREATED THESE

22   PHOTOGRAPHS THEY WERE EMPLOYEES OF MUENCH PHOTOGRAPHY, INC.

23        NOW, PEARSON CONTENDS THAT THE COURT SHOULD CONCLUDE THAT

24   THERE'S NO GENUINE DISPUTE AS TO ANY MATERIAL FACT ON THE

25   STANDING ISSUE BECAUSE, ONE: MUENCH PHOTOGRAPHY DIDN'T PRODUCE

1    ANY WRITTEN EMPLOYMENT CONTRACTS, PAYSTUBS OR TAX RETURNS IN

2    DISCOVERY.

3       TWO: CORBIS REGISTERED THE COPYRIGHTS IN MARC MUENCH'S AND

4    DAVID MUNCH'S NAMES RATHER THAN IN THE NAMES OF MUENCH

5    PHOTOGRAPHY.

6       AND, THREE, MARC AND DAVID MUENCH REFERRED ANOTHER

7    LITIGATION TO, QUOTE, "MY COPYRIGHTS," CLOSE QUOTE.

8       NOW, WITH RESPECT TO THE FIRST POINT ABOUT THE DOCUMENT

9    PRODUCTIONS, FIRST I'D LIKE TO NOTE THAT PEARSON NEVER

10    SPECIFICALLY REQUESTED PRODUCTION OF ANY WRITTEN EMPLOYMENT

11    CONTRACTS, PAYSTUBS OR TAX RETURNS.  AND MUENCH PHOTOGRAPHY HAS

12    ALWAYS BEEN A FAMILY-OWNED CORPORATION SPECIFICALLY CREATED TO

13    MARKET THE PHOTOGRAPHS OF DAVID MUENCH AND LATER MARC MUENCH.

14       IT OBSERVED VERY FEW FORMALITIES.  AND THE MUENCHES NEVER

15    INTENDED TO RELY ON WHATEVER RECORDS IT MAY HAVE PRESERVED FROM

16    20 SOME YEARS AGO TO ESTABLISH THAT THEY CREATED THE

17    PHOTOGRAPHS WHEN THEY WERE EMPLOYEES OF THE CORPORATION.

18       THEY'RE, MARC AND DAVID MUENCH, ARE BOTH AVAILABLE TO

19    TESTIFY TO THAT, AND THEY HAVE DONE SO THROUGH THEIR

20    DECLARATIONS.

21       NOW, PEARSON CHOSE NOT TO TAKE THE DEPOSITIONS OF MARC

22    MUENCH OR DAVID MUENCH TO EXPLORE THIS ISSUE.  THEY RELY ON THE

23    SHAM DECLARATIONS DOCTRINE.  BUT THOSE CASES INVOLVE A

24    SITUATION WHERE A PARTY TESTIFIES TO SOMETHING IN A DEPOSITION,

25    AND THEN LATER ON SUBMITS A DECLARATION THAT'S DIFFERENT.

1      THAT'S NOT THE CASE HERE.  PEARSON, FOR TACTICAL REASONS,

2   CHOSE NOT TO TAKE THEIR DEPOSITIONS WITH RESPECT TO THIS ISSUE

3   OF STANDING TO SUE.  RATHER, PEARSON CHOSE TO LIE IN THE WEEDS

4   HOPING TO TAKE ADVANTAGE OF A CLAIMED DEFICIENCY IN THE

5   DOCUMENT PRODUCTIONS.

6      THE COURT:  YES.  BUT AREN'T THE DECLARATIONS INCONSISTENT

7   BETWEEN THE PRIOR CASE AND THIS CASE?

8      MR. CROCKETT:  NO, YOUR HONOR.  WELL, TECHNICALLY THEY

9   COULD BE CONSTRUED THAT WAY.  BUT YOU NEED TO REMEMBER THAT

10  MARC AND DAVID MUENCH ARE PHOTOGRAPHERS.  THEY ARE NOT LAWYERS.

11     AND THEY REFER TO THESE PHOTOGRAPHERS AS "THEIRS" WITHOUT

12  EVERY TIME NOTING THAT TECHNICALLY THEY ARE OWNED BY THE FAMILY

13  CORPORATION.

14     NOW, AS PEARSON KNEW WHEN IT FILED ITS REPLY PAPERS, WHEN

15  DAVID MUENCH WAS REPRESENTED BY COUNSEL IN CONNECTION WITH HIS

16  DIVORCE IN 2001, HE EXECUTED AN ASSIGNMENT AND LICENSE

17  AGREEMENT WITH MUENCH PHOTOGRAPHY IN WHICH HE ACKNOWLEDGED THAT

18  HE HAD CREATED THE PHOTOGRAPHS AS AN EMPLOYEE OF MUENCH

19  PHOTOGRAPHY, AND THAT MUENCH PHOTOGRAPHY OWNED THE COPYRIGHT.

20     NOW, WE DIDN'T CITE THAT IN OUR OPPOSITION BECAUSE WE

21  DIDN'T PRODUCE IT BEFORE THE DISCOVERY CUTOFF.  BUT WHEN WE GOT

22  PERSON'S MOTION FOR SUMMARY JUDGMENT, AND REALIZED THAT THEY

23  WERE CLAIMING THAT THERE WAS NO STANDING, THEN WE PRODUCED IT

24  TO THEM.

25     I HAVE IT HERE, IF YOUR HONOR WOULD LIKE TO SEE IT.  I

1  HAVE A COUPLE OF COPIES OF IT FOR COUNSEL.  BUT IT'S A FORMAL

2  DOCUMENT THAT WAS PREPARED IN CONNECTION WITH DAVID MUENCH'S

3  DIVORCE.

4     AND IT SAYS IN SECTION 2.1:

5        "CONFIRMATION OF COMPANY'S OWNERSHIP OF OLD WORKS.

6     DAVID HEREBY, A, CONFIRMS THAT HE PRODUCED THE OLD WORKS

7     AS AN EMPLOYEE OF THE COMPANY, AND THAT THE COMPANY IS THE

8     SOLE AND EXCLUSIVE OWNER OF ALL RIGHT, TITLE AND INTEREST

9     IN AND TO THE OLD WORKS, INCLUDING ALL COPYRIGHTS

10    THEREIN."

11    SO PEARSON KNEW BEFORE THEY FILED THEIR REPLY BRIEF IN

12  THIS CASE, THAT, IN FACT, THESE PHOTOGRAPHS WERE CREATED AS

13  WORKS FOR HIRE, AND THAT THEY HAVEN'T REALLY PRESENTED ANY

14  EVIDENCE TO DISPUTE THAT EXCEPT THESE DECLARATIONS FROM THE

15  EARLIER CASE IN WHICH MARC AND DAVID MUENCH LOOSELY REFERRED TO

16  THEM AS "MY COPYRIGHTS."

17    THE COURT:  WHAT ABOUT THEIR FAILURE TO SAY IN THE

18  SUPPLEMENTAL REGISTRATION THEIR STATEMENT THAT THEY WERE

19  INDIVIDUAL OWNERS SINCE THEY DIDN'T SAY IT WAS FOR MPI, AND

20  THEIR FAILURE TO SAY ANYTHING ON THE REGISTRATION?

21    MR. CROCKETT:  THOSE WERE ALL DONE BY CORBIS.  AND CORBIS

22  CLEARLY OVERLOOKED THE FACT THAT THESE WERE ACTUALLY OWNED BY

23  THE FAMILY CORPORATION.  OTHERWISE, CORBIS WOULD HAVE OBTAINED

24  OR THE AGENCY AGREEMENT BETWEEN CORBIS OR WITH CORBIS WOULD

25  HAVE BEEN WITH MUENCH PHOTOGRAPHY, INC., RATHER THAN WITH DAVID

1    AND MARC, AS INDIVIDUALS.

2         TECHNICALLY, CORBIS DIDN'T HAVE ANY RIGHTS BASED ON THE

3    ASSIGNMENTS FROM DAVID AND MARC AS INDIVIDUALS BECAUSE THEY

4    DIDN'T REALLY OWN THE COPYRIGHT.  THEY WERE WORKS FOR HIRE.

5    THEY WERE OWNED BY THE COMPANY.

6         AND CORBIS, OBVIOUSLY, OVERLOOKED THAT.  AND THE PEOPLE AT

7    CORBIS WHO WERE DEALING WITH THIS PRESUMABLY WERE NOT LAWYERS,

8    EITHER.

9         AND THEY JUST LOOSELY ASSUMED THAT THESE PHOTOGRAPHS,

10   BECAUSE THEY WERE TAKEN BY DAVID MUENCH AND MARC MUENCH, THAT

11   THEY WERE OWNED BY DAVID MUENCH AND MARC MUENCH.  AND ON THAT

12   BASIS THEY REGISTERED THEM.

13        BUT THEN REGISTRATIONS ARE TECHNICALLY INCORRECT.  AND

14   THAT'S A SEPARATE ISSUE THAT WE DISCUSS FURTHER DOWN.  AND I

15   CAN ADDRESS THAT.  BUT THAT DOESN'T -- IN ORDER FOR PEARSON TO

16   PREVAIL ON SUMMARY JUDGMENT, THEY HAVE TO SHOW THAT THERE'S NO

17   GENUINE DISPUTE OF MATERIAL FACT.  AND THAT THE COURT HAS TO

18   CONCLUDE THAT THESE WERE NOT WORKS FOR HIRE.

19        AND I SUBMIT THAT IT'S REALLY CLEAR THAT THEY WERE WORKS

20   FOR HIRE.  IT'S JUST THAT THAT LEGAL NICETY, IF YOU WILL, WAS

21   OVERLOOKED BY THESE LAYMEN WHEN THEY REFERRED TO THEM AS "MY

22   COPYRIGHTS," AND BY CORBIS WHEN THEY OBTAINED THE AGENCY

23   AGREEMENT AND REGISTERED THE PHOTOGRAPHS.

24        BUT THERE'S NO REAL DISPUTE ABOUT THE FACT THAT THESE GUYS

25   WERE EMPLOYEES OF THE FAMILY CORPORATION WHEN THEY CREATED

1    THESE PHOTOGRAPHS.

2        PEARSON COULD HAVE EXPLORED ALL OF THIS THROUGH TAKING

3    THESE PEOPLES' DEPOSITIONS, BUT THEY CHOSE NOT TO DO SO, AND

4    NOW THEY ARE TRYING TO GET SUMMARY JUDGMENT ON A TECHNICAL

5    GROUND.

6        BUT THE FACT IS, YOUR HONOR, THAT THESE WERE WORKS FOR

7    HIRE.  THERE'S NO REAL DISPUTE ABOUT THAT BASED ON THEIR

8    DECLARATIONS.  AND, THEREFORE, THE COPYRIGHTS ARE OWNED BY

9    MUENCH PHOTOGRAPHY, INC.

10       IT'S -- WHEN PEARSON CHOSE NOT TO TAKE THEIR DECLARATIONS

11   THEY DID SO KNOWING WHEN YOU CHOOSE NOT TO TAKE

12   THE -- DEPOSITIONS, I'M SORRY, YOUR HONOR.  WHEN YOU CHOOSE NOT

13   TO TAKE THE DEPOSITION OF A KEY WITNESS, YOU'RE RUNNING THE

14   RISK THAT WHEN YOU MOVE FOR SUMMARY JUDGMENT THE OPPOSING PARTY

15   WILL SUBMIT A DECLARATION OF THAT WITNESS, AND YOU WILL HAVE

16   WAIVED YOUR RIGHT TO CROSS-EXAMINE THE WITNESS.

17       THE COURT:  WELL, YES.  THAT'S TRUE.  BUT IT'S ALSO TRUE

18   THAT IF THEY HAD SAID SOMETHING THAT WAS COMPLETELY

19   INCONSISTENT, THEY ARE ABLE TO CHALLENGE THAT, AS WELL.

20       LET ME ASK --

21       MR. CROCKETT:  THAT DOESN'T COMPEL THAT CONCLUSION,

22   THOUGH.  THEY WOULD HAVE A DISPUTE OF FACTS, ARGUABLY.  BUT IN

23   ORDER TO PREVAIL ON SUMMARY JUDGMENT, THEY HAVE TO SHOW THAT

24   THE COURT IS COMPELLED TO CONCLUDE THAT THESE DECLARATIONS ARE

25   FALSE AND THAT THESE GUYS WERE NOT EMPLOYED BY THE COMPANY WHEN

1    THEY CREATED THESE PHOTOGRAPHS.

2         AND I DON'T THINK THE COURT CAN DO THAT ON THIS RECORD.

3         THE COURT:  LET ME ASK YOU ONE MORE QUESTION:  HAS THIS

4    STANDING ISSUE BEEN RAISED WITH THE -- BETWEEN THE MUENCHES AND

5    PEARSON BEFORE OR THE MUENCHES IN ANY OTHER LITIGATION?

6         MR. CROCKETT:  NOT BETWEEN MUENCH AND PEARSON.  I'M NOT

7    AWARE.  I HAVEN'T WORKED ON THOSE OTHER CASES.  THERE'S A CASE

8    AGAINST HOUGHTON, MIFFLIN THAT IS RELEVANT TO ANOTHER PART OF

9    THIS ARGUMENT.

10        BUT I'M NOT AWARE THAT STANDING WAS EVER LITIGATED IN THAT

11   CASE, YOUR HONOR.

12        THE COURT:  LET ME HEAR FROM MR. MARSTON ON THE STANDING

13   ISSUE.

14        MR. DOSSAS:  THANK YOU, YOUR HONOR. FIRST, WITH RESPECT TO

15   THE POINT ABOUT THE DEPOSITIONS, CERTAINLY WE MADE STRATEGIC

16   DECISION IN THE CASE NOT TO TAKE A DEPOSITION.  THIS IS AN

17   ISSUE ON WHICH THE PLAINTIFF HAS THE BURDEN OF PROOF.

18        AND IN OUR REVIEW OF THE RECORD IN THIS CASE, AND THE

19   RECORD FROM THE OTHER CASES THAT WE WERE AWARE OF WHERE THE

20   MUENCHES HAD BEEN PLAINTIFFS THROUGH, I, GUESS, MPI.  I'LL REFER

21   TO MUENCH PHOTOGRAPHY, INC. AS "MPI" SIMPLY TO DISTINGUISH

22   BETWEEN THE MUENCHES, DAVID AND MARC MUENCH.

23        BUT IN THOSE OTHER CASES WE HAD REVIEWED THE DOCKETS.  AND

24   WE'VE REVIEWED THE DECLARATIONS THAT THEY SUBMITTED IN THE

25   OTHER CASES.  AND, IN ADDITION, HAD REVIEWED THE ARGUMENTS THAT

1    THE SAME COUNSEL REPRESENTING THEM HERE TODAY MADE IN THOSE

2    OTHER CASES.

3        AND BASED UPON THE FACT THAT THEY TESTIFIED UNDER OATH IN

4    THEIR DECLARATIONS IN THE OTHER CASES THAT THEY INDIVIDUALLY

5    WERE THE OWNERS OF THE PHOTOGRAPHS THAT THEY TOOK AND THE

6    ASSOCIATED COPYRIGHTS, AND BASED ON THE ARGUMENTS THAT THEIR

7    COUNSEL MADE IN THOSE OTHER ACTIONS -- AND I WANT TO BE CLEAR

8    BOTH MPI AND ITS ATTORNEYS MADE THOSE REPRESENTATIONS IN THOSE

9    OTHER CASES FOR A VERY SPECIFIC REASON.

10       THE COPYRIGHTS HERE FOR ALL THE PHOTOGRAPHS AT ISSUE ARE

11   COMPILATION REGISTRATIONS FOR SIX OF THEM, AND THEN THERE'S A

12   SEVENTH THAT ISN'T A TRUE COMPILATION.

13       BUT ALL SEVEN REGISTRATIONS, THEY WERE ALL REGISTERED BY A

14   THIRD PARTY:  CORBIS, CORBIS CORPORATION.  AND THEY DID THAT

15   PURSUANT TO AGENCY AGREEMENTS THAT CORBIS ENTERED INTO NOT WITH

16   MPI, BUT WITH INDIVIDUALS DAVID AND MARC.

17       AND THAT AGENCY AGREEMENT TO WAS SUPPOSED TO GIVE CORBIS

18   THE RIGHT NOT ONLY TO GO OUT AND REGISTER WITH THE COPYRIGHT

19   OFFICE THE COPYRIGHTS FOR THE PHOTOS, BUT ALSO GIVE THEM THE

20   RIGHT TO LICENSE THE PHOTOGRAPHS AND THE COPYRIGHTS FOR THE

21   PHOTOGRAPHS.

22       AND THAT'S WHAT HAPPENED.  CORBIS THEN SUBSEQUENTLY

23   LICENSED TO PEARSON.

24       NOW, IN ORDER FOR CORBIS TO HAVE THE AUTHORITY TO GO OUT

25   AND REGISTER THE COPYRIGHTS, THEY HAD TO HAVE GOTTEN SOME

1   TRANSFER OF THE OWNERSHIP OF THE COPYRIGHTS IN ORDER TO DO.

2       THAT THERE'S A SEPARATE ISSUE ABOUT WHETHER YOU CAN

3   ACTUALLY HAVE A TEMPORARY TRANSFER OF OWNERSHIP, BUT I WON'T

4   GET INTO THAT.  IT'S NOT ENTIRELY GERMANE.

5       BUT IN ORDER TO ARGUE THAT THESE COPYRIGHT REGISTRATIONS

6   WERE VALID TO THE COURT IN THE NEW YORK AND OTHER FEDERAL

7   COURTS AROUND THE COUNTRY, THEY HAD TO ARGUE AND TESTIFY AND

8   SUBMIT EVIDENCE THAT THE INDIVIDUALS HAD, IN FACT, TRANSFERRED

9   THEIR COPYRIGHTS TO CORBIS, OWNERSHIP OF THE COPYRIGHT, SO THAT

10  CORBIS COULD GO AHEAD AND HAVE VALID REGISTRATION.

11      THAT'S WHY THEY MADE THOSE ARGUMENTS.  SO WE HAD ALL THAT

12  EVIDENCE.  AND WE KNEW THAT IN THIS CASE WE HAVE LICENSES FROM

13  CORBIS.

14      NOT FROM MPI AND NOT FROM THE MUENCHES.  OUR LICENSES ARE

15  WITH CORBIS.  OUR CONTRACTUAL ARRANGEMENT IS WITH CORBIS.  AND

16  WE WERE CONFIDENT FROM DAY ONE THAT BASED ON THE TERMS OF OUR

17  MASTER LICENSING AGREEMENT, WHICH I KNOW WE'LL GET TO IN A

18  MINUTE, THAT WE HAD VALID LICENSES FOR THE COPYRIGHTS.

19      WITH RESPECT TO STANDING WE KNEW THAT THE INDIVIDUALS WERE

20  THE OWNERS BASED ON THEIR TESTIMONY THROUGH DECLARATIONS IN

21  THOSE OTHER CASES.

22      SO WHEN YOU CONSIDER THE FACTS WHEN WE MOVE FOR SUMMARY

23  JUDGMENT IT WAS ON A VERY SIMPLE POINT.  WE DIDN'T SEE ANYTHING

24  IN THE RECORD THAT SHOWED ANY TRANSFER OF OWNERSHIP AT ANY TIME

25  FROM THE INDIVIDUALS DAVID AND MARC MUENCH TO MPI SUCH THAT MPI

1     COULD NOT HAVE STANDING TO PURSUE COPYRIGHT INFRINGEMENT.

2          WE DID ASK IN DISCOVERY FOR DOCUMENTS ON THIS VERY ISSUE.

3     WE ASKED FOR DOCUMENTS CONCERNING ALL DOCUMENTS THAT PERTAIN TO

4     PLAINTIFF'S RIGHT OR LACK THEREOF TO ASSERT CLAIMS.  AND THAT

5     WAS A DOCUMENT REQUEST WE USED IN OTHER CASES THAT RELATE TO

6     THE VERY STANDING ISSUE THAT IS BEFORE THE COURT.

7          WE DIDN'T GET ANYTHING ABOUT WORKS FOR HIRE.  WE DIDN'T

8     GET EMPLOYMENT AGREEMENTS.  WE DIDN'T GET PAYSTUBS.  WE DIDN'T

9     GET A SHRED OF EVIDENCE SUGGESTING THAT DAVID AND MARC MUENCH

10    PRODUCED THESE PHOTOGRAPHS OF WORKS MADE FOR HIRE FOR THE

11    COMPANY.

12         WE DIDN'T GET ANYTHING IN INITIAL DISCLOSURES THAT SAID

13    THEY WERE EMPLOYEES OF MPI.  SO WE HAD A RECORD, AND WE MOVED

14    ON IT.  AND IN RESPONSE WE GOT A VERY SHORT ARGUMENT.  I THINK

15    IT TOOK THEM LESS THAN A PAGE IN THEIR OPPOSITION THAT SAID:

16              "WORKS MADE FOR HIRE.  SEE THE DECLARATION."

17         AND IF YOU GO AND LOOK AT THOSE DECLARATIONS -- I THINK

18    YOUR HONOR ALREADY NOTED IT -- BUT THEY ARE CONTRADICTED BY SO

19    MANY FACTS ON THE RECORD THAT THE WORK-FOR-HIRE BOXES ARE

20    CHECKED "NO" ON THE REGISTRATIONS.

21         THE AGENCY AGREEMENTS, AS I MENTIONED, ARE WITH THE

22    INDIVIDUALS, NOT WITH MPI.  DAVID AND MARC MUENCH -- THIS MAY

23    NOT BE IN THIS CITATION MAY NOT BE IN THE BRIEF -- BUT IN

24    THOSE AGENCY AGREEMENTS, WHICH ARE IN THE RECORD, DAVID AND

25    MARC MUENCH BOTH REPRESENT THAT THEY WERE OWNERS OF THE

1    COPYRIGHTS.

2         IT'S RIGHT AT THE BEGINNING.  THE VERY FIRST RECITAL

3    PARAGRAPH.  I'LL JUST GIVE YOU THE CITE.  IT'S DOCKET 62-4 AT

4    PAGE TWO, AND DOCKET 62-3 AT PAGE TWO.

5         AND BOTH OF THEM GAVE RECITALS WHERE THEY REPRESENTED THEY

6    WERE THE OWNERS OF THE 30,000 AND 300,000 PHOTOS THAT WERE IN

7    THEIR COLLECTION.

8         AS YOUR HONOR NOTED, THEY BOTH PREVIOUSLY SWORE UNDER OATH

9    THAT THEY WERE THE OWNERS.  AND MPI, OF COURSE, ARGUED THEY

10   WERE THE OWNERS.

11        AND I'LL MENTION ONE OTHER THING ABOUT THIS.  WE DON'T

12   EVEN HAVE TO GO TO THE OTHER LITIGATIONS.  IN THEIR OPPOSITION

13   BRIEF, WHICH IS DOCKET 66, AT PAGE EIGHT, THEY -- IN THIS CASE

14   THEY ACTUALLY ARGUED THAT CORBIS REGISTERED, QUOTE, "COPYRIGHTS

15   TO THE PHOTOGRAPHER'S IMAGES ON BEHALF OF THE PHOTOGRAPHERS."

16        THAT'S WHAT HAPPENED.  THEY WERE THE PHOTOGRAPHS OF THE

17   INDIVIDUALS.  THEY ENTERED INTO AGENCY AGREEMENTS WITH CORBIS

18   TO GIVE CORBIS THE RIGHT TO REGISTER THE COPYRIGHTS WITH THE

19   COPYRIGHT OFFICE PURSUANT TO CORBIS' COPYRIGHT REGISTRATION

20   PROGRAM AND TO LICENSE THEM.

21        THAT'S HOW WE GOT THEM BECAUSE WE GOT THEM FROM CORBIS

22   PURSUANT TO THAT TRANSFER THROUGH THE AGENCY AGREEMENT.  AND

23   THAT IS THE REASON THAT THE DECLARATIONS SUBMITTED HERE THAT

24   FOR THE FIRST TIME IN ANY CASE, THE FIRST TIME IN ANY CASE OUT

25   THERE CLAIMING THAT THEIR WORKS MADE FOR HIRE ARE SIMPLY NOT

1   RELIABLE AND NOT SOMETHING THAT SHOULD BE RELIED ON TO CREATE A

2   GENERAL ISSUE OF MATERIAL FACT.

3         I WILL OBVIOUSLY LET YOUR HONOR DIRECT THE PACE HERE, BUT

4   THAT DOES ALSO HAVE -- IF COUNSEL AND HIS CLIENT IS TO BE

5   BELIEVED THAT THEY ARE NOW WORKS MADE FOR HIRE THAT HAS

6   SIGNIFICANT IMPLICATIONS TO THE SECOND PIECE OF THE COPYRIGHT

7   REGISTRATION.

8         THE COURT:  SO MR. CROCKETT, I'LL GIVE YOU THE LAST WORD

9   ON THIS IF YOU WANT IT BEFORE I MOVE ON.

10         MR. CROCKETT:  YES, YOUR HONOR.  COUNSEL HAS JUST MADE AN

11   ARGUMENT THAT WOULD BE VERY COMPELLING IF MUENCH WERE MOVING

12   FOR SUMMARY JUDGMENT.  HE'S ARGUING, IN ESSENCE, THAT THERE'S A

13   GENUINE DISPUTE OF MATERIAL FACT ON THE QUESTION OF WHETHER

14   THESE ARE OWNED BY MUENCH PHOTOGRAPHY OR BY THE INDIVIDUAL

15   MUENCHES.

16         BUT MUENCH PHOTOGRAPHY IS NOT MOVING FOR SUMMARY JUDGMENT.

17   PEARSON IS THE ONLY PARTY MOVING FOR SUMMARY JUDGMENT HERE.

18   THESE ARE NOT CROSS MOTIONS.  AND IN ORDER TO PREVAIL, PEARSON

19   HAS TO SHOW THAT THE COURT IS COMPELLED TO CONCLUDE AS A MATTER

20   OF LAW THAT THESE WERE NOT WORKS FOR HIRE, IN THE FACE OF

21   DECLARATIONS, FLATLY STATING THAT THEY WERE.

22         AND PEARSON CHOSE NOT TO REALLY EXPLORE THAT ISSUE.

23   THAT'S THEIR STRATEGY IN EVERY CASE, YOUR HONOR, BECAUSE THEY

24   HAVE NO REAL DEFENSE ON THE MERITS.  THEY JUST HOPE THAT THEY

25   CAN COME UP WITH A TECHNICAL DEFENSE.

 1          AND HERE THEY KNEW -- OR I DON'T KNOW WHAT THEY KNEW.  BUT

 2     IF THEY HAD CHOSEN TO TAKE THE DEPOSITION OF MR. MARC MUENCH

 3     AND DAVID MUENCH, AND THOROUGHLY EXPLORED THESE ISSUES THEY

 4     WOULD HAVE FOUND OUT WHAT THE FACTS WERE.

 5          BUT THEY DIDN'T WANT TO KNOW WHAT THEY MIGHT SAY.

 6          THE COURT:  ALL RIGHT.  WELL, LET'S MOVE ON TO THE NEXT

 7     ISSUE ON INFRINGEMENT.  AND I'M GOING TO PUT TWO THINGS

 8     TOGETHER.  ONE IS THAT IT SEEMS TO ME THAT THE WEIGHT OF THE

 9     AUTHORITY SUPPORTS THE DEFENDANT'S POSITION THAT REGISTRATION

10     OF THE COMPILATION DOESN'T EXTEND COPYRIGHT PROTECTION TO THE

11     UNDERLYING WORKS.

12          THAT'S SORT OF A GENERAL STATEMENT.  AND THEN, IT DOES

13     ALSO SEEM TO ME THAT JUDGE PRESCOTT DEALT WITH WHAT I THINK

14     BOTH OF YOU AGREE IS 4O6 OF THE 485 REGISTRATIONS.

15          AND I DON'T KNOW WHY I WOULDN'T BE FOLLOWING COLLATERAL

16     ESTOPPEL ON THOSE CLAIMS, EVEN IF I THOUGHT THAT THE LAW WAS

17     DIFFERENT THAN WHAT SHE THINKS IT IS.  AND AT THE MOMENT I

18     DON'T.

19          SO MR. CROCKETT, AGAIN.

20          MR. CROCKETT:  THE COURT WOULD -- IN ORDER TO APPLY THE

21     COLLATERAL ESTOPPEL DOCTRINE HERE, OR WHAT THEY CALL "OFFENSIVE

22     NONMUTUAL ISSUE PRECLUSION," THE COURT WOULD HAVE TO FIRST FIND

23     THAT THERE'S APPEALABLE ORDER ENTERED IN THE SOUTHERN DISTRICT

24     OF NEW YORK CASE, A FINAL JUDGMENT.

25          NOW, "FINAL JUDGMENT" DOESN'T MEAN FINAL THROUGH ALL THE

1   APPEALS PROCESS.  BUT THERE HAS TO HAVE BEEN AN ORDER ENTERED

2   BY THE DISTRICT COURT THAT IS APPEALABLE.  AND THAT HASN'T

3   OCCURRED HERE.

4       THAT HE'S WHY THE COURT DOESN'T HAVE TO AND SHOULD NOT

5   APPLY ISSUE PRECLUSION.

6       NOW, THIS WHOLE ISSUE ABOUT THE VALIDITY OF COMPILATION

7   REGISTRATIONS IS BEFORE THE NINTH CIRCUIT IN A CASE CALLED

8   ALASKA STOCK VERSUS HOUGHTON, MIFFLIN.

9       THAT WAS ARGUED IN JULY OF 2011.

10      THE COURT:  WHAT'S THE DEAL WITH THAT?

11      MR. CROCKETT:  ONE OF THE JUDGES DIED.  AFTER THE ORAL

12  ARGUMENT THEY HAD TO REASSIGN THE CASE.  THAT'S WHY IT'S BEEN

13  SO DELAYED.

14      BUT THE NINTH CIRCUIT WILL PRESUMABLY BE ISSUING ITS

15  DECISION SHORTLY.

16      IN THE MEANTIME, THE TREND IS TO SUPPORT THOSE.  AND BY

17  THE WAY, IN THE ALASKA STOCK VERSUS HOUGHTON, MIFFLIN CASE THE

18  UNITED STATES' COPYRIGHT OFFICE FILED AN AMICUS BRIEF IN

19  SUPPORT OF THE VALIDITY OF COMPILATION REGISTRATIONS.

20      AND IN OTHER CASES IN WHICH THIS HAS BEEN LITIGATED, MOST

21  NOTABLY IN THE FOURTH CIRCUIT VERY RECENTLY WITHIN THE LAST FEW

22  MONTHS, THEY WERE APPROVED.  AND WE BELIEVE THAT THE NINTH

23  CIRCUIT IS LIKELY TO APPROVE THEM, AS WELL, BUT WE WON'T KNOW

24  THAT UNTIL WE GET THEIR OPINION.

25      THE COURT:  OKAY. MR. MARSTON?

1     MR. MARSTON:  YOUR HONOR, AS TO THE ISSUE OF COLLATERAL

2  ESTOPPEL, IT IS NOT OFFENSIVE.  IT'S DEFENSIVE.  WE ADDRESSED

3  THAT IN OUR BRIEF IN A FOOTNOTE.

4     BUT COLLATERAL ESTOPPEL DOES APPLY HERE.  I MAY HAVE

5  MISHEARD, BUT I THOUGHT COUNSEL SAID ON THE ONE HAND IT DOES

6  NOT NEED TO BE A FINAL JUDGMENT, BUT ON THE OTHER HAND IT DOES

7  NEED TO BE A JUDGMENT THAT IS APPEALABLE.

8     IT DOESN'T NEED TO BE A FINAL APPEALABLE JUDGMENT FOR

9  COLLATERAL ESTOPPEL TO APPLY.  THAT'S WELL-ESTABLISHED.  WE

10 CITED THE LUBEN INDUSTRIES CASE, 707 F.2D 1037, WHICH IS THE

11 NINTH CIRCUIT DECISION.

12     SO I THINK YOUR HONOR IS CORRECT THAT AS TO JUDGE

13 PRESCOTT'S DECISION THERE IS COLLATERAL ESTOPPEL.  AGAIN, I

14 WANT TO BE CLEAR.  THAT WAS THE -- THERE'S SEVEN REGISTRATIONS

15 AT ISSUE IN THIS CASE.  SIX OF THEM ARE THE EXACT SAME SIX

16 REGISTRATIONS THAT JUDGE PRESCOTT HAS ALREADY FOUND INVALID,

17 NOT AS TO THE COMPILATIONS, BUT INVALID TO THE EXTENT THEY

18 PURPORT TO REGISTER COPYRIGHTS FOR THE INDIVIDUAL WORKS.

19     THAT DECISION HAS ALSO BEEN ECHOED BY NUMEROUS OTHER

20 COURTS OTHER THAN SIMPLY JUDGE PRESCOTT IN THE DISTRICT OF NEW

21 JERSEY -- SORRY -- DISTRICT OF NEW YORK.

22     WE HAVE THOSE CASES CITED ON OUR BRIEF, DOCKET 68, AT PAGE

23 12.

24     THE DECISION, I BELIEVE, IS ENTIRELY CORRECT, AS WELL,

25 BECAUSE THERE IS A DIFFERENCE BETWEEN A REGISTRATION FOR A

1    COMPILATION OF WORKS AND A REGISTRATION FOR AN INDIVIDUAL WORK.

2         IN ADDITION, IN THOSE -- IN THAT REGISTRATION IS AN ISSUE

3    HERE, ALL SIX OF THEM, YOU HAVE A SIGNIFICANT PROBLEM TRYING TO

4    UNDERSTAND WHAT PHOTOGRAPHERS ARE COVERED BY THE COMPILATIONS

5    AND WHICH WORKS ARE COVERED BY THE COMPILATIONS.

6         AND WHAT I MEAN BY THAT IS YOU CAN'T LOOK AT THE

7    REGISTRATION ITSELF AND DETERMINE WHOSE WORKS ARE IN THERE AND

8    WHICH WORKS ARE IN THERE.

9         AND SO THAT CREATES A SIGNIFICANT ISSUE.  THAT SAME ISSUE

10   IS PRESENT WITH RESPECT TO THE SEVENTH REGISTRATION, AS WELL.

11   AND THERE'S AN INDEPENDENT REASON THAT THAT SEVENTH

12   REGISTRATION FAILS.  AND THAT'S BECAUSE THERE'S NO LINK BETWEEN

13   THE PHOTOGRAPHS IN THIS CASE THAT ARE SET FORTH IN EXHIBIT ONE

14   OF THE COMPLAINT AND THE REGISTRATIONS THAT PURPORT TO COVER

15   THOSE PHOTOS.

16        NORMALLY, YOU CAN GO TO THE COPYRIGHT OFFICE, AND IF IT'S

17   NOT ON THE REGISTRATION ITSELF, YOU CAN ASK FOR A COPYRIGHT

18   DEPOSIT AND YOU CAN SEE ALL OF THE WORKS THAT ARE PART OF THE

19   REGISTRATION.

20        SO HERE, AGAIN, EVEN APART FROM THE COMPILATION

21   REGISTRATION ISSUE WITH THE SIX, FOR ALL SEVEN YOU HAVE THIS

22   PROBLEM THAT THERE'S NO WAY IN THE RECORD TO LINK THE

23   PHOTOGRAPHS TO THE COPYRIGHT REGISTRATIONS.

24        NOW, IN THEIR OPPOSITION BRIEF MPI TRIES TO GET AROUND

25   THAT PROBLEM BY SUBMITTING A DECLARATION FROM A PARALEGAL AT

1    CORBIS.

2         REMEMBER, CORBIS IS THAT THIRD PARTY THAT PURPORTS TO HAVE

3    REGISTERED THE COPYRIGHTS.  THAT -- WELL, THEY DO A COUPLE OF

4    THINGS.  THEY SUBMIT THE DECLARATION.  THEY ALSO TRY TO

5    INTRODUCE THE SUPPLEMENTAL COPYRIGHT REGISTRATIONS.

6         THE SUPPLEMENTAL, BY THE WAY, THERE ARE ONLY SUPPLEMENTAL

7    COPYRIGHT REGISTRATIONS FOR 99 OF THE 485 CLAIMS.  SO THAT

8    ISSUE WOULD ACTUALLY ONLY COVER, YOU KNOW, ABOUT ONE-FIFTH OF

9    THE CLAIMS AT ISSUE.

10        SUPPLEMENTAL REGISTRATIONS ARE PROBLEMATIC BECAUSE JUDGE

11   PRESCOTT HAS ALREADY RULED THAT THEY CAN'T FIX THIS PROBLEM.

12   SO THAT DECISION WOULD HAVE COLLATERAL ESTOPPEL EFFECTS BECAUSE

13   IT'S THE SAME SUPPLEMENTAL REGISTRATIONS.

14        AND, ALSO, AGAIN, NO EVIDENCE THAT THE PHOTOS THAT ARE IN

15   THE SUPPLEMENTAL REGISTRATIONS, WHICH ARE IDENTIFIED ARE, IN

16   FACT, THE SAME PHOTOS THAT ARE IN THE ORIGINAL COMPILATION

17   REGISTRATIONS BECAUSE, AGAIN, YOU CAN'T LOOK AT ANYTHING TO SEE

18   WHICH PHOTOS ARE COVERED.

19        AND THAT IS THE PIECE THEY TRY TO FIX WITH THE DECLARATION

20   FROM THE PARALEGAL AT CORBIS.

21        IT'S NOT REALLY DONE ON PERSONAL KNOWLEDGE.  SHE STARTS

22   OUT BY SAYING:

23             "IT'S MY UNDERSTANDING THAT."

24        SHE'S NOT THE PERSON THAT CREATED THE CHARTS.  SHE DOESN'T

25   EXPLAIN IN HER DECLARATION THE CHART CONTENTS, HOW THEY WERE

1   PREPARED, WHEN THEY WERE PREPARED OR WHO PREPARED THEM.

2          AND MPI DOESN'T -- I MEAN, THEY SAY IN A CONCLUSORY MANNER

3   IN THEIR BRIEF THAT THEY NEED A HEARSAY EXCEPTION WITHOUT

4   IDENTIFYING WHICH ONE IT IS OR HOW IT MEETS OR WELCOME TO ANY

5   SORT OF TEST FOR HEARSAY.

6          BUT I DO BELIEVE THAT DECLARATION IS INADMISSIBLE HEARSAY.

7   CLEARLY, AS WE POINTED OUT IN OUR REPLY ON A MOTION FOR SUMMARY

8   JUDGMENT, IT NEEDS TO BE ADMISSIBLE EVIDENCE.  I THINK THERE

9   WAS SOME ISSUE ABOUT THAT WITH MPI'S OPPOSITION BRIEF.

10         BUT MPI KNEW THIS.  THIS IS NOT A SURPRISE.  AND, YOU

11  KNOW, WE CAN TALK ABOUT -- WE CAN POINT FINGERS ABOUT STRATEGIC

12  DECISIONS THAT WERE MADE AND THE OUTCOMES OF THEM.  BUT THEY

13  MADE A STRATEGIC DECISION NOT TO GET ANY DISCOVERY FROM CORBIS.

14         AND I THINK THAT WAS A CRITICAL MISTAKE MYSELF, BECAUSE

15  CORBIS IS THE ENTITY WITH WHOM WE GOT THE LICENSE TO USE THE

16  PHOTOGRAPHS THAT ARE AT ISSUE.  SO ALL OF OUR TRANSACTIONS AND

17  PAYMENTS AND LICENSES WERE WITH CORBIS.

18         AND I'M NOT HERE TO JUDGE WHY THEY DID THAT, BUT THE FACT

19  IS THAT WELL AFTER DISCOVERY CLOSED -- AND I GUESS IT WAS MAYBE

20  JUST THREE MONTHS AGO OR SO -- THEY DID TRY, YOU KNOW, AT THE

21  LAST HOUR TO SERVE A SUBPOENA ON CORBIS, WHICH WAS AFTER THE

22  FACT, AND WE MOVED TO QUASH, AND YOUR HONOR QUASHED IT.

23         SO I THINK THIS IS AN ISSUE THEY KNEW ABOUT.

24         ONE LAST POINT, IF I COULD, ON THE REGISTRATION, AND I'M

25  GOING TO TIE IT BACK TO THE POINT THAT I WAS MAKING ON

1    STANDING.

2        AS I SAID, HERE ALL SEVEN REGISTRATIONS -- SIX, THE SIX

3    COMPILATIONS AND THE SEVENTH THAT IS NOT -- THEY WERE ALL

4    REGISTERED BY CORBIS.  AND CORBIS DID THAT PURSUANT TO THESE

5    AGENCY AGREEMENTS.

6        NOW, IF MPI ACTUALLY OWNED THE COPYRIGHT, THEN THE

7    REGISTRATIONS ARE INVALID, BECAUSE CORBIS HAD AUTHORITY FROM

8    THE INDIVIDUALS DAVID AND MARC MUENCH, AS WE DISCUSSED, NOT

9    FROM MPI.

10       SO, AGAIN, IF THEIR WORK-FOR-HIRE ARGUMENT IS TO BE

11   BELIEVED TO DEFEAT A STANDING PROBLEM, THEN THEY HAVE A

12   SIGNIFICANT PROBLEM ON REGISTRATION BECAUSE THEIR REGISTRATIONS

13   ARE COMPLETELY INVALID.

14       THE COURT:  ALL RIGHT.

15       MR. CROCKETT:  JUST A COUPLE OF POINTS, YOUR HONOR.  FIRST

16   OF ALL, DAVID -- OR, RATHER -- MARC MUENCH WAS THE PRESIDENT OF

17   MUENCH PHOTOGRAPHY WHEN HE DEALT WITH CORBIS.

18       AND I THINK IT'S REASONABLE TO CONSTRUE THAT AS BEING ON

19   BEHALF OF MUENCH PHOTOGRAPHY AS WELL AS ON BEHALF OF HIM

20   INDIVIDUALLY.

21       ALSO, YOUR HONOR, I WOULD LIKE TO MAKE SURE THE COURT IS

22   AWARE OF THE SUPPLEMENTAL AUTHORITY WE SUBMITTED.  AN

23   OCTOBER 7TH OPINION BY THE SEVENTH CIRCUIT IN A CASE CALLED

24   DELIVER MED HOLDINGS.

25       AND THE COURT -- THE SEVENTH CIRCUIT FOUND THAT THE

1   DISTRICT COURT HAD INCORRECTLY INVALIDATED THE PLAINTIFF'S

2   COPYRIGHT REGISTRATION SINCE THE PARTIES DID NOT ASK THE COURT

3   TO CONSULT WITH THE REGISTRAR OF COPYRIGHTS BEFORE INVALIDATING

4   THE COPYRIGHT REGISTRATION.

5       THE DECISION REQUIRES DISTRICT COURTS TO OBTAIN AN

6   ADVISORY OPINION FROM THE REGISTRAR OF COPYRIGHTS ON THE ISSUE

7   OF WHETHER THE INACCURATE INFORMATION, IF KNOWN, WOULD HAVE

8   CAUSED THE REGISTRAR OF COPYRIGHTS TO REFUSE REGISTRATION.

9       MR. MARSTON:  BRIEFLY?  JUST THAT POINT.  I HAVE THAT

10  CASE, AND I REVIEWED IT BEFORE YOUR ARGUMENT TODAY.  IF YOUR

11  HONOR LOOKS AT PAGE SIX -- THIS IS AN UNPUBLISHED DECISION, SO

12  IT'S STAR SIX IN THE WEST LAW VERSION I HAVE.

13      THERE ARE NUMEROUS INSTANCES THERE WHERE THE COURT NOTES

14  THAT THE REQUIREMENT TO CHECK WITH THE REGISTRAR REGARDING

15  INVALIDATING A COPYRIGHT REGISTRATION, THAT APPLIES WHEN YOU'RE

16  DEALING WITH KNOWING MISREPRESENTATIONS IN AN APPLICATION.  ALL

17  RIGHT?

18      THAT'S NOT WHAT WE HAVE HERE.  HERE WE'RE NOT EVEN SAYING

19  THAT THE COPYRIGHT REGISTRATIONS ARE INVALID.  THEY ARE VALID,

20  THOSE SIX, AS TO THE COMPILATIONS.  THEY ARE NOT VALID AS TO

21  THE INDIVIDUAL WORKS.

22      BUT THAT'S NOT THE SITUATION LIKE THE CASE IN DELIVER MED

23  WHERE THEY WERE TRYING TO INVALIDATE BASED ON

24  MISREPRESENTATIONS MADE TO THE COPYRIGHT OFFICE, SIMILAR TO

25  INEQUITABLE CONDUCT IN PATENT LAW.

1          MR. CROCKETT:  YOUR HONOR, JUST BRIEFLY.  THIS IS A

2   STRONGER CASE FOR THAT REQUIREMENT BECAUSE THE DELIVER MED CASE

3   TALKS ABOUT KNOWING MISREPRESENTATIONS.  BUT HERE THERE'S

4   SLOPPINESS ON THE PART OF CORBIS.  AND I SUBMIT THAT IT'S AN

5   EVEN STRONGER CASE HERE FOR ASKING THE COPYRIGHT OFFICE:  WOULD

6   THIS TECHNICALLY INCORRECT INFORMATION IN THE APPLICATIONS HAVE

7   MADE ANY DIFFERENCE IF YOU HAD KNOWN WHAT THE FACTS WERE?

8          THE COURT:  OKAY. I WILL TAKE A LOOK AT THAT.

9          THERE'S NO LAW THAT YOU'RE AWARE OF, MR. CROCKETT, THAT

10  DISTINGUISHES BETWEEN THE REQUIREMENTS OF CORPORATE LAW WHEN

11  IT'S A NONFAMILY CORPORATION AS OPPOSED TO ONE THAT IS A FAMILY

12  CORPORATION.

13         DO YOU THINK I SHOULD BE LOOKING AT MPI DIFFERENTLY

14  BECAUSE IT'S BASICALLY THE TWO GUYS, THE TWO MUENCHES?

15         MR. CROCKETT:  WELL, THE REASON I MENTIONED THAT, YOUR

16  HONOR, IS THE FACT THEY ARE RELYING ON THE FACT THAT MARC

17  MUENCH AND DAVID MUENCH HAVE SAID IN OTHER LITIGATIONS:  "MY

18  COPYRIGHTS."

19         AND THESE GUYS ARE PHOTOGRAPHERS.  THEY ARE NOT COPYRIGHT

20  LAWYERS.  THEY DON'T ROUTINELY CONFER WITH COPYRIGHT LAWYERS IN

21  THE COURSE OF THEIR BUSINESS.

22         THE COURT:  NO, I UNDERSTAND SORT OF PERSONAL DYNAMIC.  I

23  AM JUST WONDERING WHETHER THERE'S ANY CASE OUT THERE THAT

24  SUPPORTS THAT KIND OF A DIFFERENTIAL -- DIFFERENTIAL ALL VIEW.

25         MR. CROCKETT:  I'M NOT AWARE OF ANY EXCEPTION TO THE

1   WORK-FOR-HIRE DOCTRINE BASED ON THE FACT THAT IT'S A FAMILY

2   CORPORATION RATHER THAN SOME OTHER KIND OF EMPLOYER.  THAT ALL

3   YOU HAVE TO SHOW UNDER THE STATUTE 17 U.S.C. 201B IN THE CASE

4   OF A WORK MADE FOR HIRE, THE EMPLOYER IS CONSIDERED THE AUTHOR

5   AND OWNS ALL OF THE RIGHTS COMPRISED IN THE COPYRIGHT.

6        AND 17 U.S.C. SECTION 101 STATES:

7             "A WORK PREPARED BY AN EMPLOYEE WITHIN THE SCOPE OF

8             HIS OR HER EMPLOYMENT IS A WORK MADE FOR HIRE."

9        THAT'S WHAT WE HAVE HERE.  THAT'S NOT REALLY DISPUTED

10  EXCEPT TO THE EXTENT THAT THEY CAN POINT TO THESE INSTANCES OF

11  SLOPPY LANGUAGE ON THE PART OF THESE LAYMEN WHEN THEY REFER TO,

12  QUOTE:  "MY COPYRIGHTS."

13       THE COURT:  OKAY.

14       MR. MARSTON:  JUST BRIEFLY, YOUR HONOR.  TO YOUR HONOR'S

15  POINTS I THINK IT IS THE CASE THAT THERE IS NO DIFFERENCE

16  BETWEEN THE CORPORATION AND A FAMILY-RUN CORPORATION.

17       AND I WOULD NOTE THAT YOUR HONOR STATED "JUST THE TWO

18  GUYS." ACTUALLY, TWO GUYS AND 2 GALS.  HERE WE HAVE BOTH THE

19  FORMER WIFE OF DAVID AND THE SISTER/DAUGHTER WHO ARE ALSO

20  OWNERS OF THIS COMPANY, AND THEY ARE NOT REPRESENTED HERE IN

21  ANY WAY.

22       SO EVEN IF YOU WERE TO LOOK AT THIS AS A FAMILY-RUN

23  COMPANY AND WANT TO MAKE SURE THAT THE INTERESTS OF EVERYONE

24  ARE PROTECTED WE DON'T ACTUALLY KNOW WHAT THE DEAL IS WITH THE

25  2 GAL.

```
1        IT'S NOT IN THE RECORD, NOT BEFORE THE COURT.  BUT I THINK

2   CLEARLY IF YOU ARE GOING TO INCORPORATE AND TRY TO TAKE

3   ADVANTAGE OF ALL THE BENEFITS OF CORPORATION YOU'RE NOT GOING

4   TO BE ABLE TO THEN TURN AROUND AND SAY:

5        "OH, IT'S JUST INDIVIDUALS."

6   DOESN'T WORK THAT WAY.

7        THE COURT:  OKAY.  WELL, LET'S CALL THE SECOND CASE, AND

8   THEN GO INTO THE MOTION TO DISMISS.

9        MR. MARSTON:  I'M SORRY, YOUR HONOR.  THERE WAS A THIRD

10  ARGUMENT THAT WE HAD HOPED TO ADDRESS THAT WE COVERED IN OUR

11  MOTION FOR SUMMARY JUDGMENT.

12       THE COURT:  OKAY.  GO AHEAD AND DO THAT.  MY PERSPECTIVE

13  ON IT WAS THAT THERE WERE GOING TO BE FACTS IN DISPUTE WITH

14  RESPECT TO IT.  SO GO AHEAD AND MAKE THAT ARGUMENT.

15       MR. MARSTON:  IF I CAN JUST BRIEFLY, YOUR HONOR.  AND IT

16  IS IMPORTANT, I THINK, THAT THEY HAVE RAISED SOME ISSUES ABOUT

17  THE REGISTRATION COMPILATION BEING UP ON APPEAL.

18       AND CERTAINLY FROM OUR PERSPECTIVE, YOU KNOW, WE WOULD

19  HOPE THAT IF THE COURT IS WILLING IT WOULD BE ABLE TO RULE ON

20  ALL THREE ISSUES.

21       I RECOGNIZE THAT STANDING AND/OR REGISTRATION COULD SORT

22  OF END THE CASE.  BUT WE'VE ALSO BEEN ACCUSED OF NOT GETTING TO

23  THE MERITS, AND MERITS ARE IMPORTANT TO US HERE.

24       THIS IS A SITUATION WHERE CORBIS AND PEARSON HAD A VERY

25  SPECIAL RELATIONSHIP, BECAUSE CORBIS IS -- I THINK IN OUR
```

1    PAPERS IT SAYS "ONE OF THE LARGEST." I BELIEVE IT IS ACTUALLY

2    THE LARGEST. BUT "ONE OF THE LARGEST" -- LET'S TAKE WHAT IS

3    THERE -- SUPPLIERS OF PHOTOGRAPHIC CONTENT TO PEARSON FOR USE

4    IN ITS PRODUCTS.

5        AND BECAUSE OF THAT THEY ENTERED INTO A RELATIONSHIP THAT

6    IS DIFFERENT THAN THE RELATIONSHIP CORBIS HAS -- I'M SORRY --

7    PEARSON HAS WITH INDIVIDUAL PHOTOGRAPHERS AND RELATIONSHIP THAT

8    PEARSON HAS WITH OTHER LARGE VENDORS OR AGENCIES.

9        AND THE CORBIS/PEARSON RELATIONSHIP IS MEMORIALIZED IN

10   WHAT WE REFER TO AS "MASTER LICENSING AGREEMENTS," OR MLA'S.

11   AND THERE ARE THREE OF THEM IN ISSUE. ONE IN 2001, ONE IN 2004

12   AND ONE IN 2007.

13       THE LAW IS CLEAR -- AND I DON'T THINK IT'S IN DISPUTE

14   BETWEEN THE PARTIES -- QUOTE:

15           "A COPYRIGHT OWNER WHO GRANTS NONEXCLUSIVE LIMITED

16       LICENSES ORDINARILY WAIVES THE RIGHT TO SUE LICENSEES FOR

17       COPYRIGHT INFRINGEMENT AND MAY ONLY SUE FOR BREACH OF

18       CONTRACT."

19       THAT IS FROM THE NINTH CIRCUIT'S DECISION IN 2010 IN THE

20   MDY CASE. MDY SETS THE FRAMEWORK FOR THE ANALYSIS ON THIS

21   ISSUE. AND IT DISCUSSES THAT YOU NEED TO GO TO THE CONTRACTS,

22   THE LICENSES, AND YOU NEED TO LOOK AT THE PROVISIONS AND

23   DETERMINE: ARE THEY CONDITIONS? AND IF THEY ARE, THEN THERE'S

24   A VALID CLAIM FOR COPYRIGHT INFRINGEMENT.

25       OR, ON THE OTHER HAND, ARE THEY COVENANTS WHICH WOULD GIVE

1  RISE ONLY TO A CLAIM FOR BREACH OF THE LICENSE AGREEMENT.

2      NOW, HERE THE MLA'S ARE THE OPERATIVE DOCUMENTS BETWEEN

3  PEARSON AND CORBIS THAT GAVE PEARSON THE RIGHT, THE LICENSE, TO

4  USE CORBIS' PHOTOGRAPHS.

5      AND IF YOUR HONOR JUST -- THESE ARE IN OUR PAPERS, BUT I

6  JUST WANT TO HAND THEM UP BECAUSE I CAN REFER TO THEM MORE

7  EASILY, SAVE TIME.  I THINK I HAVE AN EXTRA SET FOR THE CLERKS,

8  AS WELL.

9      I'M JUST GOING TO BRIEFLY RUN THROUGH.  AND I WON'T BE

10  REPETITIVE.  BUT I WANT TO RUN THROUGH SOME OF THE IMPORTANT

11  SECTIONS OF THESE THREE MLA'S.

12      THE FIRST IS THE 2001 MLA.  AND YOU CAN JUST LOOK AT THE

13  VERY FIRST PAGE, YOUR HONOR.  AND IT SAYS:

14          "TERMS OF LICENSE."

15      NOW, THE SUBSEQUENT ONES REFER TO IT A LITTLE DIFFERENTLY.

16  AND THEY SAY:

17          "IMAGE USAGE AND PRICING."

18      THERE'S NO DOUBT THAT THERE'S PRICING TERMS IN THIS AS YOU

19  WOULD EXPECT TO HAVE IN ANY LICENSE.  BUT THEY ALSO HAVE THE

20  RIGHTS THAT THE USER, PEARSON, GETS IN EXCHANGE FOR THOSE

21  PAYMENTS.

22      IN ADDITION, IF YOU TURN TO -- TOWARD THE END OF THIS

23  FIRST AGREEMENT, THERE'S LANGUAGE ON BATES 45826, I BELIEVE,

24  INVOICING USAGE -- I'M SORRY -- "INVOICING/USAGE NOTIFICATION."

25      AND IT SAYS:

1          "PEARSON EDUCATION AGREES TO NOTIFY CORBIS OF THE

2      IMAGE NUMBERS -- THE IMAGES -- OF THE IMAGES USED ON A

3      PRODUCT/TITLE QUARTERLY."  SO -- AND THEY ALL HAVE

4  LANGUAGE LIKE THAT AT THE END.  AND WHAT IT'S CONTEMPLATING IS

5  PEARSON HAS THE RIGHT TO MAKE USE OF THE PHOTOGRAPHS.

6          AND THEN, ONCE THEY DO THAT, THEY ARE TO PROVIDE

7  NOTIFICATION TO CORBIS SO THAT CORBIS CAN SEND THEM AN INVOICE.

8  AND THEN, PAYMENT CAN BE MADE PURSUANT TO THE TERMS OF THE

9  CONTRACT.

10          IT'S VERY IMPORTANT, BECAUSE THIS IS AN AGREEMENT THAT WAS

11  ENTERED INTO SPECIFICALLY BECAUSE CORBIS WAS GOING TO BE ONE OF

12  THESE LARGEST SUPPLIERS OF PHOTOGRAPHIC IMAGES TO PEARSON.  AND

13  THEY DIDN'T WANT TO HAVE TO RECREATE THE WHEEL EVERY TIME THEY

14  WENT TO USE A PHOTO.

15          AND IF YOU LOOK AT THE BEGINNING OF THESE AGREEMENTS, ALL

16  OF THEM HAVE MINIMUM COMMITMENT FOR TARGET GOALS THAT THE

17  PARTIES HAD TO REACH.  AND THIS IS ON 45824 IN THE 2001, BUT

18  THERE IS SIMILAR LANGUAGE IN THE OTHERS.  THEY ARE CALLED

19  "TARGET GOAL" THERE.

20          BUT IT SAYS:

21      "MINIMUM COMMITMENT."  AND IT TALKS ABOUT THE AMOUNT, THE

22  VOLUME OF LICENSING THAT PEARSON HAS TO DO OVER THE TERM, THE

23  THREE-YEAR TERM.

24          AND THEN IT SAYS:

25          "IF AT THE END OF THE TERM OF THIS AGREEMENT THE

1    TOTAL VALUE OF THE IMAGES LICENSED BY PEARSON FALLS SHORT

2    OF THE MINIMUM COMMITMENT, THEN CORBIS WILL BE AUTHORIZED

3    TO INVOICE PEARSON EDUCATION THE DIFFERENCE."

4    SO, AGAIN, CONTRACTUAL PROVISION THAT PROVIDES WHAT

5    HAPPENS IN THE EVENT THAT THEY FALL SHORT OF THE MINIMUM

6    COMMITMENT.

7    AND THAT'S PART OF THE GIVE AND TAKE BETWEEN THE TWO

8    PARTIES.  WE MIGHT HAVE GOTTEN SLIGHTLY BETTER PRICING,

9    SLIGHTLY BETTER TERMS, BUT IN EXCHANGE WE HAD TO MAKE SURE WE

10   GAVE THEM THE LARGE VOLUME.

11   NOW, THERE ARE SOME TERMS IN HERE THAT ARE CONDITIONS,

12   OKAY?  NOT THE RIGHT TO USE.  THAT'S SET FORTH VERY CLEARLY AS

13   A COVENANT.  YOU HAVE THE RIGHT TO USE.  ALL YOU HAVE TO DO IS

14   NOTIFY AFTER THE FACT FOR BILLING.

15   BUT IF YOU LOOK, YOUR HONOR, AT ON PAGE 45825, THERE IS

16   LANGUAGE -- IT'S IN A SECTION CALLED:

17   "EXCLUDED AND PREMIUM IMAGES."

18   AND IT SAYS -- I'LL SKIP DOWN TO THE RELEVANT LANGUAGE.

19   BUT IT BASICALLY IDENTIFIES SPECIAL.

20   COLLECTIONS FOR WHICH THE IMAGES WILL REQUIRE PREAPPROVAL,

21   AND THEY ARE NOT AVAILABLE FOR THIS AGREEMENT."

22   NOW, THOSE ARE IMAGES IN THE CORBIS COLLECTION WHICH

23   THERE'S A CONDITION PLACED ON YOUR USE OF THOSE.  YOU HAVE TO

24   GET PREAPPROVAL.

25   IF PEARSON USED ONE OF THOSE PHOTOGRAPHS WITHOUT ANY OTHER

1    FORM OF PREAPPROVAL OR PERMISSION, IT WOULD HAVE COMMITTED

2    COPYRIGHT INFRINGEMENT.

3         THAT'S NOT THE ISSUE IN THIS CASE, THOUGH.  AND THE

4    DECLARATION OF ELAINE SOARES NOTES IN PARAGRAPH FOUR, YOUR

5    HONOR, THAT NONE OF THE PHOTOGRAPHS THAT ARE AT ISSUE IN THIS

6    CASE WERE PHOTOGRAPHS THAT CORBIS EXCLUDED UNDER ANY OF THESE

7    MLA'S.

8         THEY ALL HAVE LANGUAGE LIKE THAT THAT CARVES OUT

9    PHOTOGRAPHS THAT REQUIRE PREAPPROVAL.  THAT'S A CONDITION.

10        THE COPYRIGHT INFRINGEMENT CLAIMS THEY ARE BRINGING ARE

11   NOT BASED ON THOSE TYPES OF PHOTOGRAPHS.  THEY ARE BASED ON THE

12   PHOTOS THAT FALL WITHIN THE SCOPE OF THIS AGREEMENT AND ARE

13   THEREFORE COVERED UNDER THE TERMS OF THE LICENSES THAT WE

14   GOT.

15        NOW, IN RESPONSE TO THIS ARGUMENT WE'VE GOT MPI STATING

16   THAT:

17             "THE LIMITATIONS CONTINUE TO BE GOVERNED BY

18        INDIVIDUAL LICENSES THAT PEARSON REQUESTED AND RECEIVED."

19        THIS IS A QUOTE FROM THEIR BRIEF AT PAGE NINE.  AND IT'S

20   IN THE FACTUAL BACKGROUND SECTION.  BUT THERE'S NO CITATION TO

21   ANYTHING IN THE RECORD.

22        THEY ARE NOT -- MPI WAS NOT A PARTY TO THE AGREEMENTS

23   BETWEEN PEARSON AND CORBIS.  IN FACT, I PRESUME THAT MPI DIDN'T

24   EVEN KNOW THESE THREE MLA'S EXISTED BEFORE THEY FILED SUIT.

25        WE PRODUCED THEM IN DISCOVERY, AND THAT'S WHERE THEY WOULD

1    HAVE FIRST OBTAINED THEM, MOST LIKELY.

2         AND IT'S SIGNIFICANT BECAUSE THEY DON'T OFFER ANY EVIDENCE

3    THAT CORBIS HAS A DIFFERENT UNDERSTANDING OF THE RELATIONSHIP

4    BETWEEN PEARSON AND CORBIS THAN PEARSON DOES.

5         THERE'S NO EVIDENCE IN THE RECORD THAT THERE'S ANY

6    CONFLICT OR ANY AMBIGUITY OVER THE TERMS OF THESE MLA'S.

7         THEY DON'T EVEN -- MPI DOES NOT EVEN CONTEST THAT CORBIS

8    HAD AUTHORITY TO ENTER INTO THESE TYPES OF AGREEMENTS FOR THEIR

9    PHOTOGRAPHS.

10        AND JUST TO CHECK, I WENT, AND I LOOKED AT THE AGENCY

11   AGREEMENTS.  THAT'S DOCKET 62-3 AND -4.

12        AND THERE IS, IN FACT, LANGUAGE IN THE AGENCY AGREEMENT

13   BETWEEN THE MUENCHES INDIVIDUALLY, AND CORBIS.

14        AND IT SAYS, QUOTE:

15            "THAT CORBIS MAY DETERMINE AT OUR SOLE DISCRETION THE

16        TERMS AND CONDITIONS OF ANY LICENSE."

17        SO THERE'S NO DISPUTE THAT CORBIS HAD THE RIGHT UNDER THE

18   AGENCY AGREEMENTS TO ENTER INTO LICENSES WITH PEARSON.  THEY

19   DID SO.

20        THE MLA'S ARE THOSE LICENSES.  AND THEY ARE NOT IN ANY WAY

21   CONDITIONED OTHER THAN THE LANGUAGE I POINTED TO ON THE SPECIAL

22   WORKS THAT ARE NOT AT ISSUE HERE.

23        AND, AGAIN, THAT DOESN'T MEAN THAT THERE'S NO CAUSE OF

24   ACTION.  I MEAN, IF PEARSON HAS USED A PHOTOGRAPH AND ITS

25   ACTUAL USE OF THAT PHOTOGRAPH EXCEEDED THE ESTIMATED USE THAT

1     IT GAVE IN THE NOTIFICATION AFTER IT FIRST PUBLISHED THE PHOTO,

2     THEN THERE'S A CLAIM FOR BREACH OF CONTRACT, RIGHT?

3          YOU'RE OBLIGATED TO PAY UNDER THESE MLA'S CERTAIN PRICES

4     FOR CERTAIN USAGE.

5          AND, IN FACT, IF YOU GO TO THE COURSE OF DEALING OF THE

6     PARTIES, AND YOU LOOK AT THAT -- AND WE SUBMITTED THIS IN THE

7     RECORD -- BUT THERE ARE NUMEROUS EXAMPLES WHERE, WE HAVE, I

8     THINK AS MANY AS 30 EXAMPLES OF THE VERY COMMON SITUATION WHERE

9     THE INVOICING WAS MOST OR EVEN YEARS AFTER THE USE.

10         AGAIN, THAT'S OKAY, BECAUSE THE MLA'S SAY YOU CAN USE.

11    YOU JUST HAVE TO NOTIFY, AND THEN WE PAY.

12         AND OFTEN THE INVOICING FROM CORBIS AND THE PAYMENT TOOK

13    MONTHS OR YEARS TO COMPLETE.  AND IN MANY CASES, PEARSON WAS

14    THE PARTY THAT WAS TRYING TO CLOSE OUT ITS FILES AND SAYING:

15              "CAN YOU SEND US THE INVOICE FOR THIS SO WE CAN PAY

16         IT AND CLOSE THE BOOKS ON THAT PRODUCTION CYCLE FOR THAT

17         PRODUCT?"

18         IN ADDITION, THERE ARE EXAMPLES WHERE PEARSON WENT BACK --

19    AND YOU CAN'T ALWAYS TELL WHETHER IT WAS BEFORE THE REUSE

20    HAPPENED OR AFTER.  CERTAINLY IT HAPPENED PROBABLY IN BOTH

21    SITUATIONS.  BUT WENT BACK FOR, YOU KNOW, 40,000 MORE COPIES

22    BECAUSE THEY WENT OVER THE 40,000 ORIGINALLY.

23         AND THERE'S AN EXAMPLE AT -- THIS IS THE UNDER SEAL

24    VERSION 61-15, AT BATES NUMBER 28572.  THEY WENT BACK AND THEY

25    PAID $6.50 TO GET THE OTHER 40,000.

1        THERE'S ANOTHER EXAMPLE UNDER SEAL 61-62 --

2        THE COURT:  I THINK I GOT YOUR POINT.

3        MR. DOSSAS:  ALL RIGHT, YOUR HONOR.  SORRY.

4        THE COURT:  MR. CROCKETT.

5        MR. CROCKETT:  BRIEFLY, YOUR HONOR.  FIRST, I'D LIKE TO

6   CORRECT AN INCORRECT STATEMENT IN PEARSON'S REPLY BRIEF.  WITH

7   RESPECT TO THIS EXHIBIT SEVEN, ONE OF THESE PREFERRED VENDOR

8   AGREEMENTS.  THEY STATE THAT WHAT WE POINTED OUT IN OUR

9   OPPOSITION THAT THEY DIDN'T PRODUCE THAT AGREEMENT IN DISCOVERY

10  UNTIL AFTER THE DISCOVERY CUTOFF.

11       AND PEARSON ASSERTS IN THEIR REPLY BRIEF THAT:

12            "OH, YES, WE DID.  WE JUST AFTER THE CLOSE OF

13         DISCOVERY WE PRODUCED A MORE LEGIBLE VERSION OF IT OR A

14         MORE READABLE VERSION OF IT."

15       IN FACT, YOUR HONOR, WHAT THEY PRODUCED DURING THE

16  DISCOVERY PERIOD IS A DRAFT.  AND I HAVE IT HERE FOR YOUR HONOR

17  IF YOU WOULD LIKE TO SEE IT.  IT'S DIFFERENT THAN EXHIBIT

18  SEVEN.  VERY DIFFERENT.  AND IT'S NOT THAT THEY SIMPLY PRODUCED

19  A MORE LEGIBLE COPY OF SOMETHING.

20       THEY DID NOT PRODUCE THE ACTUAL AGREEMENT UNTIL AFTER

21  DISCOVERY CUTOFF.

22       BUT, MORE IMPORTANTLY, YOUR HONOR, COUNSEL SEEMS TO HAVE

23  MIXED IN HIS ARGUMENT TWO SEPARATE ARGUMENTS THAT THEY MAKE IN

24  THEIR MOTION.  ONE WITH RESPECT TO THE PREFERRED VENDOR

25  AGREEMENTS, THEIR CONTENTION THAT THESE GAVE PEARSON THE RIGHT

```
 1    TO DO WHEREVER THEY WANTED WITH THESE IMAGES.  AND THEN, THE

 2    SECOND POINT IS THIS CONTRACTUAL VERSUS COPYRIGHT INFRINGEMENT

 3    POINT.

 4         SO I'D LIKE TO KEEP THEM SEPARATE AND ADDRESS THEM

 5    SEPARATELY.  NOW, WITH RESPECT TO THE PREFERRED VENDOR

 6    AGREEMENTS, THESE GOVERN PRICING.  THEY SPECIFICALLY PROVIDE --

 7    AND WE POINT THIS OUT IN OUR OPPOSITION -- AND WE DO CITE TO

 8    THE RELEVANT EXHIBITS -- THAT THEY SPECIFICALLY PROVIDE THAT

 9    PEARSON'S REPRODUCTION AND USE OF THE IMAGES WOULD BE GOVERNED

10    BY THE USES SPECIFIED IN THE INDIVIDUAL LICENSES THAT IT

11    OBTAINS.

12         AND NOW PEARSON IS SAYING THAT THERE WAS THIS PROCEDURE

13    WHERE WE CAN COME IN LATER AND PAY FOR ANY USES THAT WE MADE

14    BEYOND WHAT WERE IN THE LICENSES.  AND THEY ARGUE FROM THIS

15    THAT THEY WERE ENTITLED TO DO WHATEVER THEY WANTED.

16         BUT THEY HAVEN'T SHOWN, AND THEY CAN'T SHOW -- THEY CANNOT

17    SHOW THAT THEY NEVER USED THESE PHOTOGRAPHS IN EXCESS OF THE

18    LIMITS IN THE LICENSES WITHOUT PAYING LATER.

19         IF YOU LOOK CAREFULLY AT THE EVIDENCE THAT THEY SUBMITTED

20    IT SAYS:

21              "ON OCCASION WHEN THIS HAPPENED AND WE EXCEEDED THE

22         USES THAT WERE PERMITTED BY THE LICENSES, WE WOULD GO TO

23         THE VENDOR AND PAY WHAT WE SHOULD HAVE PAID IN THE FIRST

24         PLACE."  BUT THEY DON'T SAY THAT EVERY SINGLE TIME THAT

25    HAPPENED, JUST THAT ON OCCASION THIS HAPPENED.
```

```
 1        THEIR BRIEF CITES THAT FOR THE PROPOSITION THAT THEY WOULD

 2   ALWAYS DO THIS.  BUT THAT'S NOT WHAT THE DECLARATIONS SUPPORT.

 3        SO THEY CAN'T SHOW THAT THEY COMPLIED THEIR OWN PREFERRED

 4   VENDOR AGREEMENT.

 5        NOW, FINALLY, ON THIS ISSUE ABOUT COPYRIGHT INFRINGEMENT

 6   VERSUS BREACH OF CONTRACT, AGAIN I REFER THE COURT TO THE FACT

 7   THAT THESE PREFERRED VENDOR AGREEMENTS EXPRESSLY PROVIDED THAT

 8   PEARSON'S USE OF THE IMAGES WOULD BE GOVERNED BY THE LICENSES

 9   THAT WERE GRANTED.  PEARSON'S MADE THIS EXACT SAME CONTENTION

10   IN THE PACIFIC STOCK AND ALASKA STOCK CASES.  AND EACH TIME THE

11   COURT REJECTED IT.

12        AND I REFER THE COURT TO THOSE TWO OPINIONS THAT ARE CITED

13   IN OUR OPPOSITION.

14        THE COURT:  THANK YOU.

15        MR. MARSTON:   TWO QUICK POINTS, YOUR HONOR.

16        THE COURT:  PLEASE.

17        MR. MARSTON:  VERY QUICK ON THE LAST POINTS ALASKA STOCK

18   PACIFIC STOCK:  VERY DIFFERENT TYPE OF AGREEMENT.

19        ONE OF THEM, ALASKA STOCK, IS A PUBLIC RECORD IN THAT

20   CASE.  I'M GOING TO HAND A COUPLE OF COPIES UP TO THE COURT.  I

21   WON'T REVIEW IT NOW, BUT IF YOU LOOK AT THAT YOU WILL SEE IT'S

22   A VERY DIFFERENT AGREEMENT THAN WHAT WE'RE DEALING WITH HERE.

23        AND, SECONDLY, IF YOU LOOK AT THE LANGUAGE THAT MPI REFERS

24   TO WITH RESPECT TO THEIR ARGUMENT THAT THE INDIVIDUAL INVOICES

25   ARE WHAT CONTROL AND WHAT PROVIDE THE LICENSE, THEY REFER TO
```

1  LANGUAGE IN THE TERMS AND CONDITIONS THAT ARE ATTACHED TO THE

2  MLA'S.  AND THAT IS THE BOILERPLATE THAT YOUR HONOR HAS

3  PROBABLY SEEN AT THE VERY END OF EACH OF THEM.

4       THOSE ARE CORBIS' STANDARD TERMS AND CONDITIONS.  AND THEY

5  ARE ATTACHED HERE BECAUSE THERE ARE SOME PROVISIONS IN THERE

6  LIKE THE TRADEMARK PROVISIONS AND SOME THINGS THAT APPLY.

7       BUT AS TO THE LICENSING AND THE CORE TERMS, THOSE ARE SET

8  FORTH IN THE MLA.  AND THE MLA SPECIFICALLY SAYS THAT:

9            "IN THE EVENT OF A CONFLICT THE TERMS OF THE MLA, NOT

10       THE TERMS AND CONDITIONS OF THE STANDARD CORBIS FORM

11       CONTROL."

12      AND SO YOU CAN'T SIMPLY TURN TO THE TERMS AND CONDITIONS

13  AND SAY:

14           "WELL, HERE IT SAYS THE INVOICE CONTROLS."  THAT'S

15  FOR THE REGULAR LICENSING SCENARIO, NOT THE SPECIAL SITUATION

16  WE HAVE HERE.

17      THE COURT:  THANK YOU.

18      MR. MARSTON:  THANK YOU.

19      THE COURT:  OKAY.  LET'S CALL THE MORE RECENT CASE.

20           (THEREUPON, THIS HEARING WAS CONCLUDED.)

21

22

23

24

25

**CERTIFICATE OF TRANSCRIBER**

   I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF
THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE
U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE
PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE
ABOVE MATTER.

   I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO,
NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTIONS IN WHICH THIS
HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR
OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

SIGNATURE OF TRANSCRIBER

*Kathy Wyatt*                    2-16-13 DATE